UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on behalf
of those similarly situated,

      Plaintiff,

v.

ABSOPURE WATER COMPANY, LLC

      Defendant.

Case No. 20-12734

HON. MARK A. GOLDSMITH

---

**ORDER & OPINION GRANTING IN PART PLAINTIFF'S MOTION TO
CONDITIONALLY CERTIFY A COLLECTIVE ACTION (Dkt. 58)**

Before the Court is Plaintiff Justin Guy's motion to conditionally certify a collective action

pursuant to 29 U.S.C. § 216(b) (Dkt. 58).[1]  For the reasons that follow, the motion is granted in

part.

## I.      BACKGROUND

Absopure Water Company (Absopure) is a Michigan-based bottled water company that

hires drivers who deliver water and other products to homes and offices.  Answer ¶ 17 (Dkt. 12);

Absopure 30(b)(6) Dep. at 54:2–3 (Dkt. 58-2).  Guy, a former driver for Absopure, brought this

suit on behalf of himself and those similarly situated, asserting violations of the Fair Labor

Standards Act (FLSA) and seeking overtime compensation for hours worked in excess of 40 per

week as well as declaratory relief.  Compl. (Dkt. 1).

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided
based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to
Guy's motion, the briefing includes Absopure's response (Dkt. 60) and Guy's reply (Dkt. 64).

Absopure asserts that its drivers, including Guy, are exempt from the overtime provisions of the FLSA by the Motor Carrier Act (MCA) exemption to the FLSA.  See Answer at PageID.250. Guy contests this, but argues that even if the MCA exemption applies, he and other Absopure truck drivers fall into the "small vehicle exception" to the MCA exemption—i.e.  they drive trucks that weigh less than 10,001 pounds—and are thus owed overtime pay regardless of whether the MCA exemption applies.  Guy Mot. for Summ. J. at PageID.1248–1249 (Dkt. 56).

Recently, this Court denied Absopure's motion for summary judgment and granted in part and denied in part Guy's motion for summary judgment (Dkt. 70).  The Court declined to grant summary judgment as to the applicability of the MCA exemption or the small vehicle exception; those determinations must await trial.

Guy now seeks conditional certification of the following class:

All Truck Drivers employed by Defendant in Michigan who worked over forty (40) hours in one or more workweeks from October 8, 2017 to present and: 1) drove routes exclusively within the state of Michigan during such workweek(s), and/or 2) drove vehicles that weighted [sic] less than 10,001 pounds during such workweek(s).

Mot. at PageID.2246.  The category of "Truck Drivers" encompasses employees with titles including "Route and Sales Delivery Drivers," "Sales and Service Specialists," "Sales and Service Specialist Trainees," "Entry Level Route Delivery Drivers," and "Delivery Drivers."  Id. at 2251– 2253 (punctuation modified).  Absopure estimates that it employs 35 to 40 truck drivers (including route and sales delivery drivers, sales and service drivers, sales and service specialists, and sales and service specialist trainees) in Michigan at any given time.  Absopure 30(b)(6) Dep. at 30:17– 31:12.  Guy asserts that Absopure has employed at least 88 drivers in Michigan between October 8, 2017 and the present.  Mot. at PageID.2251.

Guy seeks an order: (i) granting conditional certification and approving timely notice to the proposed class; (ii) directing Absopure to produce a list of all members of the putative class

including their names, last known addresses, social security numbers, dates of employment, cell phone numbers, and email addresses in an electronic and importable format within 14 days of the order; (iii) directing the parties to confer and submit a proposed class notice within 14 days of the orders deciding Guy's motion for summary judgment and motion for conditional certification; (iv) authorizing Guy's counsel to send the Court-approved notice and reminder notice of this action to the putative class members via U.S. mail, e-mail and text message, and requiring Absopure to post the notice conspicuously in its Michigan facilities, and (v) approving a 60-day opt-in period.  Mot. at PageID.2247–2248.

## II.      ANALYSIS

The Court first addresses the standard that plaintiffs must meet for conditional certification of an FLSA collective action, and then finds that Guy has met this standard.  As discussed below, he has produced evidence that the prospective members of the collective action engaged in the same job responsibilities, were subject to the same methods of timekeeping and compensation, and were subject to the same policy whereby Absopure classified truck drivers as exempt employees.

