# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on behalf
of those similarly situated,

                                           Case No. 2:20-cv-12734-MAG-EAS

     Plaintiff,

v.                                 Hon. Mark A. Goldsmith

ABSOPURE WATER COMPANY, LLC
a domestic limited liability company,

     Defendant.

---

**DEFENDANT ABSOPURE WATER COMPANY, LLC'S
STATEMENTS OF RELEVANT FACTS**

      Defendant Absopure Water Company, LLC ("Defendant" or "Absopure")

provides these statements of relevant facts ("Statements") pursuant to the Court's

May 19, 2023 Order Regarding Discovery (Dkt. 114) ("Order"). As per the Order,

these Statements assert facts that are relevant to the interrogatories served by

Defendant on each of the 26 Opt-In Plaintiffs (who, together with original Plaintiff

Justin Guy, "Plaintiffs") on May 1, 2023 and then limited in response to the

Court's direction. (See Defendant's May 5, 2023 Memorandum in Support of

Discovery Requests, pp. 2-4 (Dkt. No. 107)). For the sake of clarity, Defendant

has separately numbered each of the Statements since they do not necessarily line

up one-on-one with Defendant's interrogatories.

These Statements are made based on information and writings currently available to, located by, and understood by Defendant upon reasonable investigation. However, given that 1) some information was lost by Defendant in a ransomware attack and Defendant does not yet know whether any or all of that data will be recoverable, 2) the scope of what may constitute "relevant" facts may change based on Plaintiffs' required statements on June 2, and June 9, 2023 (See Order, ¶ 3) and other subsequent discovery in this matter, Defendant expressly reserves the right to modify, revise, supplement, or amended these Statements as it deems appropriate.

## STATEMENTS OF RELEVANT FACTS

## DEFENDANT'S INTERROGATORY NOS. 1 AND 3

1. Identify the job titles or positions You held as part of Your employment with Absopure during the Relevant Time Period, including the dates You held such job titles or positions.

3. Identify the date(s) You received a commercial driver's license ("CDL"), if any, and the dates that any such CDLs expired, if any have.

## DEFENDANT'S STATEMENTS OF FACT

<u>Statement No. 1.</u>   The Plaintiffs in this case have been employed by Defendant in only one or both of two positions: Sales and Service Specialist ("Sales

Specialist") and "Sales and Service Specialist Trainee" ("Sales Specialist Trainee," and, together with Sale Specialists, "Specialists").

Statement No. 2.    All Specialists begin their employment with Defendant as Sales Specialist Trainees. Once a Sales Specialist Trainee has a) obtained their commercial driver's license ("CDL"), and b) has been assigned a regular route, he or she then becomes a Sales Specialist. Not all Sales Specialist Trainees stay employed by Defendant long enough to become Sales Specialists.

Statement No. 3.    Below is a list of the positions held by Plaintiffs beginning October 8, 2017 and the dates those positions where held and information regarding each Plaintiff's CDL. Further, attached as Exhibit A is a list of the bates number ranges with Plaintiffs' driving records that provide CDL information.

| Plaintiff | Position(s) | Position Start Date | Position End Date | CDL Received |
|---|---|---|---|---|
| Aniol, John | Sales Specialist | 1/10/2000 | 3/29/2022 | (earlier) 8/10/2015 10/2/2018 |
| Armstead, Aaron | Sales Specialist Trainee | 5/14/2018 | 9/21/2018 | none |
| Armstead, Dwane | Sales Specialist Trainee | 6/11/2018 | 10/4/2018 | 4/5/2016 |
| Banks, Erick | Sales Specialist Trainee | 4/23/2018 | 8/31/2018 | none |
| Belonga, Lucas | Sales Specialist Trainee | 5/2/2022 | 1/29/2023 | 1/30/2023 |
| | Sales Specialist | 1/30/2023 | current | |
| Brown, Keith | Sales Specialist | 12/4/2006 | 7/1/2020 | 12/4/2006 |

