# EXHIBIT 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on
behalf of those similarly situated,

     Plaintiff,

                            Case No. 20-cv-12734-MAG-EAS
-v-                         HON. MARK A. GOLDSMITH
ABSOPURE WATER COMPANY, LLC,
a domestic limited liability company,

     Defendant.

_____/

| | |
|---|---|
| MORGAN & MORGAN, P.A. | RONALD G. ACHO (P23913) |
| MICHAEL N. HANNA (P81463) | JORDAN J. FIELDS (P76989) |
| **Attorneys for Plaintiffs** | CUMMINGS, MCCLOREY, DAVIS |
| 2000 Town Center, Suite 1900 | & ACHO, PLC |
| Southfield, Michigan 48075 | **Attorneys for Defendant** |
| (248) 251-1399 | 17436 College Parkway, 3rd Floor |
| mhanna@forthepeople.com | Livonia, Michigan 48152 |
| | racho@cmda-law.com |
| FIEGER, FIEGER, KENNY | jfields@cmda-law.com |
| & HARRINGTON, P.C. | Asst: kueberroth@cmda-law.com |
| GEOFFERY FIEGER (P30441) | |
| **Attorneys for Plaintiffs** | |
| 19390 West 10 Mile Road | |
| Southfield, Michigan 48075 | |
| gfieger@fiegerlaw.com | |

_____/

## DEFENDANT ABSOPURE WATER COMPANY, LLC'S SECOND SUPPLEMENTAL ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

      NOW COMES Defendant Absopure Water Company, LLC ("Absopure" or "Defendant")

by and through its attorneys, CUMMINGS, MCCLOREY, DAVIS & ACHO, PLC, and for its Second

Supplemental Answers to Plaintiff's First Set of Interrogatories, Absopure states as follows:

## GENERAL OBJECTIONS

      Absopure agrees to remove the General Objections it had submitted in its Responses to

Plaintiff's First Set of Interrogatories to Defendant and its supplemental Responses. Absopure will still assert each and every objection to specific discovery requests that it had made previously.

## SPECIFIC OBJECTIONS

Absopure reasserts each and every specific objection that it raised in its Responses to Plaintiff's First Set of Interrogatories and its supplemental Responses. However, it will not restate the objections in this document for purposes of facilitation of these discovery responses.

## COMBINED RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Provide the name, address, and telephone number for all Truck Drivers employed by Defendant in Michigan at any time between October 8, 2017 to present.  To the extent Defendant categorizes its truck drivers in a certain manner (i.e. "Sales and Service Specialist", "Sales and Service Trainee", etc.), indicate which category each Truck Driver identified herein falls under, and whether Defendant possess a commercial driver's license for said driver for all periods of their employment from October 8, 2017 to the present.

### COMBINED RESPONSE TO INTERROGATORY NO. 1:

Plaintiff Justin Guy is within the scope of this Interrogatory, however, in the spirit of discovery, please find the requested information, previously provided and marked as Bates Nos. 000449 through 000454.

### INTERROGATORY NO. 2:

Provide the name, address, telephone number, and dates of employment for all individuals who supervised Absopure's Michigan Truck Drivers at any level (i.e. managers, immediate supervisor, division supervisors, executives, etc.) at any time between October 8, 2017 to present.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff's immediate supervisors were Alex Mecks and Tony Freese. Defendant Absopure

provides the following information for Absopure's supervisors during the relevant time period:

- Patrick Byrne, Accounting Manager, Absopure Water Company, LLC *Employed: (04/08/1996-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)233-8095*
- Art Amelotte, Operations Manager, Absopure Water Company, LLC *Employed: (02/16/1989 – Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)775-1552*
- Alex Mecks, Area Service Leader, Absopure Water Company, LLC *Employed: (01/04/1999-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)775-1560*
- Tony Freese, Route Planner, Absopure Water Company, LLC *Employed: (06/05/2006-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)775-0371*
- Erica Wilder, Human Resources, Absopure Company Inc. *Employed: (06/23/2014-Present); 8835 General Dr., Plymouth, MI 48170; Phone  (616)406-4899*
- Kyle Glovak, HR Generalist, Absopure Company Inc. *Employed: (05/02/2016-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)892-3745*
- Mike McWhinnie, Area Service Leader, Absopure Water Company LLC *Employed: (09/06/2011-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)637-5331*
- Rob Lowell, Area Service Leader (retired) Absopure Water Company LLC *Employed: (07/25/2017-02/29/2020); Current address UNK; Phone: (248)388-3252*
- Scott Schneider, Area Service Leader, Absopure Water Company LLC *Employed: (08/10/1998-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)775-1576*
- John Kilmer, Route Planner, Absopure Water Company LLC *Employed: (08/07/1989-Present); 8835 General Dr., Plymouth, MI 48170; Phone: (734)775-1559*
- *Brian Roon, GR Service Leader, Absopure Water Company LLC Employed:  (10/11/1999-Present); 425 36th St, Wyoming MI, 49548; (616)638-1647*
- *Judd Goodrich, Route Planner, Absopure Water Company LLC Employed: (06/27/2011-Present); 425 36th St, Wyoming MI, 49548; (616)638-5512*

Absopure has conducted a diligent search, and no other information was located that is

responsive to this Interrogatory.

**INTERROGATORY NO. 3:**

If you maintain that a fixed and persistent transportation intent for a practical continuity of movement in interstate commerce existed concerning any goods that Plaintiff transported throughout the duration of his employment with Defendant, identify the name, address, telephone numbers and title for those who possessed this fixed and persistent intent, as well the date these individuals possessed the fixed and persistent transportation intent.