### A.  Certifying a Collective Action Under the FLSA

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated, 29 U.S.C. § 216(b), typically referred to as "collective actions."  Section 216(b) establishes two requirements for such actions: (i) the named plaintiff(s) and the prospective co-plaintiffs must be similarly situated, and (ii) all plaintiffs must affirmatively consent to participate in the collective action in writing.  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).  Courts often utilize a two-step process for collective action certification.

### i.      Step One: Conditional Certification at Notice Stage

In the first step, courts assess whether the proposed co-plaintiffs are "similarly situated," and, if so, conditionally certify a class for notice purposes only.  See O'Brien v. Ed Donnelly

Enters., Inc. 575 F.3d 567, 583 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016).  The plaintiff "bear[s] the burden to establish that they and the class they wish to represent are similarly situated." Shabazz v. Asurion Ins. Serv., No. 3:07-0653, 2008 WL 1730318, at *5 (M.D. Tenn. Apr. 10, 2008) (punctuation modified).  This initial standard is "fairly lenient" and "typically results in conditional certification of a representative class." Comer, 454 F.3d at 547 (punctuation modified).  "Plaintiffs must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists." Olivo v. GMAC Mortg. Corp., 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (punctuation modified).

A named plaintiff can meet their burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (punctuation modified).  Proposed co-plaintiffs are also similarly situated "if the plaintiffs' claims are unified by common theories of defendants' statutory violations, even if the proofs of those theories are individualized." Shipes v. Amurcon Corp., No. 10-14943, 2012 WL 995362, at *5 (E.D. Mich. Mar. 23, 2012) (punctuation modified).

In an FLSA exemption case, a plaintiff meets this burden by making a showing that the other employees engage in work that is similar to the plaintiff's own work and that they are similarly situated with respect to their pay provisions. Id. at *9–*10; Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).  "A company-wide consistent application of a classification of a position as exempt can serve as a basis for conditional certification of an FLSA class where the classification is the source of the alleged violation." Boyd v. Schwebel Baking Co., No. 4:15-cv-871, 2016 WL 3555351, at *6 (N.D. Ohio June 30, 2016).

Where a plaintiff has met this initial burden, "a defendant cannot overcome [the plaintiff's] showing by arguing that individual issues predominate." Shipes, 2012 WL 995362, at *7.

"[D]ifferences as to time actually worked, wages actually due, and hours involved are not significant to the conditional certification determination." Russell v. Life Win., Inc., et al., No. 8:11-cv-2802-T-26TBM, 2014 WL 7877787, at *4 (M.D. Fla. Apr. 23, 2014).

In determining whether a collective action should be conditionally certified, courts consider factors including "whether potential plaintiffs were identified," "whether affidavits of potential plaintiffs were submitted," "whether evidence of a widespread discriminatory plan was submitted," and whether, "as a matter of sound case management," "a manageable class exists." Olivo, 374 F. Supp. 2d at 548 (punctuation modified). The merits of the plaintiff's case are generally not considered. See Clark v. Royal Transp. Co., No. 15-13243, 2016 WL 2983900, at *5–*6 (E.D. Mich. May 24, 2016).

Where conditional certification is granted, district courts have the authority to compel defendants to produce the names and addresses of potential plaintiffs through the pre-trial discovery process and to authorize the mailing of consent forms to potential plaintiffs. See Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169–171 (1989).

### ii.      Step Two: Possible Decertification after Discovery

The second step of the certification process occurs after discovery has been completed and the opt-in forms have been received. At this point, the court reviews the evidence produced and may, upon a motion by the defendant, decertify the class. O'Brien, 575 F.3d at 583; Comer, 454 F.3d at 546. Whereas the standard for granting conditional certification at the notice stage is lenient, the court has "much more information on which to base its decision" in this second step, and "as a result, it employs a stricter standard." Comer, 454 F.3d at 547 (punctuation modified); see also Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 671 (6th Cir. 2012). It is during this second step that courts should consider the "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and

the degree of fairness and procedural impact of certifying the action as a collective action."