3

| | | | | |
|---|---|---|---|---|
| Childs, Dannielle | Sales Specialist Trainee | 12/5/2019 | current | Prior to hiring |
| Clendennin, Ryan | Sales Specialist Trainee | 7/25/2017 | 7/6/2018 | none |
| Fish, Caleb | Sales Specialist Trainee | 4/30/2018 | current | Prior to hiring |
| Justin Guy | Sales Specialist Trainee | 9/24/2018 | 2/4/2020 | none |
| Householder, Boaz | Sales Specialist Trainee | 3/7/2022 | 4/22/2022 | none |
| Jacek, Shawn | Sales Specialist Trainee | 10/15/2018 | 11/27/2018 | none |
| Jackson, Matthew | Sales Specialist Trainee | 11/19/2018 | 2/8/2019 | none |
| Johnson, Gary | Sales Specialist Trainee | 1/31/2022 | 11/14/2022 | 11/15/2022 |
| | Sales Specialist | 11/15/2022 | current | |
| Lammer, Ricardo | Sales Specialist Trainee | 4/8/2019 | 8/11/2019 | |
| | Sales Specialist | 8/12/2019 | 10/3/2019 | 8/12/2019 |
| Newkirk, Antony | Sales Specialist Trainee | 12/20/2021 | 6/22/2022 | none |
| Okimoto, Paul | Sales Specialist Trainee | 9/13/2021 | current | none |
| Pemberton, Terry | Sales Specialist Trainee | 2/21/2022 | 6/24/2022 | Prior to hiring |
| Perry, Charles | Sales Specialist Trainee | 7/11/2016 | 10/5/2018 | none |
| Phipps, Kevin | Sales Specialist Trainee | 9/11/2017 | 8/16/2021 | none |
| Redmer, Nathan | Sales Specialist Trainee | 5/23/2022 | 11/3/2022 | none |
| Rhodes, Ryan | Sales Specialist Trainee | 6/20/2022 | current | none |
| Skonieczny, Jesse | Sales Specialist Trainee | 9/6/2022 | current | none |
| Sujkowski, David | Sales Specialist Trainee | 2/1/2021 | 3/10/2022 | none |

| | | | | |
|---|---|---|---|---|
| Tampa, Jordan | Sales Specialist Trainee | 8/26/2019 | 1/4/2022 | none |
| Winconek, Kyle | Sales Specialist Trainee | 1/25/2021 | 3/27/2022 | |
| | Sales Specialist | 3/28/2022 | 7/6/2022 | 3/28/2022 |
| Woldt, George | Sales Specialist Trainee | 12/19/2022 | 2/2/2023 | none |

## **DEFENDANT'S INTERROGATORYIES NOS. 2, 7 AND 8**

2.  Identify and describe the job duties and activities for each position You held as part of Your employment with Absopure during the Relevant Time Period.

7.  Identify each day that You were employed by Absopure during the Relevant Time Period that you performed job duties prior to clocking in by placing Your employee badge next to the time clock and getting a signal from it at the Absopure facility out of which you worked and describe all such job duties that you performed, the amount of time it took you to perform those duties, and the circumstances that led You to performing those job duties prior to clocking in.

8.  Describe the job duties You performed while employed by Absopure during the Relevant Time Period a) prior to checking out your truck by confirming the inventory on the truck with the hand-held device before making deliveries , and b) after checking in Your truck on the hand-held device after making deliveries and returning to Absopure's facility, including describing the amount of time it took You to perform each set of such job duties, and including, if applicable, describing the typical job duties you performed and amount of time it took and identifying any substantially greater or lesser number of duties and longer or shorter times it took and the circumstances of and number of occurrences of such longer or shorter times.

5

**DEFENDANT'S STATEMENTS OF FACT**

<u>Statement No. 4.</u>    All Specialists have the same job responsibilities and engage in the same job activities.  The manner and degree in which each Specialist carries out these responsibilities and activities can vary depending on the experience and dedication of the Specialist.