**COMBINED RESPONSE TO INTERROGATORY NO. 3:**

At least the following key people possessed a fixed and persistent intent for the entire period identified in the Interrogatory:

- Art Amelotte, Operations Manager, Absopure Water Company, LLC;

- Patrick Byrne, Absopure Water Company, LLC;

- Alex Mecks, Absopure Water Company, LLC;

- Tony Freese, Absopure Water Company, LLC; and

- Erica Wilder, Human Resources, Absopure Water Company, LLC.

**INTERROGATORY NO. 4:**

If Defendant maintains that Plaintiff transported goods as part of a practical continuity of movement in interstate commerce, identify:

a) the goods that Plaintiff transported as part of a practical continuity of movement in interstate commerce;

b) the date Plaintiff transported said goods;

c) the date the goods were transported across state lines;

d) the origin of the goods and the date the goods left its place of origin;

4

e) the location for each subsequent destination and the date the goods reached each subsequent destination; and

f) the date Defendant became aware of the interstate journey.

**COMBINED RESPONSE TO INTERROGATORY NO. 4:**

By agreement of the parties, this Response is limited to Mountain Valley Spring Water. Plaintiff delivered Mountain Valley Spring Water throughout his time at Absopure. Mountain Valley Spring Water comes from Arkansas. The Mountain Valley Spring Water that Plaintiff delivered originated in Hot Springs, Arkansas and crossed state lines to Absopure in Plymouth, Michigan. Please see the documents provided in Response to Request for Production of Documents Nos. 32-46, 48-49, and 75.

In addition, please see documents were previously provided and are marked Bates Nos. Absopure 000212 through 000313.


**INTERROGATORY NO. 5:**

Were any of the goods identified in your Answer to Interrogatory No. 4 indefinitely stored? With respect to any of the goods identified in your answer to interrogatory No. 4 that Defendant maintains were not indefinitely stored in Defendant's facility, identify:

a) how long these goods were stored in Defendant's Michigan facility before transportation;

b) how is/was this information tracked; and

c) provide the bates stamp numbers for the documentation evidencing your answer to this interrogatory and/or utilized to answer this interrogatory, which is responsive to Request for Production No. 48.

**COMBINED RESPONSE TO INTERROGATORY NO. 5:**

Absopure delivers products from other states to Michigan customers and customers in other states. It strives to move its purchased products to its customers on a timely basis. As part of that, the products that are first in are first out whenever possible. Replenishment is driven by a physically observed safety stock level. Products such as Mountain Valley Spring Water, which Plaintiff delivered, are purchased approximately every two to three weeks, and then promptly delivered to customers.

Please see the documents provided in Response to Request for Production of Documents Nos. 32-46, 48-49, and 75.

**INTERROGATORY NO. 6:**

Did Defendant compensate all of its Truck Drivers in Michigan on a day-rate basis for all of their hours worked in workweeks within the relevant time period, October 8, 2017 to present? If your answer is no, identify all Truck Drivers who you contend were not compensated in this manner, the workweeks these Truck Drivers were not compensated in this manner, and provide the method of compensation that these Truck Drivers received.

**COMBINED RESPONSE TO INTERROGATORY NO. 6:**

In sum Defendant states, Sales & Service Specialist (Trainees) are compensated on a commission basis from the sale of goods available to sell by Defendant, plus a bonus, if applicable. If the Sales & Service Specialists (Trainees) do not meet the threshold for commission ($120.00 per day), they are given a flat rate of $120.00.  For example, Plaintiff did not make any sales (no commission earned) or complete a route on the first day of work, therefore, Plaintiff was paid a flat rate of $120.00.  However, on a day in which Plaintiff earned commissions in excess of

$120.00, Plaintiff would not be paid the "flat rate" and only the earned commission.

Absopure's Truck Drivers are categorized in two job positions. The drivers perform the functions of Sales Service Specialists. See Third Affidavit of Patrick Byrne attached hereto and marked Bates Nos. Absopure 000735-000736.


**INTERROGATORY NO. 7:**

Identify the job duties that Defendant's Truck Drivers in Michigan, including Plaintiff, were required to perform from October 8, 2017 to present.  If you maintain that certain Truck Drivers in Michigan were required to perform different job duties, identify the various job duties, and indicate which Truck Driver was required to complete said duties.

**COMBINED RESPONSE TO INTERROGATORY NO. 7:**

With respect to Sales & Service Specialists (Trainees), and Plaintiff, generally, their job duties included previewing their route with a manager, determining appropriate load out of truck, submitting the load out to the warehouse, inspecting the vehicle he would be driving for the day, creating appropriate records of said inspection, assisting in loading high-value products they may try to sell into their truck, visiting customers on a designated route, selling current products and promoting other products from their vehicle, acting as a representative of the Company to those customers, returning unsold inventory to the Company, turning in customer payments, and reviewing the days' activities, highlighting any exceptions or new customer requirements and/or requests that need assistance to fulfill.

Absopure's Truck Drivers are categorized in two job positions. The drivers perform the functions of Sales Service Specialists. See Third Affidavit of Patrick Byrne attached hereto and marked Bates Nos. Absopure 000735-000736.

**INTERROGATORY NO. 8:**

If you contend that Plaintiff is not similarly-situated to Defendant's other Truck Drivers in Michigan, provide all factual basis in support of this contention.