O'Brien, 575 F.3d at 584 (punctuation modified). However, even at this stricter stage, the fact that

"individualized issues may predominate" "does not necessarily mean that a collective action is

inappropriate." Thompson v. Bruister and Assoc., 967 F. Supp. 2d 1204, 1213 (M.D. Tenn. 2013).

Questions regarding whether the MCA exemption applies to members of a collective action

are properly addressed at this second decertification stage, rather than at the initial conditional

certification stage. See Clark, 2016 WL 2983900, at *5 (rejecting argument that potential

applicability of the MCA exemption precluded conditional certification; stating that this argument

"improperly goes to the merits of the claims"); Riley v. SK United Corp., No. 20-10577, 2021 WL

2349455, at *1, *4–*5 (E.D. Mich. Feb. 25, 2021) (recommending conditional certification of a

class of truck drivers where plaintiff alleged that the company paid drivers on a day-rate basis,

classified them as exempt from FLSA overtime pay, and had them operate vehicles that weighed

less than 10,000 pounds; stating that individualized, fact-intensive questions about which drivers

might be exempt under the MCA were "more properly reserved for decertification arguments at

the second stage"), adopted, 2021 WL 2010388 (E.D. Mich. May 20, 2021) .

### B. Similarity of Prospective Co-Plaintiffs

Guy has made a colorable showing that the prospective co-plaintiffs share the same primary

job duties, are subject to the same methods of timekeeping and compensation, and are subject to

the same alleged FLSA violation premised on their misclassification as exempt employees.

For example, Guy has produced evidence that all truck drivers engage in job

responsibilities including delivering scheduled products, managing truck inventory, creating

invoices, and planning efficient routes. Mot. at PageID.2253 (citing Def. 2d Suppl. Resp. to Pl.

1st RFPs at PageID.2575 (Dkt. 58-4); Absopure Sales & Service Specialist Job Description at

PageID.2632 (Dkt. 58-6); Absopure 30(b)(6) Dep. at 208:12–20, 209:10–16). Guy has also produced some evidence tending to show that, like himself, most of Absopure's drivers drove only intrastate routes and/or were likely to have been assigned to drive small vehicles during at least some weeks. See Mot. at PageID.2256 (citing Absopure 30(b)(6) Dep. at 156:9–12, 152:11–13; Guy Ex. 7 (Dkt. 58-8)); id. at PageID.2258–2259 (citing Absopure 30(b)(6) Dep. at 204–206; Def. 2d Suppl. Resp. to Pl. 1st RFPs at PageID.2586–2588; Def. 3d Suppl. Resp. to Pl. Disc. Req. at PageID.2917 (Dkt. 58-10)).

Similarly, Guy has produced evidence, via Absopure's corporate testimony, that the same system of timekeeping was employed with respect to all truck drivers during the relevant time period. That is to say, there was no timekeeping system, and Absopure did not record the time at which truck drivers arrived at the facility at the beginning of the workday or the time at which the drivers stopped working at the end of the day. Mot. at PageID.2254 (citing Absopure 30(b)(6) Dep. at 70:4–72:5). Guy has also made a colorable showing that all members of the putative collective action are or were W-2 employees who received a minimum rate of daily pay—$120/day for trainees and $170/day for non-trainees—plus an additional amount of commission or production pay for the items they delivered.[2] Mot. at PageID.2254–2255 (citing Absopure 30(b)(6) Dep. at 120–121, 207:5–10, 214–216).

Guy has also produced evidence that Absopure's truck drivers have uniformly not been paid overtime for hours worked in excess of 40 per week because Absopure believes that all truck drivers are exempt from the FLSA overtime requirement under the MCA exemption. Mot. at PageID.2255 (citing Absopure 30(b)(6) Dep. at 218:11–14, 222–223; Def. Answer to Rog. No. 13

---

[2] Absopure argues that because Guy was ultimately paid more as a result of this daily minimum plus commission formula than he would have been had he been paid a daily minimum plus overtime, Guy does not have standing to be a class representative. This argument is without merit because employers are required to factor in commissions when determining an employee's regular rate of pay, which is then used to calculate required overtime pay. 29 C.F.R. § 778.117.

at PageID.2646–2649 (Dkt. 58-7)).  Because Absopure "admit[s] that [it] do[es] not pay overtime premiums to any of their drivers," and because "[t]his is precisely the policy Plaintiff[] allege[s] violates the FLSA and extends to all putative class members," Guy has "shown that the putative class members are similarly situated since they were all allegedly victims of a single decision, policy, or plan that caused the FLSA violation."  Clark, 2016 WL 2983900 at *4 (punctuation modified).