<u>Statement No. 5.</u>    Both Defendant's Plymouth and Grand Rapids locations have a time clock near the entrance doors used by the Specialists, who pass by this clock on their way to their other job activities.  The purpose of the time clock is to confirm each Specialist's attendance on the job for that day.  Specialists confirm their attendance by placing their employee identification badges next to the clock, which electronically registers the time that this occurs.

<u>Statement No. 6.</u>    The majority of Specialists, the majority of time, clock in immediately upon entering the facility.

<u>Statement No. 7.</u>    After entering the building, and usually immediately after clocking in, the Specialist walks over to the place where the handheld devices are kept in charging stations and takes the one that he or she will use for the day.

<u>Statement No. 8.</u>    The handheld devices are used to keep track of the inventory of items on a Specialist's vehicle and to record sales or rentals of items.

Statement No. 9.   After obtaining the hand-held device, the Specialist checks his or her mailbox for paperwork, some of which might be related to his route for that day.

Statement No. 10.   After obtaining the handheld and checking his mailbox, the Specialist will walk to the warehouse to get the vehicle he will use for the day. The warehouse at the Plymouth facility is behind the front office while the warehouse at the Grand Rapids facility is right outside the front office door. The vehicle in the warehouse will have been loaded the night before by warehouse personnel with an inventory of items that had been specified by the Specialist at the end of the previous working day.

Statement No. 11.   The items on the vehicles loaded by the warehouse staff will include products to be sold, or potentially sold, to customers that day on the Specialists' routes. Any equipment, such as water coolers or coffee makers, will be loaded by the Specialists.

Statement No. 12.   Of the products loaded onto vehicles, the large majority have not been pre-ordered, but are what the Specialists' estimate customers will order on the routes. For example, of the 156,503 orders created between January 1, and April 30, 2023, 17,886 of them were pre-orders, or about 11.4% orders, and the remainder were created on the routes, about 88.6%.

Statement No. 13.   At the Plymouth facility, from the warehouse, the Specialist will then drive the vehicle to the street outside of the main office and park along the curb.

Statement No. 14.   After parking the vehicle in front at Plymouth, the Specialist will then go back into the office to obtain coffee items, either coffee bags or K-cups, and place them on the vehicle, if those items are part of the planned inventory for his route.

Statement No. 15.   The Specialist will then go get a manager and the Specialist and manager will perform a pre-trip safety inspection of the vehicle at front in Plymouth or in or by the warehouse at Grand Rapids.

Statement No. 16.   After the safety inspection, the Specialist and manager will count together the inventory items on the vehicle.  As this count is conducted, the Specialist will enter the number of each type of product and equipment into the handheld device.

Statement No. 17.   Once the count is completed and the Specialist and manager agree on the inventory numbers, the Specialists will "check out" the vehicle using the handheld device.  The time for the "check out" is recorded by the handheld device.

Statement No. 18.   The series of job-related activities from entering the building to checking out the vehicle typically takes between 10 and 20 minutes for

the Plymouth facility and a few minutes less for Grand Rapids facility because the office and warehouse are closer to each. The variation in times mostly depend on the experience of the driver. The actual times may be longer due to non-work activities such as using the restroom.

Statement No. 19.  After checking out the vehicle, the Specialist will then drive to the customers on his assigned route.

Statement No. 20.  Sales Specialists have the same route assigned to them every day. Sales Specialist Trainees have different routes, depending on need, such taking over part of a Sales Specialist's route who is on vacation.

Statement No. 21.  Defendant provides each Specialist with an "optimized" route listing that orders customer stops to minimize driving mileage. Specialists are not required to follow this order and typically do not. Defendant does impose time limits or other requirements on how Specialists chose to drive their routes.

Statement No. 22.  Specialists are free to take breaks at any time while driving on their routes. Defendant does not set a maximum time for the routes to be completed. Most specialists take a lunch break and many take both a breakfast and lunch break as well as other breaks.