**COMBINED RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff was effectively a Sales Service Specialist Trainee, and he agreed to obtain a commercial driver's license within 60 days of hire.  Plaintiff attempted to pass his commercial driver's license test four times and failed, never obtaining his commercial driver's license, unlike other Sales Service Specialist Trainees. Because he failed and had not obtained his commercial driver's license to Defendant's knowledge, he was not promoted past a Sales Service Specialist Trainee or allowed to drive motor vehicles that weighed over 26,000 pounds, unlike other Sales Service Specialist and Sales Service Specialist Trainees. This creates the first of at least three reasons other Sales Service Specialists and Sales Service Specialist Trainees are not similarly situated to Plaintiff: (1) other Sales Service Specialists and where applicable, Sales Service Specialist Trainees, had commercial driver's licenses, (2) other Sales Service Specialists were *not trainees*, and (3) other Sales Service Specialists and where applicable, some Sales Service Specialist Trainees, drove motor vehicles that weighed over 26,000 pounds.  Moreover, Plaintiff was still expected to leave the State of Michigan if he was assigned such a route, (4) other Sales Service Specialists and where applicable, Sales Service Specialist Trainees, *actually did* cross state lines during deliveries.  Even further, (5) other Sales Service Specialists had deliveries that took more than a single day, so they had to sleep in a hotel or on the road.

Defendant would clarify that Plaintiff claims that he attempted to pass his commercial driver's license test four times and failed, and he claims that he never obtained his commercial

driver's license. Defendant has no personal knowledge of Plaintiff's purported attempts to obtain

the necessary licensing. Defendant gave Plaintiff time, in the office, to study and allowed him to

leave early to take the test at the Secretary of State. Defendant cannot verify whether Plaintiff took

the test, as he claimed. Defendant is only aware that Plaintiff never presented Defendant with the

permit that he would have obtained had he successfully completed the written test.


**INTERROGATORY NO. 9:**

Explain the method by which Defendant assigned its routes to its Truck Drivers in

Michigan from October 8, 2017 to present. In answering this interrogatory, identify the route(s)

and route number(s) Plaintiff was assigned for each workweek of his employment with Defendant.

**COMBINED RESPONSE TO INTERROGATORY NO. 9:**

Regarding Interrogatory 9(A), . . .Notwithstanding the objection, the routes of the Sales &

Service Specialist (Trainees) would be determined based upon the capabilities of the Sales &

Service Specialist (Trainee), meaning, whether or not they had a CDL or other qualifications.

Further, Sales Service Specialist Trainees and Sales Service Specialists—especially senior Sales

Service Specialists —tended to drive the same routes because part of their job responsibilities was

as a commissioned sales representative. Repertoire and relationships are important when selling.

So, experienced sales representatives wanted to drive the same routes to use those relationships to

sell and earn a higher commission by selling to people they knew. They did not just merely drop

off ordered goods: they would converse with the decision makers/managers and explain, and try

to sell, new or additional products. They would also identify products that the customer was not

purchasing but may need, and they would attempt to sell more products. Additionally, some Sales

& Service Specialists (Trainees) would drive routes in areas they were more familiar with in order

to assist in comfort of driving familiar routes.

Regarding Interrogatory 9(B), note that routes are identified by route numbers.  So, it is unclear what Plaintiff desires when distinguishing routes and route numbers.  Plaintiffs routes were previously disclosed and identified in previous interrogatories and are marked Bates Nos. Absopure 000719 through 000727.

**INTERROGATORY NO. 10:**

Identify the vin number, year, make and model for all vehicles Defendant's Truck Drivers in Michigan drove to transport goods for Defendant from October 8, 2017 to present.

**COMBINED RESPONSE TO INTERROGATORY NO. 10:**

The following is an exhaustive list of Defendant's fleet of vehicles:

| VIN No. | Year | Make/Model |
|---|---|---|
| 1FTYR2XM8JKA51551 | 2018 | Ford |
| 1FTYR2XM8JKA51555 | 2018 | Ford |
| 1FTYR2XG6JKB28630 | 2018 | Ford |
| 1FTYR2XM7JKA95109 | 2018 | Ford |
| 1FTYR2XM2JKB28257 | 2018 | Ford |
| 1HSMMAAN76H253453 | 2006 | International |
| 1FVACWDC86HV64965 | 2006 | Freightliner |
| 1FDNF6AY1HDB02306 | 2017 | F-650 |
| 1FDNF6AY5HDB02311 | 2017 | F-650 |
| 1FDNF6AY5HDB02308 | 2017 | F-650 |
| 1FDNF6AY3HDB02307 | 2017 | F-650 |
| 1FDNF6AYXHDB02305 | 2017 | F-650 |

| VIN No. | Year | Make/Model |
|---|---|---|
| 1FDNF6AY7HDB02309 | 2017 | F-650 |
| 1FDNF6AY3HDB02310 | 2017 | F-650 |
| 1FDNF6AY7HDB02312 | 2017 | F-650 |
| 2NKHHM7XXFM440775 | 2015 | Kenworth |
| 2NKHHM7X5FM440778 | 2015 | Kenworth |
| 2NKHHMX75FM453997 | 2015 | Kenworth |
| 1FDNF6AY0JDF03075 | 2018 | F-650 |