The potential applicability of the MCA exemption does not negate this conclusion.  See Riley, 2021 WL 2349455, at *4; see also Watson v. Advanced Dist. Servs., LLC, 298 F.R.D. 558, 564 (M.D. Tenn. 2014); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 372–373 (E.D. Tenn. 2006).  Nor is the "similarly situated" requirement undermined, at this stage, even though there are some distinctions in class members—such as some who drive exclusively intrastate routes and some who drive both interstate and intrastate routes, and still others who drive small vehicles.  See Resp. at PageID.3911–3912.  Guy essentially seeks to certify a class of current and former employees who drove at least some intrastate routes, were assigned some small vehicles, or both, which is reasonable at this stage in the litigation in light of the claims and defenses in this action. See Prater v. Commerce Equities Mgmt. Co., Inc., No. H-07-2349, 2007 WL 4146714, at *9 (S.D. Tex. Nov. 19, 2007) (conditionally certifying two subclasses of employees for collective treatment where there were material differences in how plaintiffs were compensated); Thompson, 967 F. Supp. 2d at 1221 (rejecting argument that differences between plaintiffs' claims and methods of compensation required decertification at the second stage; explaining that employees could be placed into sub-classes or sub-groups if necessary).

### III. CONCLUSION

For the reasons set forth above, Guy's motion to conditionally certify a collective action (Dkt. 58) is granted in part.  The specific relief granted, which is set forth below, is designed to

ensure reasonable efforts at notifying putative class members of the pendency of this action and their opportunity to join it, without unduly invading or jeopardizing their legitimate privacy interests.

1.  Absopure is ordered to produce a list of all members of the putative class including their names, dates of employment, last known U.S. mailing addresses and last known email addresses, in an electronic and importable format, within 7 days of this order.  Absopure is not required to provide cell phone numbers or social security numbers of putative class members.

2.  The parties must meet and confer about the language of a collective action notice.  If the parties reach agreement about the language of a notice, they must submit the proposed notice within 7 days of this order.  If the parties do not reach agreement about the language for the proposed notice, they must file within 7 days of this order a joint statement setting forth their respective proposed notices and their arguments and authorities in support of their respective positions.

3.  Once a notice form is approved by the Court, Guy will be required to send the notice by U.S. and electronic mail, within one week of that approval, to all putative class members. A one-time reminder notice may be sent to all class members on a date chosen by Plaintiff's counsel.

4.  Absopure is required to post the notice conspicuously at its Michigan facilities no later than one week following approval of the notice.  The postings must remain for the duration of the opt-in period.

5.  The opt-in period for putative class members to notify Plaintiff's counsel of their decision to join this action will be 45 days from the approval date.

6. Within 7 days following the end of the opt-in period, Plaintiff's counsel must file such

   papers as are necessary to join putative class members as co-plaintiffs.

7. The Court will convene a status conference by Zoom on March 8, 2023, at 11:00 a.m. to

   set additional dates for completion of discovery and all other events. One week before the

   conference, the parties must file a joint statement setting forth their points of agreement

   and disagreement regarding all such matters.[3]

SO ORDERED.

Dated:  February 21, 2023                           s/Mark A. Goldsmith
        Detroit, Michigan                           MARK A. GOLDSMITH
                                                    United States District Judge

---

[3] Absopure requests that the Court order Guy and his attorneys to show cause as to why their conduct in filing a motion for conditional certification is not violative of Federal Rule of Civil Procedure 11. Resp. at PageID.3921–3922. The request is denied because requests for sanctions should be by way of motion, not in a response to a motion. Fed. R. Civ. P. 11(c)(2). Further, the request lacks merit as the Court has now granted the motion for conditional certification in large part. Moreover, to the extent Absopure seeks sanctions for alleged improper objections by Guy's counsel during Guy's deposition on July 15, 2021, it must proceed by filing a proper motion.