Statement No. 23.  Sales of products and sales and rentals of equipment occur at each customer stop. These sales occur in a number of different manners.

Statement No. 24.   For a residential customer buying 5-gallon water bottles, the customer will typically leave out a number of empty bottles, with the expectation that the Specialist will replace that same number with full bottles. Sometimes customers will leave notes or speak with the Specialist to state the number of bottles to order or equipment to rent or purchase. After the Specialist has left the full bottles or equipment, he will then record this number with the handheld device. Usually, the handheld device will then print out two copies of an invoice, one left for the customer and the other kept by the Specialist. Some customers who pay electronically will not receive a printed invoice.

Statement No. 25.   For customers who order coffee products, which are typically businesses, the Specialist will go in and speak with an employee of the business who will tell the Specialist the kind and number of products and, if applicable, equipment being ordered. After delivering these, the Specialist will likewise record the amounts with the handheld device, two invoices will be printed, and the time recorded.

Statement No. 26.   Customers pay for products a number of different ways. Many pay by credit card at the end of the month that is kept on file. Others pay by ACH direct debit. Some mail in a check. Some give a check or cash directly to the Specialist when the products are delivered.

Statement No. 27.   At customer locations, Specialists have opportunities to increase the revenue from products ordered by customers.   These activities are recommended and encouraged by Defendant, but not required.   Increasing revenue from sales on the route increases the Specialist's commissions.   These activities include a) persuading the customer to purchase additional items, especially higher margin products that earn higher commissions (upselling) b) suggesting/recommending additional or more frequent delivery dates, c) going to nearby homes and businesses to solicit new customers, and d) asking existing customers for referrals, e) working diligently to complete all of the customer stops on the route each day, and f) providing consistent good service that results in spontaneous referrals to new customers by current customers.

Statement No. 28.   After stopping by their last customer, Specialists will return to the facility, driving into the warehouse.

Statement No. 29.   Upon arriving at the warehouse, the Specialist will meet with a warehouse employee in Plymouth, or the manager in Grand Rapids, and count with that person the number of empty bottles on the vehicle and make an inventory of the unsold products.   That inventory count is entered into the handheld device. When the count is complete the vehicle is then checked in using the handheld device. The handheld device records the time of this check in.

Statement No. 30.   Specialists typically sell about eighty percent of the inventory they leave the facility with at the beginning of their routes and thus have about twenty percent of that inventory remaining on their vehicles when they return.

Statement No. 31.   After checking in their vehicles, the Specialists walk to the front office of the facility.  Upon arriving, they first turn in any cash or checks they have received from customers.  They then turn in copies of the invoices printed by the handheld devices.

Statement No. 32.   After turning in cash, checks and invoices, the Specialists then synchronize their handheld devices by pressing a button on the devices, which causes all the data of handheld devices to be wirelessly uploaded into Defendant's system.  The Specialists then return the handheld devices to their charging stations.

Statement No. 33.   After turning in the handheld devices, the Specialists meet with a manager to review what happened on the route.  This review will include the Specialists informing the manager of any customer vacations or closures.  During this review, the Specialists fill out a "load sheet," which is used to tell the warehouse personnel what products and equipment to load onto the Specialists' vehicles for the following working day.  By filling out the load sheets, the Specialists are estimating the amount of product they are likely to sell the next time they go on their routes, with additional amounts added to take advantage of opportunities for increased sales.

Once the load sheet is filled out, the Specialists' job responsibilities are complete for the day.

Statement No. 34.   During the review with the managers after completing their routes for the day, many Specialists ask the manager for an estimate of the amount of commissions they earned for that day, which the manager can look up on the system.

Statement No. 35.   The amount of time for work-related activities from checking in the vehicle in warehouse to completing the load sheets while meeting with the manager is typically 20-30 minutes in Plymouth and a few minutes shorter in Grand Rapids, with more experienced Specialists taking less time than the inexperienced.  The actual times may be longer due to non-work activities such as using the restroom.