| VIN No. | Year | Make/Model |
|---------|------|------------|
| 1FDNF6AT2JDF03076 | 2018 | F-650 |
| 1FDNF6AY4JDF03077 | 2018 | F-650 |
| 1FDNF6AT2JDF03078 | 2018 | F-650 |
| 1FDNF6AY2JDF03079 | 2018 | F-650 |
| 1FDUF5GT4HEE40925 | 2017 | F-650 |
| 1FDPF7AY7JDF05775 | 2018 | F-750 |
| 1FDPF7AY9JDF05776 | 2018 | F-750 |
| 1FDPF7AY7JDF05792 | 2018 | F-750 |
| 1FDPF7AY1JDF05769 | 2018 | F-750 |
| 1FDPF7AY8JDF05770 | 2018 | F-750 |
| 1FDPF7AYXJDF05768 | 2018 | F-750 |
| 2NKHHM7XX CM308482 | 2012 | Kenworth |
| 1FVACXDT6DHFH1902 | 2013 | Freightliner |
| 1FVACXDT8DHFH1903 | 2013 | Freightliner |
| 1HTSDAAN8YH251460 | 1999 | International |
| 1FVACXCS56HW03283 | 2005 | Freightliner |
| 1FVACXCS16HW03281 | 2005 | Freightliner |
| 1FVACXCS96HW03285 | 2005 | Freightliner |
| 1FVACXCS76HW03284 | 2005 | Freightliner |
| 1FVACXCS36HW03282 | 2005 | Freightliner |
| 1HTSCAAL1VH494038 | 1997 | International |
| 1FTYR2XM9JKA41973 | 2018 | Ford |
| 2NKHHM7X3FM440777 | 2015 | Kenworth |
| 1FDUF5GT0GEC79021 | 2017 | Ford |
| 1FVACXDT1DHFG6333 | 2013 | Freightliner |
| 1FVACXDTXDHFH1904 | 2013 | Freightliner |
| 1FVACXDT1DHFH1905 | 2013 | Freightliner |
| 1FVACXDT3DHFH1906 | 2013 | Freightliner |
| 1FVACXDTXDHFG6332 | 2013 | Freightliner |
| 1FVACXDT3DHFG6334 | 2013 | Freightliner |
| 1FVACXDT5DHFG6335 | 2013 | Freightliner |
| 1FVACXDT7DHFG6336 | 2013 | Freightliner |
| 1FVACXDT9DHFG6337 | 2013 | Freightliner |
| 1FVACXDT0DHFG6338 | 2013 | Freightliner |

| **VIN No.** | **Year** | **Make/Model** |
|---------|------|------------|
| 1FVACXDT9DHFG6340 | 2013 | Freightliner |
| 2LT1P2V88XT001565 | 1999 | TREMCAR |
| 2LT1P2V80XR001566 | 1999 | TREMCAR |
| 2TL1N2V81YR002331 | 2000 | TREMCAR |
| 1PMS1508031025886 | 2003 | POLAR |
| 1PMS1508X51028085 | 2005 | POLAR |
| 2TLXL49896B002069 | 2006 | TREMCAR |
| AW122089TI2001075 | 1990 | TREMCAR |
| 4B4EF01A7BB934128 | 1993 | TREMCAR |

| | | |
|---|---|---|
| 1B9TS5080HM772228 | 2017 | TREMCAR |
| 1B9TS5082HM772229 | 2017 | TREMCAR |

**INTERROGATORY NO. 11:**

Explain the method by which Defendant assigned its vehicles to its Truck Drivers in Michigan on any particular workday from October 8, 2017 to present.  In answering this interrogatory, identify which vehicle was assigned to each Truck Driver in Michigan on any particular workday from October 8, 2017 to present.

**COMBINED RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff drove approximately thirteen of Defendant's motor vehicles during the course of employment.  Motor vehicles were assigned dependent on the classification of employee driving (CDL or non-CDL); the drivability of the motor vehicle (if there was a mechanical issue); the route the Sales & Service Specialist (Trainee) was assigned; the products the Sales & Service Specialist (Trainee) was delivering; the number of those products; and the general size and volume of each product load.  Defendant further states that unless there was a mechanical issue with a specific vehicle or an issue with the Sales & Service Specialist's (trainee's) qualifications (CDL v non-CDL), the Sales Specialist (trainee) would typically drive the motor vehicle assigned by the supervisor based on the aforementioned factors.

Please see the list of Plaintiff's Route Assignments by Month which was previously provided to Plaintiff in Combined Response to Interrogatory No. 9 and is marked Bates Nos. Absopure 000719 through 000727. As to other drives, there are no easily producible documents that would show route assignments. It would require computer printing selections day by day for various drivers which would be a significant undertaking.

**INTERROGATORY NO. 12:**

Provide the name, address, and telephone number for all individual(s) who are/were responsible for maintaining and/or participating in the maintenance of the pay records and/or time records for Defendant's Truck Drivers in Michigan from October 8, 2017 to present.

**COMBINED RESPONSE TO INTERROGATORY NO. 12:**

Erica Wilder, Human Resources, Absopure Water Company, LLC.

**INTERROGATORY NO. 13:**

If Defendant claims that Plaintiff and Defendant's Truck Drivers in Michigan are not entitled to be paid at a time and one-half premium for every hour worked in excess of forty (40) hours per work week, please set forth the reason for your claim, the specific factual basis upon which you rely upon to make this claim, and describe the documents that you rely upon in supporting this claim and/or responding to this Interrogatory.

**COMBINED RESPONSE TO INTERROGATORY NO. 13:**

Sales Service Specialists, and Sales Service Specialists Trainees, like Plaintiff Justin Guy, are expected to take any route that they are assigned, including out of state deliveries. Because they are required to be available every day to drive any route, Absopure requires its Sales Service Specialists and Sales Service Specialists Trainees to undergo periodic drug screenings and to undergo physical examinations that are required by the Department of Transportation (DOT). Absopure has a DOT registration number and is subject to DOT audits and oversight.

Absopure's Michigan Sales Service Specialists and Sales Service Specialists Trainees are not limited to deliveries only within the State of Michigan. They make 500 deliveries a year to customers in Ohio and Indiana. Absopure's Sales Service Specialists and Sales Service Specialists Trainees in Illinois make 1,500 deliveries a year to Indiana and Missouri.