### DEFENDANT'S INTERROGATORY NOS. 4, 5 AND 6

4.   Identify each specific calendar week You claim to have worked more than 40 hours during that week while employed by Absopure during the Relevant Time Period.

5.   For each week identified in response to Interrogatory No. 4, describe the facts upon which You base that allegation, including the total number of hours You claim to have worked during that week, the total number of overtime hours You are claiming for that week, how You determined those hours, and identify any documents, communications or other evidence You claim support Your allegations concerning the hours You worked.

13

6.   For each week identified in response to Interrogatory No. 4, identify the total amount of overtime wages (or other wages, compensation or monies) that You claim to be owed and the reason You claim You were not properly paid and describe all calculation You used to come to the amount of overtime You claim to be owed.

## DEFENDANT'S STATEMENTS OF FACT

Statement No. 36.   Defendant has produced lists of the clock-in times for each Plaintiff.  Attached as Exhibit B is a list of the bates ranges for those lists.  For those times when a Specialist did not clock in immediately upon arrival, a manager typically filled in a rough estimate for when the Specialist arrived.

Statement No. 37.   Defendant has provided a list of the handheld device check-out and check-in times for each Plaintiff on a document bearing bates stamp numbers ABS -003751-004195.

## DEFENDANT'S INTERROGATORY NO. 18

18.   If You claim that You are or were not exempt from the overtime provisions of the FLSA pursuant to section 13(b)(1) of the FLSA (29 U.S.C. § 213(b)(1)) as being an employee with respect to whom the Secretary of Transportation has power to establish qualifications, describe with specificity all of the bases for such claim including all of the facts, documents, and communications on which You are relying.

## DEFENDANT'S STATEMENTS OF FACT

Defendant's facts with respect to this interrogatory are contained in its answers to Opt-In Plaintiffs' Interrogatories No. 3 and any supplements.

14

## DEFENDANT'S INTERROGATORY NO. 19

19.    Identify each day that You drove a vehicle for Absopure during the Relevant Time Period that weighed than 10,000 pounds or less and each day that you drove a vehicle that weighed 10,001 pounds or more.

## DEFENDANT'S STATEMENTS OF FACT

Statement No. 38.    Produced concurrently with these Statements is a list of the vehicles, the weights of those vehicles, and the route numbers that each Plaintiff drove during the relevant time frame bearing bates number range ABS 003581-003738.

## DEFENDANT'S INTERROGATORY NO. 20

20.    If You denied any of Absopure's Requests For Admission served concurrently with these interrogatories, then, with respect to each such denial, describe Your reasons for denial. For example, if You deny either Absopure's Request Nos. 5 or 6 regarding how your compensation was calculated, describe any inaccuracy, omission, or mischaracterization You claim is in the Request and what You claim is an accurate, complete, and properly characterized description.

## DEFENDANT'S STATEMENTS OF FACT

The Court ordered that no response is needed for requests for admission.

## DEFENDANT'S INTERROGATORY NO. 21

21.    While You were employed by Absopure, did You ever complain about any alleged violations of the FLSA to any supervisor or manager or of any other failure to pay You what You believed You were owed? If so, describe Your complaint, to whom You made it, and Absopure's response

15

## DEFENDANT'S STATEMENTS OF FACT

Statement No. 39.   Defendant has reviewed the personnel files for Plaintiffs

and has not found records of complaints by Plaintiffs.

## DEFENDANT'S INTERROGATORY NOS. 22 AND 23

22.   Other than the other Plaintiffs in this action, identify all individuals whom You believe support Your claims that You are entitled to overtime compensation.

23.   For each individual listed in response to Interrogatory No. 17, describe Your understanding of the knowledge each person has that supports Your claims in this case.

## DEFENDANT'S STATEMENTS OF FACT

Statement No. 40.   No individuals support Plaintiffs' claims.