Plaintiff cites *Baird v. Wagoner Transp. Co.*, 425 F.2d 407 (6th Cir. 1970). However, District Courts within the Sixth Circuit have discounted the *Baird* decision in light of the adoption by the DOL and the DOT of revised guidelines, formed in part from subsequent decisions of the ICC, Federal Courts, and the United States Supreme Court.

In discussing the MCA exception, the *Baird* court relied heavily on then existing DOL guidelines, which had been issued in 1957. In *Ex Parte* No. MC-48, the Interstate Commerce Commission (ICC) issued industry wide guidelines as to when the transportation of petroleum products by motor carriers within a single state constituted interstate commerce. See *Finn v. Dean Transp., Inc.* 53 F.Supp.3d 1043, 1053 (M.D. Tenn 2014). The DOL in turn adopted these guidelines into an interpretive bulletin outlining the scope of the MCA exception. *Finn, supra*, citing *Baird, supra*, 42 F.2d at 410-11. Because both the DOL and the ICC had adopted the guidelines in MC-48, the *Baird* court applied those guidelines to the facts at issue in that case.

In 1992, the ICC issued a policy statement, MC-207, which outlined the factors the ICC would utilize to determine whether intrastate transportation of products manufactured out of state would fall within its jurisdiction. *Finn, supra*, 53 F.Supp.3d at 1054, citing *Musarra v. Digital Dish, Inc.*, 454 F.Supp.2d 692, 706-708 (S.D. Ohio 2006.) MC-207 was based on intervening decisions of the ICC, Federal Courts, and the United States Supreme Court relating to the differences between interstate and intrastate trucking services provided within a single state. *Finn, supra*, citing *Mussara, supra*, 454 F.Supp.2d at 708.

In 2005, the DOL adopted MC-207 as the test for applying the MCA exception in future matters. As a result, the DOL and the DOT were in agreement on the appropriate standard for the application of the MCA exception. *Finn, supra,* 53 F.Supp.3d at 1055. After the DOL repudiated the MC-48 guidelines, several circuits upheld that repudiation. District Courts within the Sixth

Circuit, like *Finn* and *Musarra*, have likewise adopted the MC-207 factors, concluding that the *Baird* decision has been abrogated and superseded by the revised guidelines identified in MC-207.

The FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service" under the MCA, 49 U.S.C. § 31502. See 29 U.S.C. § 213(b)(1). Two considerations dictate whether the MCA exemption applies: (1) the class of the employer; and (2) the class of work the employees perform. See 29 C.F.R. § 782.2(a).

By its express terms, the MCA exception applies if the Secretary has the power to regulate a particular employee under the MCA, regardless of whether the Secretary has actually exercised that power. *Finn, supra,* 53 F.Supp.3d at 1051.

Purely intrastate travel can constitute part of interstate travel if it is part of a continuous stream of interstate travel. See *Ballou v. DET Distributing Co.,* 2006 WL 2035729, (M.D. Tenn. July 17, 2006), citing *Bilvou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2nd Cir. 2002). "Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a 'practical and continuity of movement' across State lines from the point of origin to the point of destination." 29 C.F.R. § 782.7(b)(1) quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). See, e.g., *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, 2017 WL 3190740, at 2 (D. Colo. July 14, 2017):

> "This exemption is broader than initially meets the eye. After all, even if truck drivers' routes are entirely intrastate, the "essential character" of their work is still "interstate in nature" so long as some of the goods they carry and deliver come from or are bound for another state. See, e.g., [*Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147] at 1155-58 [(10th Cir. 2016)]. "For certain types of shipments, the interstate nature of the transportation [for the purposes of the MCA exemption] can become blurred as products are temporarily warehoused or moved by various carriers—some of whom may only complete intrastate portions of the journey."). What's more, the Tenth Circuit has concluded that in discerning

15

the essential character of an employee's work it is irrelevant exactly how much interstate work that driver performs. *Id.,* at 1159 n. 5 ("[Even minimal loads in interstate commerce place[ ] employees within the MCA exemption to the FLSA.") (citing *Morris v. McComb*, 332 U.S. 422, 434 (1947)). Thus, it would be wrong to assume that this "test" is a difficult one to meet."

See, e.g., *Morris v. McComb,* 332 U.S. at 437 (employees were exempt from the overtime provisions of the FLSA even though only three to four percent of their time was devoted to services in interstate commerce); *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 674-75 (1947) ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment."); *Finn, supra*, (the fact that about 10% of the goods that employee carried in employer's delivery truck came from out of state was sufficient for application of MCA exception; summary judgment for employer); *Layton v. DHL Express (USA), Inc.*, 2011 WL 13175769, at 6 (N.D. Ala. May 3, 2011) ("Although plaintiffs' driving duties never took them across state lines, the freight/packages carried were in the uninterrupted flow of interstate commerce, meeting the second requirement under the MCA."), *affirmed*, 686 F.3d 1172 (11th Cir. 2012).

In addition, please see documents were previously provided and are marked Bates Nos. Absopure 000212 through 000313.

**INTERROGATORY NO. 14:**

Identify all person(s) who were involved in the decision making process to classify Plaintiff and Defendant's Truck Drivers in Michigan as exempt from the overtime provisions of the FLSA,

and explain the reason Defendant made the decision to classify its Truck Drivers in Michigan as exempt from the overtime provisions of the FLSA.

**COMBINED RESPONSE TO INTERROGATORY NO. 14:**

Absopure makes its decisions at a management level. These decisions are made in accordance with the law and are revisited as laws are amended or have evolved. Absopure has followed the United States Department of Transportation Rules and Regulations and is under the policies of the Department of Transportation. Under those Department of Transportation Rules and Regulations, drivers, such as Plaintiff, would not be under the FLSA.