## DEFENDANT'S INTERROGATORY NO. 24

24.   Identify each personal computer, mobile phone, or other electronic device (other than the hand-held device) capable of sending or receiving e-mails, text messages, data, or documents that You owned or used while You were employed by Absopure during the Relevant Time Period, , and identify the make and model of the devices, the operating systems, software and applications used by the devices, and the carriers or providers that facilitated data communication services for the devices, and please identify whose possession each computer, device, etc., currently resides.

## DEFENDANT'S STATEMENTS OF FACT

The Court ordered that Plaintiffs do not need to respond to this interrogatory.

16

## JURAT

STATE OF MICHIGAN  )
                        )
COUNTY OF WAYNE  )

     Patrick Byrne, being first duly sworn, states that he is the Accounting Manager, of Absopure Water Company, LLC, the Defendant in this action. He has read the foregoing Statements of Relevant Facts which were prepared with the assistance of authorized employees and with the assistance of counsel upon which he has relied; and that the answers set forth herein, subject to inadvertent or undiscovered errors, are based on, and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers; are as relied on that consequently he reserves the option of making changes in the answers if it appears at any time omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said answers are true to the best of his knowledge, information and belief.

_(signature)_

Subscribed and sworn to before me
this 26th day of May, 2023

_(signature)_
Notary Public, Wayne County, Michigan
My Commission Expires: 4/29/2028

Dated:  May 26, 2023             Respectfully Submitted,

Ronald G. Acho, P23913
Cummings, McClorey, Davis, & Acho PLC
17436 College Parkway
Livonia, MI 48152
T: (734) 261-2400
F: (734) 261-4510
E: racho@cmda-law.com

18

## CERTIFICATE OF SERVICE

Julie A. Callahan hereby certifies that on May 26, 2023, a copy of

DEFENDANT ABSOPURE WATER COMPANY, LLC'S STATEMENTS OF

RELEVANT FACTS and this Certificate of Service was served upon the following:

Michael N. Hanna, Esq.
Morgan & Morgan, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
mhanna@forthepeople.com

electronically (by email).

I declare that the above statements are true to the best of my information,

knowledge and belief.

/s/ *Julie A. Callahan*
JULIE A CALLAHAN

## EXHIBIT A

### BATES RANGES FOR PLAINTIFFS' DRIVING RECORDS

| Opt- In Plaintiff | Bates Range | |
|---|---|---|
| Aniol | 002141 – 2143, 002149 - 2155 | Absopure Opt-In PLS Confidential Docs 1 (Bates |
| A Armstead | 002158 – 2163 | |
| D Armstead | 002165 - 2166 | |
| Banks | 002167 -2168 | |
| Belonga | 002169 – 2170, 002177-2179 | |
| Brown | 002181 – 2183, 002185-2190, 002192 – 2193, 002195 | |
| Childs | 002197 – 2198, 002202-2023, 002209 - 2210 | |
| Clendennin | 002211-2213, 002215-2217 | |
| Fish | 002218 – 2225, 002228 – 2231, 002235 – 2236, 002240 – 2242, 002245-2246, 002250, 002254-2257 | |
| Householder | 002258 - 2261 | |
| Jacek | No driving record | |
| Jackson | 002264 – 2268 | |

| | | |
|---|---|---|
| Johnson | 002269 - 2287 | |
| Lammer | 002291 - 2301 | |
| Newkirk | 002302 - 2307 | |
| Okimoto | 002308-2319 | |
| Pemberton | 002320 – 2331 | |
| Perry | 002332 - 2343 | |
| Phipps | 002344 - 2352, 002401-2412, 2414 | |
| Redmer | 002415 - 2421 | |
| Rhodes | 002422 - 2427 | |
| Skonieczny | 002428 - 2437 | |
| Sujkowski | 002438 – 2441 | |
| Tampa | 002442 – 2446 | |
| Winconek | 002447 – 2451 | |
| Woldt | 002452 - 2464 | |