Absopure does not have information of prior years. Absopure has made a diligent search and no documents exist, but one can assume discussions took place some years earlier that determined that drivers, such as Plaintiff, were under the Department of Transportation Rules and Regulations, and not under the Department of Labor.

**INTERROGATORY NO. 15:**

Identify the factual basis Defendant relies upon in meeting its burden of proof and demonstrating the requisite "good faith" to avoid the imposition of liquidated damages.

**COMBINED RESPONSE TO INTERROGATORY NO. 15:**

Sales Service Specialists, and Sales Service Specialists Trainees, like Plaintiff Justin Guy, are expected to take any route that they are assigned, including out of state deliveries. Because they are required to be available every day to drive any route, Absopure requires its Sales Service Specialists and Sales Service Specialists Trainees to undergo periodic drug screenings and to undergo physical examinations that are required by the Department of Transportation (DOT). Absopure has a DOT registration number and is subject to DOT audits and oversight.

Absopure's Michigan Sales Service Specialists and Sales Service Specialists Trainees are not limited to deliveries only within the State of Michigan. <u>They make 500 deliveries a year to customers in Ohio and Indiana</u>. Absopure's Sales Service Specialists and Sales Service Specialists Trainees in <u>Illinois make 1,500 deliveries a year to Indiana and Missouri</u>.

Plaintiff cites *Baird v. Wagoner Transp. Co.*, 425 F.2d 407 (6th Cir. 1970). However, District Courts within the Sixth Circuit have discounted the *Baird* decision in light of the adoption by the DOL and the DOT of revised guidelines, formed in part from subsequent decisions of the ICC, Federal Courts, and the United States Supreme Court.

In discussing the MCA exception, the *Baird* court relied heavily on then existing DOL guidelines, which had been issued in 1957. In *Ex Parte* No. MC-48, the Interstate Commerce Commission (ICC) issued industry wide guidelines as to when the transportation of petroleum products by motor carriers within a single state constituted interstate commerce. See *Finn v. Dean Transp., Inc.* 53 F.Supp.3d 1043, 1053 (M.D. Tenn 2014). The DOL in turn adopted these guidelines into an interpretive bulletin outlining the scope of the MCA exception. *Finn, supra*, citing *Baird, supra*, 42 F.2d at 410-11. Because both the DOL and the ICC had adopted the guidelines in MC-48, the *Baird* court applied those guidelines to the facts at issue in that case.

In 1992, the ICC issued a policy statement, MC-207, which outlined the factors the ICC would utilize to determine whether intrastate transportation of products manufactured out of state would fall within its jurisdiction. *Finn, supra*, 53 F.Supp.3d at 1054, citing *Musarra v. Digital Dish, Inc.*, 454 F.Supp.2d 692, 706-708 (S.D. Ohio 2006.) MC-207 was based on intervening decisions of the ICC, Federal Courts, and the United States Supreme Court relating to the differences between interstate and intrastate trucking services provided within a single state. *Finn, supra*, citing *Mussara, supra*, 454 F.Supp.2d at 708.

In 2005, the DOL adopted MC-207 as the test for applying the MCA exception in future matters. As a result, the DOL and the DOT were in agreement on the appropriate standard for the application of the MCA exception. *Finn, supra,* 53 F.Supp.3d at 1055. After the DOL repudiated the MC-48 guidelines, several circuits upheld that repudiation. District Courts within the Sixth Circuit, like *Finn* and *Musarra*, have likewise adopted the MC-207 factors, concluding that the *Baird* decision has been abrogated and superseded by the revised guidelines identified in MC-207.

The FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service" under the MCA, 49 U.S.C. § 31502. See 29 U.S.C. § 213(b)(1). Two considerations dictate whether the MCA exemption applies: (1) the class of the employer; and (2) the class of work the employees perform. See 29 C.F.R. § 782.2(a).

By its express terms, the MCA exception applies if the Secretary has the power to regulate a particular employee under the MCA, regardless of whether the Secretary has actually exercised that power. *Finn, supra,* 53 F.Supp.3d at 1051.

Purely intrastate travel can constitute part of interstate travel if it is part of a continuous stream of interstate travel. See *Ballou v. DET Distributing Co.,* 2006 WL 2035729, (M.D. Tenn. July 17, 2006), citing *Bilvou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2nd Cir. 2002). "Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a 'practical and continuity of movement' across State lines from the point of origin to the point of destination." 29 C.F.R. § 782.7(b)(1) quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). See, e.g., *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, 2017 WL 3190740, at 2 (D. Colo. July 14, 2017):

> "This exemption is broader than initially meets the eye. After all, even if truck drivers' routes are entirely intrastate, the "essential character" of their

work is still "interstate in nature" so long as some of the goods they carry and deliver come from or are bound for another state. See, e.g., [*Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147] at 1155-58 [(10th Cir. 2016)]. "For certain types of shipments, the interstate nature of the transportation [for the purposes of the MCA exemption] can become blurred as products are temporarily warehoused or moved by various carriers—some of whom may only complete intrastate portions of the journey."). What's more, the Tenth Circuit has concluded that in discerning the essential character of an employee's work it is irrelevant exactly how much interstate work that driver performs. *Id.*, at 1159 n. 5 ("[Even minimal loads in interstate commerce place[ ] employees within the MCA exemption to the FLSA.") (citing *Morris v. McComb*, 332 U.S. 422, 434 (1947)). Thus, it would be wrong to assume that this "test" is a difficult one to meet."