**EXHIBIT B**

**BATES RANGES FOR CHECK-IN TIME LISTS**

| Opt-In Plaintiff | Bates range | |
|---|---|---|
| Aniol 2018 Check In | 001287 - 1297 | Absopure Opt In PLS Nonconfidential Docs 1 (bates 1284 -1526) |
| Aniol 2019 Check In | 001298-1308 | |
| Aniol 2020 Check In | 001309 - 1319 | |
| Aniol 2021 Check In | 001320 – 1330 | |
| Aniol 2022 Check In | 001331 - 1341 | |
| A. Armstead 2018 Check In | 001472 - 1475 | |
| D. Armstead 2018 Check In | 001490-1493 | |
| Banks – 2018 Check In | 001510 – 1513 | |
| Belonga 2022-2023 Check In | 001527 - 1537 | Absopure Opt In PLS Nonconfidential Docs 2 (bates 1526 - 1774) |
| | | |
| Childs 2019 Check In | 001587 | |
| Childs 2020 Check In | 001588 – 1598 | |
| Childs 2021 Check In | 001599- 1609 | |
| Childs 2022 Check In | 001610 – 1620 | |
| Childs 2023 Check In | 001621 - 1624 | |
| Clendennin – 2018 Check In | 001648 – 1853 | |
| Fish 2022/2023 Check In | 001680 -1690 | |
| Fish – 2021/2022 Check In | 001691 – 1701 | |
| Fish 2020/2021 Check In | 001702 – 1712 | |
| Fish 2020 Check In | 001713 - 1716 | |

| | | |
|---|---|---|
| Fish 2019 Check In | 001717 – 1727 | |
| Fish 2018 Check In | 001728 - 1735 | |
| | | |
| Householder 2022 Check In | 001736 – 1737 | |
| | | |
| Jacek 2018 Check In | 001748 – 1749 | |
| | | |
| Jackson 2018-2019 Check In | 001760 -17662 | |
| | | |
| Johnson 2022 – 1/30/2023 Check In | 001785 - 1795 | Absopure Opt In PLS Nonconfidential Docs 3 (bates 1775 - 1991 ) |
| Johnson 2023 Check In | 001796 - 1798 | |
| | | |
| Lammer 2019 Check In | 001799 - 1805 | |
| | | |
| Newkirk 2022 Check In | 001826 – 1831 | |
| | | |
| Okimoto 2022 – 2023 Check In | 001844 - 1854 | |
| Okimoto 2021 -2022 Check In | 001855 - 1861 | |
| | | |
| Pemberton 2022 Check In | 001862 – 1865 | |
| | | |
| Perry 2018 Check In | 001878 – 1885 | |
| | | |
| Phipps 2018 Check In | 001898 – 1908 | |
| Phipps 2019 Check In | 001909 – 1919 | |
| Phipps 2020 Check In | 001920 – 1930 | |
| Phipps 2021 Check In | 001931 – 1937 | |
| | | |
| Redmer 2022 Check In | 001954 - 1958 | |
| | | |
| Rhodes 2022 – 2023 Check IN | 001983 – 1991 | |
| | | |

| | | |
|---|---|---|
| Skonieczny 2022-2023 Check In | 002005 – 2011 | Absopure Opt In PLS Nonconfidential Docs 4 (bates 1992 - 2119) |
| | | |
| Sujkowski 2022 -2023 Check In | 002012 – 2023 | |
| Sujkowski 2023 Check In | 002024 | |
| | | |
| Tampa 2020 Check In | 002037 – 2051 | |
| Tampa 2021 Check In | 002052 – 2063 | |
| | | |
| Winconek 2022-2023 Check In | 002079 – 2089 | |
| Winconek 2022 Check In | 002090 – 2094 | |
| | | |
| Woldt 2022-2023 Check IN | 002107 - 2108 | |
| | | |