See, e.g., *Morris v. McComb*, 332 U.S. at 437 (employees were exempt from the overtime provisions of the FLSA even though only three to four percent of their time was devoted to services in interstate commerce); *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674-75 (1947) ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment."); *Finn, supra*, (the fact that about 10% of the goods that employee carried in employer's delivery truck came from out of state was sufficient for application of MCA exception; summary judgment for employer); *Layton v. DHL Express (USA), Inc.*, 2011 WL 13175769, at 6 (N.D. Ala. May 3, 2011) ("Although plaintiffs' driving duties never took them across state lines, the freight/packages carried were in the uninterrupted flow of interstate commerce, meeting the second requirement under the MCA."), *affirmed*, 686 F.3d 1172 (11th Cir. 2012).

In addition, please see documents were previously provided and are marked Bates Nos. Absopure 000212 through 000313.

**INTERROGATORY NO. 16:**

To the extent a Truck Driver identified in your Answer to Interrogatory No. 1 did not drive exclusively within the state of Michigan from October 8, 2017 to the present, identify the name of the Truck Driver, the date(s) and destination(s) for each out-of-state trip they drove from October 2017 to the present.

**COMBINED RESPONSE TO INTERROGATORY NO. 16:**

Please see documents previously provided and marked Bates Nos. 000474 through 000717 for all out-of-state deliveries for the relevant requested time period.

**INTERROGATORY NO. 17:**

Provide the name, address, and telephone number for each individual that you believe has or may have knowledge relevant to this matter, and provide a summary of knowledge you believe said individual possess that is relevant to this matter.

**COMBINED RESPONSE TO INTERROGATORY NO. 17:**

Defendant believes the following individuals possess relevant information:

- Art Amelotte, Operations Manager, Absopure Water Company, LLC;

- Patrick Byrne, Absopure Water Company, LLC;

- Alex Mecks, Absopure Water Company, LLC;

- Tony Freese, Absopure Water Company, LLC; and

- Erica Wilder, Human Resources, Absopure Water Company, LLC.

**INTERROGATORY NO. 18:**

Identify all persons who participated in completing Defendant's answers to Plaintiff's Requests for Admissions, Interrogatories, and Requests for Production.

**COMBINED RESPONSE TO INTERROGATORY NO. 18:**

- Art Amelotte, Operations Manager, Absopure Water Company, LLC;

- Patrick Byrne, Absopure Water Company, LLC; and

- Erica Wilder, Human Resources, Absopure Water Company, LLC.

    With the assistance of counsel.


**INTERROGATORY NO. 19:**

If you believe Plaintiff is exempt from the Fair Labor Standards Act based on the Motor Carrier Act exemption, provide the exact factual basis that you rely upon to make this claim, and identify the evidence you rely upon in support of this claim.

**COMBINED RESPONSE TO TO INTERROGATORY NO. 19:**

Sales Service Specialists, and Sales Service Specialists Trainees, like Plaintiff Justin Guy, are expected to take any route that they are assigned, including out of state deliveries. Because they are required to be available every day to drive any route, Absopure requires its Sales Service Specialists and Sales Service Specialists Trainees to undergo periodic drug screenings and to undergo physical examinations that are required by the Department of Transportation (DOT). Absopure has a DOT registration number and is subject to DOT audits and oversight.

Absopure's Michigan Sales Service Specialists and Sales Service Specialists Trainees are not limited to deliveries only within the State of Michigan. They make 500 deliveries a year to

customers in Ohio and Indiana. Absopure's Sales Service Specialists and Sales Service Specialists Trainees in Illinois make 1,500 deliveries a year to Indiana and Missouri.

Plaintiff cites *Baird v. Wagoner Transp. Co.*, 425 F.2d 407 (6th Cir. 1970). However, District Courts within the Sixth Circuit have discounted the *Baird* decision in light of the adoption by the DOL and the DOT of revised guidelines, formed in part from subsequent decisions of the ICC, Federal Courts, and the United States Supreme Court.

In discussing the MCA exception, the *Baird* court relied heavily on then existing DOL guidelines, which had been issued in 1957. In *Ex Parte* No. MC-48, the Interstate Commerce Commission (ICC) issued industry wide guidelines as to when the transportation of petroleum products by motor carriers within a single state constituted interstate commerce. See *Finn v. Dean Transp., Inc.* 53 F.Supp.3d 1043, 1053 (M.D. Tenn 2014). The DOL in turn adopted these guidelines into an interpretive bulletin outlining the scope of the MCA exception. *Finn, supra*, citing *Baird, supra*, 42 F.2d at 410-11. Because both the DOL and the ICC had adopted the guidelines in MC-48, the *Baird* court applied those guidelines to the facts at issue in that case.

In 1992, the ICC issued a policy statement, MC-207, which outlined the factors the ICC would utilize to determine whether intrastate transportation of products manufactured out of state would fall within its jurisdiction. *Finn, supra*, 53 F.Supp.3d at 1054, citing *Musarra v. Digital Dish, Inc.*, 454 F.Supp.2d 692, 706-708 (S.D. Ohio 2006.) MC-207 was based on intervening decisions of the ICC, Federal Courts, and the United States Supreme Court relating to the differences between interstate and intrastate trucking services provided within a single state. *Finn, supra*, citing *Mussara, supra*, 454 F.Supp.2d at 708.

In 2005, the DOL adopted MC-207 as the test for applying the MCA exception in future matters. As a result, the DOL and the DOT were in agreement on the appropriate standard for the

application of the MCA exception. *Finn, supra,* 53 F.Supp.3d at 1055. After the DOL repudiated the MC-48 guidelines, several circuits upheld that repudiation. District Courts within the Sixth Circuit, like *Finn* and *Musarra,* have likewise adopted the MC-207 factors, concluding that the *Baird* decision has been abrogated and superseded by the revised guidelines identified in MC-207.

The FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service" under the MCA, 49 U.S.C. § 31502. See 29 U.S.C. § 213(b)(1). Two considerations dictate whether the MCA exemption applies: (1) the class of the employer; and (2) the class of work the employees perform. See 29 C.F.R. § 782.2(a).

By its express terms, the MCA exception applies if the Secretary has the power to regulate a particular employee under the MCA, regardless of whether the Secretary has actually exercised that power. *Finn, supra,* 53 F.Supp.3d at 1051.

Purely intrastate travel can constitute part of interstate travel if it is part of a continuous stream of interstate travel. See *Ballou v. DET Distributing Co.,* 2006 WL 2035729, (M.D. Tenn. July 17, 2006), citing *Bilvou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2nd Cir. 2002). "Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a 'practical and continuity of movement' across State lines from the point of origin to the point of destination." 29 C.F.R. § 782.7(b)(1) quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). See, e.g., *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, 2017 WL 3190740, at 2 (D. Colo. July 14, 2017):

> "This exemption is broader than initially meets the eye. After all, even if truck drivers' routes are entirely intrastate, the "essential character" of their work is still "interstate in nature" so long as some of the goods they carry and deliver come from or are bound for another state. See, e.g., [*Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147] at 1155-58 [(10th Cir. 2016)]. "For certain types of shipments, the interstate nature of

the transportation [for the purposes of the MCA exemption] can become blurred as products are temporarily warehoused or moved by various carriers—some of whom may only complete intrastate portions of the journey."). What's more, the Tenth Circuit has concluded that in discerning the essential character of an employee's work it is irrelevant exactly how much interstate work that driver performs. *Id.,* at 1159 n. 5 ("[Even minimal loads in interstate commerce place[ ] employees within the MCA exemption to the FLSA.") (citing *Morris v. McComb,* 332 U.S. 422, 434 (1947)). Thus, it would be wrong to assume that this "test" is a difficult one to meet."

See, e.g., *Morris v. McComb,* 332 U.S. at 437 (employees were exempt from the overtime provisions of the FLSA even though only three to four percent of their time was devoted to services in interstate commerce); *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 674-75 (1947) ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment."); *Finn, supra,* (the fact that about 10% of the goods that employee carried in employer's delivery truck came from out of state was sufficient for application of MCA exception; summary judgment for employer); *Layton v. DHL Express (USA), Inc.*, 2011 WL 13175769, at 6 (N.D. Ala. May 3, 2011) ("Although plaintiffs' driving duties never took them across state lines, the freight/packages carried were in the uninterrupted flow of interstate commerce, meeting the second requirement under the MCA."), *affirmed*, 686 F.3d 1172 (11th Cir. 2012).

In addition, please see documents were previously provided and are marked Bates Nos. Absopure 000212 through 000313.

## JURAT

STATE OF MICHIGAN  )
         )
COUNTY OF WAYNE  )

   Patrick Byrne, being first duly sworn, states that he is the Accounting Manager, of Absopure Water Company, LLC, the Defendant in this action. He has read the foregoing Second Supplemental Answers to Plaintiff's First Set of Interrogatories which were prepared with the assistance of authorized employees and with the assistance of counsel upon which he has relied; and that the answers set forth herein, subject to inadvertent or undiscovered errors, are based on, and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers; are as relied on that consequently he reserves the option of making changes in the answers if it appears at any time omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said answers are true to the best of his knowledge, information and belief.

           _____
           PATRICK BYRNE

Subscribed and sworn to before me
this ___ day of December, 2021

_____

Notary Public, Wayne County, Michigan
My Commission Expires:_____

Dated:  December 15, 2021                    Respectfully Submitted,

Ronald G. Acho, P23913
Cummings, McClorey, Davis, & Acho PLC
17436 College Parkway
Livonia, MI 48152
T: (734) 261-2400
F: (734) 261-4510
E: racho@cmda-law.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on
behalf of those similarly situated,

     Plaintiff,

                             Case No. 20-cv-12734-MAG-EAS

-v-                          HON. MARK A. GOLDSMITH

ABSOPURE WATER COMPANY, LLC,
a domestic limited liability company,

     Defendant.

_____/

MORGAN & MORGAN, P.A.      RONALD G. ACHO (P23913)
MICHAEL N. HANNA (P81463)    JORDAN J. FIELDS (P76989)
**Attorneys for Plaintiffs**       CUMMINGS, MCCLOREY, DAVIS
2000 Town Center, Suite 1900     & ACHO, PLC
Southfield, Michigan 48075      **Attorneys for Defendant**
(248) 251-1399              17436 College Parkway, 3rd Floor
mhanna@forthepeople.com     Livonia, Michigan 48152
                           racho@cmda-law.com
FIEGER, FIEGER, KENNY       jfields@cmda-law.com
  & HARRINGTON, P.C.        Asst:  kueberroth@cmda-law.com
GEOFFERY FIEGER (P30441)
**Attorneys for Plaintiffs**
19390 West 10 Mile Road
Southfield, Michigan 48075
gfieger@fiegerlaw.com

_____/

**<u>PROOF OF SERVICE</u>**

     The undersigned hereby certifies that on December 15, 2021, he served copies of the

following:

- Defendant Absopure Water Company, LLC's Second Supplemental Answers
  to Plaintiff's First Set of Interrogatories;

Upon the following counsel of record:

Michael N. Hanna, Esq.
Morgan & Morgan, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075

Electronically via email to Michael N. Hanna, Esq. at mhanna@forthepeople.com.

Ronald G. Acho, P23913
Cummings, McClorey, Davis, & Acho PLC
17436 College Parkway
Livonia, MI 48152
T: (734) 261-2400
F: (734) 261-4510
E: racho@cmda-law.com