## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JUSTIN GUY**, individually on behalf
of himself and others similiarly situated,

      Plaintiff,

v.

**ABSOPURE WATER COMPANY, LLC**,
a domestic limited liability company,

      Defendant.

_____/

Case No.:  20-CV-12734

Hon. Mark A. Goldsmith

## PLAINTIFF'S RESPONSE TO DEFENDANT'S "SECOND" MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Plaintiff, Justin Guy, on behalf of himself and the finally certified class of Opt-in Plaintiffs, by and through his undersigned counsel, hereby files his Response to Defendant, Absopure Water Company's ("Absopure") Second Motion for Summary Judgment Based on the Statute of Limitations ("MSJ"). ECF No. 147.

Defendant's MSJ is frivolous and presented in bad faith. The Parties stipulated to equitably toll the statute of limitations for the Opt-in Plaintiffs. ECF No. 14. Defendant, nonetheless, seeks to renege on the Parties' stipulation in yet another attempt to throw the proverbial kitchen sink at this case, hoping something sticks.

This pattern of behavior by Defendant is nothing new.  After Defendant's MSJ concerning the Motor Carrier Act ("MCA") exemption was Denied, [ECF No. 70],

Defendant has scrambled, and desperately sought to manufacture an alternative defense three years into this litigation. A few days after the Court Denied Defendant's Motion to Amend Affirmative Defenses on August 31, 2023, [ECF No. 140], Defendant filed its Motion for Partial Summary Judgment based on the Statute of Limitations on September 8, 2023, [ECF No. 142], which was later refiled to cure its initial failure to Move for Leave to file this untimely and vexatious Second MSJ along with other defects. *See* ECF No. 147.

The Court should DENY Defendant's second MSJ for several independent reasons. First, the Parties stipulated to equitably toll the Statute of Limitations "until the completion of the class-certification period", [ECF No. 14, PageID.260-61], and Defendant proceeded accordingly up until the date it filed its Second (and later Third) MSJ. Second, even if the Court construes the MSJ as a motion to vacate the stipulation, equitable tolling is appropriate under the circumstances at bar. For these reasons, the Court should DENY Defendant's MSJ, affirm the tolling of the statute of limitations for the Opt-in Plaintiffs, grant Plaintiff his attorneys' fees and costs for having to respond to this vexatious and untimely motion, any other relief the Court deems just and proper.

Respectfully submitted,

Dated:  October 12, 2023

By: /s/ *Michael N. Hanna*
MORGAN & MORGAN, P.A.
Michael N. Hanna
Michigan Bar No.: P81462
Florida Bar No.: 85035
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 739-1953
mhanna@forthepeople.com


/s/  *Andrew R. Frisch*
MORGAN & MORGAN, P.A.
Andrew R. Frisch
8151 Peters Road, Suite 4000
Plantation, FL 33324
(954) WORKERS
afrisch@forthepeople.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JUSTIN GUY**, individually on behalf
of himself and others similiarly situated,

      Plaintiff,

v.

**ABSOPURE WATER COMPANY, LLC**,
a domestic limited liability company,

      Defendant.

_____/

Case No.:  20-CV-12734

Hon. Mark A. Goldsmith

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S "SECOND" MOTION FOR SUMMARY JUDGMENT <u>BASED ON THE STATUTE OF LIMITATIONS</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should Defendant be permitted to renege on and/or vacate the Parties'

stipulation to equitably toll the statute of limitations?

Plaintiff Answers: "No"
Defendant Answers: "Yes"

## COUNTER-STATEMENT OF MATERIAL FACTS

1-6.    Admit.

7.    Admit only that 26 Opt-In Plaintiffs in this case filed consent notices in March and April of 2023.

8.    Admit that Aaron Armstead worked for Absopure from 5/14/18 to 9/21/18.

9.    Admit.

10.    Deny. First, Plaintiffs are only seeking recovery for the workweeks that they worked from October 8, 2017 to present. This relevant time period did not "elapse" because the Parties stipulated to equitably toll the Statute of limitations "until the completion of the class-certification period." *See* ECF No. 14, PageID.260-61.

11.    Admit that Dwane Armstead worked for Absopure from 6/11/18 to 10/4/18.

12.    Admit.

13.    Deny. *See* Counter Statement of Material Facts ("CSMF") to No. 10, *supra*.

14.    Admit, but Mr. Banks is no longer an Opt-In Plaintiff. *See* ECF No. 153.

15.    Admit but otherwise irrelevant. *See id.*

16.    Deny as phrased and ultimately irrelevant. *See id*.

17.    Admit Ryan Clendennin worked for Absopure from 7/25/17 to 7/6/18.

18.    Admit.

19.    Deny. *See* CSMF to No. 10, *supra*.

20.    Admit only that Shawn Jacek worked for Absopure 10/15/18 to 11/27/18.

1

21.     Admit.

22.     Deny. *See* CSMF to No. 10, *supra*.

23.     Admit that Matthew Jackson worked for Absopure from 11/19/18 to 2/8/19.

24.     Admit.

25.     Deny. *See* CSMF to No. 10, *supra*.

26.     Deny. Ricardo Lam[mer]'s worked for Absopure from 4/8/19 to 10/3/19.

27.     Admit.

28.     Deny. *See* CSMF to No. 10, *supra*.

29.     Admit only that Charles Perry worked for Absopure from 7/11/16 to 10/5/18.

30.     Admit.

31.     Deny. *See* CSMF to No. 10, *supra*.

32.     Deny. Keith Brown worked for Absopure from 9/5/06 to 7/1/20.

33.     Admit.

34.     Deny. *See* CSMF to No. 10, *supra*.

35.     Deny. John Aniol worked for Absopure from 11/8/99 to 3/29/22.

36.     Admit.

37.     Deny. *See* CSMF to No. 10, *supra*.

38-39. Admit.

40.     Deny. *See* CSMF to No. 10, *supra*.

41-42. Admit.

43.     Deny. *See* CSMF to No. 10, *supra*.

44.     Admit only that Kevin Phipps worked for Absopure from 9/11/17 to 8/16/21.

45.     Admit.

46.     Deny. *See* CSMF to No. 10, *supra*.

47.     Admit only Jordan Tampa worked for Absopure from 8/26/19 to 1/4/22.

48.     Admit.

49.     Deny. *See* CSMF to No. 10, *supra*.

50.     Deny. Kyle Winconek worked for Absopure from 1/25/21 to 7/6/22.

51.     Admit.

52.     Deny. *See* CSMF to No. 10, *supra*.

53.     Deny. It appears Sujkowski worked for Absopure from 2/1/21 to 3/10/22.

54.     Admit.

55.     Deny. *See* CSMF to No. 10, *supra*.

56.     Deny. The plaintiffs were not informed, nor do the cited documents show that Absopure informed them. This inquiry is also irrelevant. Finally, Defendant failed to post the required workplace posters to notify Plaintiffs of their FLSA rights. *See* RFP No. 12, **Ex. 1**, pp. 3-4.

57-58.     Deny. This survey and statement of fact is irrelevant to Defendant's Second MSJ. Moreover, Plaintiff could not locate any information in the referenced exhibit that supports this irrelevant assertion. The referenced survey also does not

concern knowledge of misclassification based on the complicated MCA exemption, or state whether the referenced employees who reported "No" to the inquiry of whether their job was covered by overtime pay were misclassified, or whether their answer as to why their job did not cover them for overtime pay was accurate.

## **STATEMENT OF ADDITIONAL MATERIAL FACTS**

1. On October 8, 2020, Plaintiff filed his Collective Action Complaint. ECF 1.

2. On January 6, 2021, Defendant delayed adjudication of this matter by filing a meritless Motion to Dismiss, instead of Answering the Complaint. ECF No. 6.

3. Defendant maintained that this lawsuit should have never been filed because its drivers are exempt from the FLSA based on the MCA exemption. See *Id.*, PageID.36 ("The law is clear in this area. This case should be dismissed, and it should never have been filed.")

4. Defendant's counsel also threatened Plaintiff's counsel with Rule 11 sanctions for pursuing what he deemed to be a frivolous lawsuit in light of the MCA exemption. *See* ECF No. 7-2, 7-3, 7-5, 7-6.

5. Defendant's Motion to Dismiss was Denied, and Defendant filed its Answer and Affirmative Defenses on March 11, 2021. ECF Nos. 11, 12.

6. On March 23, 2021, The Parties filed their Joint Discovery Plan, which was e-signed by Plaintiff and Defendant's counsel. *See* ECF No. 14.

7. Defendant's portion of the Joint Discovery Plan confirms Defendant

vehemently believed that Plaintiff was exempt under the MCA. *See Id.,* PageID.258

("[T]his case has absolutely no merit and should never have been filed.")

8. As reflected in the Joint Discovery Plan, the Parties agreed to bifurcate discovery to first conduct discovery as to conditional certification issues, MCA exemption, and the named Plaintiff's individual claims, and to equitably toll any putative class members' claims until completion of the class certification period. *See id.*, PageID.259-60. The Parties Joint Discovery Plan expressly provides:

> The parties request the Court stay and equitably toll all other deadlines in this matter until the completion of the class-certification period. The parties believe that their resources and the Court's resources would be best served if all remaining deadlines and discovery commence after the Court issues its Order concerning Plaintiff's Motion for Conditional Certification.

*Id.*, PageID.260-61.

9. This bifurcated discovery plan was contingent on/expressly provided for equitable tolling "until the completion of the class-certification period." *Id.*

10. This bifurcated discovery plan afforded Defendant, who was confident in its defense, a significant concession and opportunity to avoid costly collective action litigation involving multiple Plaintiffs if it were to prevail on its MSJ.

11. Absent the Parties' agreement to bifurcate discovery and equitably toll all deadlines "until the completion of the class-certification period", Plaintiff would have immediately moved to conditionally certify the collective action and moved to equitably toll the statute of limitations in the interim, as Plaintiff's counsel has done

on other FLSA collective action lawsuits. *See*, *e.g., Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623 (W.D. Tenn. 2017) (Granting plaintiff's motion to equitably toll the statute of limitations for potential opt-in plaintiffs for 400 days for a class of over 3,000 opt-in Plaintiffs).

12.    **Each and every action** after the Parties reached the stipulation for equitable tolling as set forth in the Joint Discovery Plan **confirms that the Parties agreed to equitably toll the statute of limitations for the Opt-in Plaintiffs**.

13.    Plaintiff's Interrogatory No. 1 requested the identification of the putative class who worked for Defendant "**at any time between October 8, 2017 to present**." ECF No. 45-3, PageID.752 (emphasis added). Defendant produced and did not object to the temporal scope of this request. *Id.*

14.    Defendant, however, objected to other discovery requests seeking information "from 2016 to present[.]" *Id.*, PageID.765-766.

15.    Defendant's corporate representative deposition was conducted—without objection—for topics concerning putative class members employed by Defendant from **October 8, 2017 to present**. *See*, 30(b)(6) Dep., ECF No. 56-2.

16.    During the initial phase of discovery, Defendant obstructed the discovery process, thereby resulting in delays and the Court appointment of a Special Discovery Master. *See* Plaintiff's Motion to Stay and/or Extend Discovery, ECF Nos. 49; 53; *see also* Order extending discovery, ECF No. 54.

17.     On March 29, 2022, Plaintiff filed his Motion to Conditionally Certify the Collective Action for a class of truck drivers that worked for Defendant "from **October 8, 2017** to present[.]" ECF No. 58, PageID.2246 (emphasis added).

18.     Consistent with the Parties' prior stipulation, Defendant's Response to Plaintiff's motion for conditional certification **did not take issue with the proposed class period**. *See* ECF No. 60.

19.     Eleven months later, and on February 21, 2023, the Court Granted Plaintiff's Motion to Conditionally Certify the Collective Action for the putative class employed by Defendant from October 8, 2017 to present. *See* ECF No. 77.

20.     On **February 8, 2023**, the Parties filed a Joint Statement concerning Collective Action Notice, which included a proposed Collective Action Notice for certain Truck Drivers that worked Defendant "**from October 8, 2017 to present[.]**" ECF No. 79-1, PageID.4558 (emphasis added).

21.     The Parties' proposed notice explained to potential opt-ins who worked from October 8, 2017 to present that they are eligible to join this lawsuit:

> The purpose of this Notice is to inform you of the existence of a collective action lawsuit brought by Justin Guy ("Plaintiff") **that you are eligible to join**. This Notice serves to inform you of the rights that you may have in connection with the lawsuit and the procedures for joining this lawsuit should you choose to do so. Records maintained by Absopure Water Company, LLC (hereinafter referred to as "Absopure"), indicate that **you worked for them as a Truck Driver in Michigan at some point between October 8, 2017 to the present**. This Notice provides information about a pending lawsuit filed in the U.S. District Court in and for the Eastern District of Michigan that may

7

affect your rights.

*Id.* (emphasis added).

22.　　Defendant provided Plaintiff with a class list of putative class members that worked for Defendant **from October 8, 2017 to present**.

23.　　Had the Parties not agreed to equitable tolling, the notice sent in March 2023 would have been sent to putative class members that work/worked for Defendant beginning in March 2020; not October 2017.

24.　　On July 2, 2023, Defendant's counsel deposed Opt-In Plaintiff, Keith Brown Jr., who worked for Defendant from 9/5/06 to 7/1/20, and advised: "I'm going to ask you from **about the years late 2017 onward**. **That's the relevant period behind what we're looking at." Ex. 2**, 20:19-22 (emphasis added).

25.　　On July 14, 2023, Defendant filed its Motion to Decertify Collective Action. ECF No. 124. There, Defendant did not challenge or move to decertify class members who worked for Defendant from October 8, 2017 to March 2020.

26.　　Rather, Defendant relied on the Parties' stipulation to equitably toll the statute of limitations and its statute of limitations affirmative defense, and moved to decertify the putative class members who worked for Defendants for a third year for a willful violation in 2017 only. *See id.*, PageID.5112 ("The statute of limitations for FLSA actions is two years. 29 U.S.C. § 255(a). Five of the Plaintiffs left Defendant **prior to October 8, 2018**.") (emphasis added); *see also* Defendant's

8

Reply Brief, ECF No. 127, PageID.6145 ("Plaintiffs have not proven willfulness. Thus, as of now, several of the Plaintiffs are differently situated with respect to this defense.") In other words, Defendant acknowledged the existence of equitable tolling, but mistakenly argued that the Plaintiffs who are only subject to a willful violation and only worked in the third year prior to the filing of the complaint are not similarly-situated.

27.     A few days after the Court Denied Defendant's Motion to Amend Affirmative Defenses on August 31, 2023, [ECF No. 140], Defendant filed its initial MSJ based on the statute of limitations on September 8, 2023. *See* ECF No. 142.

28.     Defendant's MSJ concerning the statute of limitations was the first time Defendant sought to renege on the Parties' stipulation for equitable tolling.

29.     Defendant **never once** argued that the appropriate class period should not be counted from the date of the filing of the Complaint prior to September 8, 2023 (i.e. willful violations from October 8, 2017 to present, and non-willful violations from October 8, 2018 to present).

30.     On September 12, 2023, the Court Denied Defendant's Motion to Decertify the Collective Action. *See* ECF No. 145.  There, the Court, *inter alia*, addressed Defendant's assertion concerning the applicable statute of limitations based on the dates contingent to equitable tolling:

> Absopure also contends that Plaintiffs are differently situated with respect to **the applicable statute of limitation.** … It asserts that five

9

Plaintiffs were no longer employed by Absopure **as of October 8, 2018, and therefore, their claims are barred by the FLSA's two-year statutory limitation period.** Id. (citing 29 U.S.C. § 255(a)).

*Id.,* PageID.6756 (emphasis added).

31.     Defendant refiled its Third MSJ on September 15, 2023 concerning its newly minted statute of limitations defense in direct contradiction to the Parties' stipulation for equitable tolling and all prior litigation and representations made by any Party in this litigation. *See* ECF No. 147.

32.     Plaintiffs would be severely prejudiced if the Court were to entertain permitting Defendant to renege on its prior agreement because Plaintiff 1) relied the Parties' stipulation and did not move to conditionally certify the collective action until March 29, 2022, [ECF No. 58]; 2) did not conduct **any** discovery pertaining to Defendant's newly minted rendition of its statute of limitations defense in light of the Parties' stipulation; 3) relied on the Parties' agreement for equitable tolling and did not file a motion for equitable tolling; and 4) Plaintiff is also prejudiced in having to respond to this untimely MSJ without the benefit of discovery because Plaintiff understood that the issue of equitable tolling was resolved by the Parties stipulation.

## ARGUMENT[1]

I.     **Defendant's MSJ Should be Denied Because the Parties Stipulated to Toll the Statute of Limitations Deadline and Defendant Has Not Moved to Vacate the Parties' Stipulation**

---

[1] The applicable MSJ Standard of Review is established by Fed.R.Civ.P. 56.

Defendant's MSJ is due to be denied because the Parties stipulated to equitable tolling of the statute of limitations (and all deadlines) applicable to the instant claims. ECF No. 14, PageID.260-61 ("The parties request the Court … equitably toll all other deadlines in this matter until the completion of the class-certification period."). Because Defendant has not sought to vacate the Parties' stipulation, it remains binding, and Plaintiffs' claims are/were thus tolled.

## A. The Parties Stipulated That the Statute of Limitations Deadline Pertaining to the Opt-ins Claims Was Equitably Tolled.

Courts interpret tolling agreements just as they would any other contract. *Gould Elecs., Inc. v. Livingston Cnty. Rd. Comm'n*, 2018 U.S. Dist. LEXIS 29260, at *6 (E.D. Mich. Feb. 23, 2018) (citing *Delano v. Abbott Laboratories*, 908 F. Supp. 2d 888, 895 (W.D. Tenn. 2012) (collecting cases) ("A tolling agreement is a contract, and courts must ascertain the parties' intent in interpreting such agreements.). "Thus, the terms of tolling agreements, interpreted under contract principles, determine whether time-barred claims are revived." *Delano* 908 F. Supp. 2d at 895 (citing *SPPI-Somersville, Inc. v. TRC Cos.*, 2009 WL 2390347, at *6, *7 (N.D. Cal. Aug. 3, 2009) ("rejecting defendant's argument that tolling agreement is 'irrelevant' because limitations period had already expired when agreement was executed and holding that agreement tolled statute of limitations on expired claims because it specified that limitations period was tolled as of an earlier date, not date of agreement"). "The overreaching principle of contract interpretation is that the court

looks to all the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Rowe v. Montgomery Ward & Co, Inc.*, 437 Mich. 627, 641 (1991).

This is not an issue of first impression. The court in *Union Bank of Switz. v. HS Equities, Inc.*, 457 F. Supp. 515, 520-21 (S.D.N.Y. 1978), was presented with a tolling agreement with similarly broad language. *See id*. There, the court held that the plaintiff's claims were timely because the parties agreed to extend statute of limitations through the agreement's "broad and plain language" that applied extension to "any claims." "This suggests an intent by the parties to preserve all claims ... The Defendant may have second thoughts about the wisdom of its agreement, but the Court can find no wisdom not to accept its terms as broadly as it is written." *Id*. at 521.

Here, the Joint Discovery Plan similarly provided broad and plain language:

> **The parties request the Court stay and equitably toll all other deadlines in this matter until the completion of the class-certification period**. The parties believe that their resources and the Court's resources would be best served **if all remaining deadlines** and discovery **commence after the Court issues its Order concerning Plaintiff's Motion for Conditional Certification**.

ECF No. 14, PageID.260-61 (emphasis added). For the same reasons in *Union Bank of Switz*, the court should enforce the parties tolling agreement here.

In FLSA collective actions, the principle of equitable tolling often aligns with the remedial purpose of the statute. *See Clark v. A&L Homecare & Training Ctr.,*

*LLC*, 68 F.4th 1003, 1014 (6th Cir. 2023) ("Tolling the FLSA limitations period is familiar to federal courts."). "Even before *Clark*, 'the normal course of litigation could cause delays that inequitably frustrate the rights' of potential opt-in plaintiffs." *Cordell v. Sugar Creek Packing Co.*, 2023 U.S. Dist. LEXIS 160746, at *22 (S.D. Ohio Sep. 11, 2023) (citing *Gomez v. Glob. Precision Sys.*, LLC, 636 F. Supp. 3d 746, 761 (W.D. Tex. 2022).

In recognition of the realities of FLSA litigation, the parties specifically used the language "**equitably toll**." This term of art only makes sense in reference to the opt-ins' FLSA statute of limitations, and the language is not susceptible to any reading other than that the Parties intended to toll the statute of limitations applicable to potential opt-ins' claims, due to the delay of notice that resulted from bifurcating and conducting discovery on the merits of the claims and conditional certification first. Whereas court deadlines can and were "stayed" when the Court entered the Parties' stipulation, the statute of limitations was not susceptible to a "stay." Rather, in order to prevent the opt-ins' statutes of limitations from eroding, it was necessary to "equitably toll" their statutes.  No other reading of the "equitably toll" language makes sense under the circumstances.

The Opt-ins' statute of limitations were "equitably toll[ed] … until **the completion of the class-certification period**", and the **deadlines** were set to "commence **after the Court issues its Order concerning Plaintiff's Motion for**

**Conditional Certification**." ECF No. 14, PageID.260-61 (emphasis added). This is because equitable tolling is no longer necessary after the Court issues its Order concerning Plaintiff's Motion for Conditional Certification. The Court granting Plaintiff's Motion would permit notice to the Opt-in Plaintiffs and the submission of their consent to join forms, and the Court denying Plaintiff's Motion for Conditional Certification would preclude the Opt-in Plaintiffs from joining the collective action and render their statute of limitations immaterial.  No other reading of the "equitably toll" language makes sense under the circumstances.

The subsequent use of the language "*all* remaining deadlines" is also no accident. Courts typically use the word "deadline" after they raise the issues of equitable tolling and statutes of limitations. *See Cowley v. Prudential Sec., Inc.*, 2022 U.S. Dist. LEXIS 239071, at *13 (E.D. Mich. Nov. 17, 2022) (Referring to the "**equitable tolling of the statute of limitations deadline**") (emphasis added); *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) ("**Equitable tolling** allows courts to **toll a statute of limitations** when a litigant's failure to meet a legally-mandated **deadline** unavoidably arose from circumstances beyond that litigant's control.") (internal quotation marks omitted) (emphasis added).

The Joint Discovery Plan's plain language on the subject is broad: "all other deadlines" and "all remaining deadlines." This language was clearly intended to and did toll the statute of limitations applicable to the claims of the opt-in Plaintiffs to

14

whom notice was delayed, who ultimately consented to join the case. Since this deadline had not expired, the plain language of the Parties' Stipulation in the Joint Plan served to toll the statute of limitations.

### B. <u>The Joint Plan Was a Stipulation, Ultimately Adopted by the Court</u>.

It is anticipated that Defendant will argue that the language in the **Joint** Discovery Plan was not a stipulation but merely a request, as they did in their earlier Reply on their Motion for Leave. *See* ECF No. 149, PageID.7066 ("[T]his is *a request*. It is not an agreement. It is not a stipulation. There is nothing legally binding on the parties by this request.")  But the Court's Order adopted the proposed bifurcated discovery plan, did not Deny or refute the Parties' effort to equitably toll the statute of limitations, or otherwise negate this agreement. Defendant's argument is a distinction without a difference and patently absurd. One cannot possess both the intent to request an agreement and the intent to not enter into the agreement requested. Simply put, it's illogical that Defendant intended to jointly request an order tolling the statute of limitations which, when granted, it did not intend to be bound by.

Moreover, such a position is counter to the purpose of Rule 26(f), under which the Joint Discovery Plan was formulated. *See* Wright and Miller, 8A Fed. Prac. & Proc. Civ. § 2051.1 (3d. ed.) (2023) ("The animating impulse behind the Rule 26(f) conference requirement is that advance planning and collaboration will frequently

reduce or avoid problems that would occur without that planning."). One cannot contribute to a collaborative document such as a joint court filing with the intent to not be bound by it. Joint filings would be stripped of any value. Because Joint Discovery Plans provide value in streamlining discovery for both the parties and the bench, courts routinely enforce them.[2] This Court should likewise enforce the Parties' Joint Discovery Plan.

### C. <u>The Statute of Limitations Was Tolled as of October 8, 2020</u>.

There is also no doubt of the parties' intent regarding the timing of the statute of limitations. Plaintiff filed his Complaint on October 8, 2020. The statute of limitations for FLSA cases is two years from commencement of the action or three years if an employer is found to be in willful violation. 29 U.S.C. § 255(a). Thus, here, two years before commencement of the Complaint is October 8, 2018, and three years is October 8, 2017.  As outlined, *supra*, each and every action after the Parties reached the stipulation for equitable tolling as set forth in the Joint Discovery Plan confirms that the Parties agreed to equitably toll the statute of limitations for

---

[2] *See, e.g., Tabler v. Cent. Rent-A-Crane*, 1992 WL 712781, at *3 (N.D. Ind. Mar. 5, 1992) ("The motion by defendant Central Rent-A-Crane for an order enforcing plan of discovery and requiring plaintiff to submit to physical and mental examinations is GRANTED"); Williams v. Detroit Econ. Growth Corp., 2018 U.S. Dist. LEXIS 178314, at *4 (E.D. Mich. Oct. 17, 2018) (declining to grant Plaintiff's Motion for a Jury Trial because the "Joint Case Management Report/Discovery Plan (ECF No. 28), filed early in the case, which expressly states, '[t]his will be a bench trial.'").

the Opt-in Plaintiffs, and consistently refer to October 8, 2017 for all class members. *See* Statement of Additional Material Facts ("SAMF"), ¶¶ 13-30. Significantly, Defendant agreed to jointly drafted the notice to send to the putative class members who worked for Defendant "from October 8, 2017 to present", advising these class members that their rights may be affected by this notice. ECF 79-1, PageID.4558.

Defendant may also claim, as it did in its Reply Brief, that it "re-asserted its statute of limitations defense in its Amended Affirmative Defenses" after the Joint Discovery Plan was filed. As reflected in their Motion to Decertify, however, Defendant's Statute of Limitations defense actually **acknowledges the existence of the Parties' stipulation for equitable tolling,** and is **merely concerning a third year for willfulness violations.** To that end, Defendant specifically argued in its Motion to Decertify that a three-year willfulness violation is not appropriate and the Opt-in Plaintiffs who worked for Defendant before **October 8, 2018** (i.e. two years, as opposed to three years, before the filing of the complaint) should be decertified. *See* ECF No. 124, PageID.5112 ("The statute of limitations for FLSA actions is two years. 29 U.S.C. § 255(a). **Five of the Plaintiffs left Defendant prior to October 8, 2018**.") (emphasis added); *See also* SAMF, 26, 30. The Court, in turn, squarely addressed Defendant's statute of limitations defense in its Order:

> Absopure also contends that Plaintiffs are differently situated with respect to **the applicable statute of limitation.** … It asserts that five Plaintiffs were no longer employed by Absopure **as of October 8, 2018,**

**and therefore, their claims are barred by the FLSA's two-year statutory limitation period.** Id. (citing 29 U.S.C. § 255(a)).

ECF No. 145, PageID.6756 (emphasis added). Taken together, the relevant circumstances surrounding the tolling agreement, including all writings, statements, and other conduct by which the parties manifested their intent, show that Defendant agreed to toll the statute of limitations based on the Complaint's October 8, 2020 filing date.

## II. Even If the Court Were to Elect Not to Enforce the Parties' Stipulation, Defendant's MSJ Should be Denied Because Equitable Tolling Applies Under the Circumstances

The equitable tolling doctrine is read into every federal statute. *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013) (citing *Baden–Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 826 (S.D.Ohio 2007) (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.1998)). It "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Id.* (citing *Baden-Winterwood*, 931 F. Supp. 2d at 826).

The Sixth Circuit also articulated five factors to use when deciding whether to equitably toll claims: "(1) the petitioner's lack of [actual] notice of the filing requirements; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* As noted in *Struck*, the factors are not

18

comprehensive nor always relevant to every case.  *Id.*

### a. **Equitable Tolling Applies to FLSA Cases**

Courts have long recognized that equitable tolling is applicable to cases arising under the FLSA.[3]  Further, the text of the FLSA demonstrates that Congress chose to provide an opt-in mechanism which necessarily involves some lapse of time between the date a collective action is commenced and the date that each Opt-In Plaintiff files his/her consent form.  *Baden-Winterwood*, 484 F.Supp.2d at 829.  The fact that a potential Opt-In Plaintiff first be notified of their eligibility to participate before he or she can file a consent form explains the lapsed time.  *Id*. Accordingly, in FLSA cases, employees' claims continue to "die daily" until the plaintiffs receive notice and opt into the lawsuit.  *Hoffman v. Sbarro, Inc*., 982 F.Supp. 249, 260 (S.D.N.Y. 1987); *Ruggles v. WellPoint, Inc.,* 591 F.Supp.2d 150, 162 n. 12 (N.D.N.Y. 2008).  Yet, this statute "establishes only a procedural limitations period,"

---

[3] *See id.* (citing *Baden–Winterwood*, 484 F.Supp.2d at 826 (S.D. Ohio 2007)) ("although the FLSA's opt-in mechanism necessarily involves some lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form, the Act did not limit courts' equitable power to toll the FLSA's statute of limitations.") (internal quotations omitted).  *Hickman v. United States*, 43 Fed. Cl. 424, 427 (1999) (ruling that FLSA is subject to equitable tolling); *Abadeer v. Tyson Foods, Inc.*, 2010 WL 5158873 at *3 (M.D. Tenn. Dec. 14, 2010), *Kutzback*, LLC, 233 F.Supp.3d at 631; *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 438 (D.N.J. 2001); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1463 (C.D. Cal. 1996); *Reich v. Southern New England Telecomm. Corp.,* 892 F. Supp. 389, 404 (D. Conn. 1995); *Kamens v. Summit Stainless, Inc.,* 586 F. Supp. 324, 328 (E.D. Pa. 1984).

that is subject to equitable tolling. *Ott v. Midland-Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir. 1975).

### III. Courts Repeatedly Have Equitably Tolled the Statute of Limitations in FLSA Cases Under Similar Circumstances

Numerous courts have granted equitable tolling due to delays associated with the judicial process. For example, the court in *Kutzback*, 233 F.Supp.3d at 631 (W.D. Tenn. 2017) held: "delays during the collective-action certification process constitute 'extraordinary circumstances' beyond the plaintiffs' control, making them appropriate for the application of equitable tolling." Likewise, the *Struck* court granted equitable tolling where "the FLSA's statute of limitations period and has the potential to extinguish the claims of a substantial portion of the putative class." 931 F. Supp. 2d at 846; *see also Bolletino v. Cellular Sales of Knoxville, Inc.*, 2012 WL 3263941 (E.D. Tenn. Aug. 9, 2012) (tolling statute of limitations for all Opt-In Plaintiffs during pendency of discovery stay).

Because of the nature of FLSA actions, the standard in applying equitable tolling in FLSA actions is not stringent.[4] Notably, the Parties' Joint Discovery Plan

---

[4] *See In re: Bank of America Wage and Hour Emp't Litig.,* 2010 WL 4180530 (D. Kan. Oct. 20, 2010) (the unique circumstances of a collective action "is not only significant but justifies tolling the limitations period [ ] for the FLSA putative class until the court authorizes the provision of notice to putative class members or issues an order denying the provision of notice."); *Bacon v. Subway Sandwiches & Salads, LLC*, 2015 WL 1138387 at * 2 (E.D. Tenn. March 13, 2015) ("It has been found that the ordinary delays to be expected as a lawsuit works its way through federal court can alone justify equitable tolling"); *Israel Antonio-Morales v. Bimbo's Best*

was entered roughly two years before the recent *Clark* opinion and at a time when motions to conditionally certify collective actions were historically filed at the onset of litigation to avoid tolling for putative class members. 68 F.4th 1003, 1009 (6th Cir. 2023). And the delay necessitated by the "strong likelihood" similarly situated analysis announced in *Clark* discusses equitable tolling for this exact purpose. *See Id*. at 1012 ("**I fully join the majority opinion but write separately because equitable tolling should be made available to plaintiffs in collective actions under the Fair Labor Standards Act** (FLSA), 29 U.S.C. § 201 et seq… The heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit. **As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run**.") (emphasis added).

Additionally, because the standard is so low in FLSA actions — "ordinary delays" — this Court should equitably toll this FLSA action "to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions." *Israel Antonio-Morales*, 2009 WL 1591172, at *1.

---

*Produce, Inc.,* 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (collecting cases for the proposition that "[c]ourts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions under 29 U.S.C. § 216(b).").

The necessity of applying equitable tolling is even greater here because the facts also meet the factor-test set forth in *Struk*. Plaintiff has diligently pursued the rights of the putative class, and agreed to bifurcate discovery to conserve the resources of both the Court and the parties while stipulating to equitably toll the statute of limitations deadline. *See* ECF No. 14, PageID.260. From that point, the Parties consistently maintained that the relevant timeframe was from October 8, 2017 to present. Thereafter, the delays incurred in litigation prior to conditional certification were precipitated by Defendant's obstructionist tactics. *See* SAMF, ¶¶ 3, 16. Ultimately, the Court entered its Order Granting Plaintiff's Motion to Conditionally Certify the Collective Action eleven months after Plaintiff filed this motion. *See* ECF No. 77. After the class members received notice of the collective action, they diligently pursued their rights and timely submitting their consent forms.

Defendant will not be prejudiced by tolling because it knew the statute of limitations was from "late 2017" and litigated as such. *See Struck*, 931 F.Supp.2d at 848 ("Here, the Court finds that Defendant had full knowledge that the named Plaintiff brought the suit as a collective action on the date of the filing and was fully aware of its scope of potential liability. Therefore, Defendant is not in any way prejudiced by the tolling of the FLSA's statute of limitations for potential opt-in plaintiffs in this case.") (internal quotations and citations omitted); *see also Kutzback*, 233 F. Supp. 3d at 631 ("[I]t appears to the Court that Defendants should

have been aware of the potential scope of their liability from the date the Complaint was filed."). Defendant's knowledge in this matter surpasses the requisite threshold where Defendant also agreed to equitable tolling, and consistently acknowledged the relevant time period beginning in October 2017. *See* SAMF, generally. Thus, there is no prejudice to Defendant because it possessed full knowledge of the statute of limitation's tolling and was aware of its scope of potential liability.

It cannot be said that Plaintiff remained ignorant of the legal requirements for filing his claim. Plaintiff conferred and agreed to equitable tolling. Plaintiff would have never agreed to bifurcate discovery in this matter if the Parties did not agree to equitable tolling. Instead, Plaintiff's counsel would have immediately moved to conditionally certify the collective action and to equitably toll the statute of limitations in the interim as Plaintiff's counsel has done on other FLSA collective action lawsuits. *See, e.g., Kutzback*, 233 F. Supp. 3d 623. The Joint Plan's tolling agreement has done more than just induce Plaintiff's reliance. It has shaped the course of this litigation. Thus, it is not that Plaintiff was ignorant; it is that Plaintiff relied on the agreement in the Joint Discovery Plan. As detailed above, Plaintiff's reliance can be seen not only through the plain language of the Joint Plan, but also through Plaintiff's consistent definition of the relevant period as October 8, 2017.

Finally, the consequences of not granting equitable tolling is necessary to discuss for two reasons. The first reason is because it rewards Defendant's bad-faith

behavior. The Sixth Circuit has repeatedly held that affirmative misrepresentations by an employer that mislead claimants to miss filing deadlines are sufficient for equitable tolling. *3799 Mill Run Partners, LLC v. City of Hilliard*, 839 F. App'x 948, 952 (6th Cir. 2020) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 468-70 (6th Cir. 2003); *Leake v. Univ. of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) (explaining that equitable tolling is appropriate in situations where the claimant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass")).

Defendant argues that Plaintiff cannot demonstrate the requisite diligence because "they did nothing to pursue any potential claims for years."  ECF No. 147, p. 17. As threshold matter, this argument falsely assumes that the Opt-ins had notice of their FLSA rights absent notice of same. There is no evidence of same however. Rather, the only evidence is that they lacked notice of their rights, and Defendant failed to post the required DOL Poster to notify Plaintiff's of their rights under the FLSA. *See* RFP No. 12, **Ex. 1**, p. 3-4 (RFP 12: "A copy of any written material posted at Defendant's workplace in Michigan regarding its Truck Drivers' rights under the Fair Labor Standards Act ("FLSA") from October 8, 2017 to present." Defendant's Response: "No such records exist."). Equitable tolling has been routinely granted on this basis alone, recognizing that—in the absence of legally-

required notice—employees typically lack knowledge of their legal rights.[5]

Defendant's argument are also predicate don a fundamental misunderstanding of the due diligence required.  In the context of equitable tolling, the diligence to be examined is that of the Plaintiff and those opt-in Plaintiffs who learned of this case **prior to** receiving court-approved notice and promptly opted in.  *See Penley v. NPC International, Inc.,* 2016 WL 3636062, at *5 (W.D. Tenn. June 29, 2016).  Here, there is no evidence that any of the Plaintiffs were aware of their FLSA rights prior to receipt of the notice from the Court. Instead, the only evidence is that when the Opt-ins received notice of their rights under the FLSA pursuant to the Court-approved notice, they diligently submitted their consent to join this collective action. Thus, because all factors for same are satisfied, the Court is due to equitably toll the statute of limitations, even to the extent it elects to vacate or not to enforce the Parties' stipulation tolling the statute of limitations.

## IV.    Defendant is Equitably Estopped for Asserting its new spin on its Statute of Limitations Defense.

Defendant appears to conflate the legal concept of equitable tolling with that of equitable estoppel.  *See* ECF No. 147 at 18 (Arguing "[e]quitable estoppel is not warranted in this case…" notwithstanding the absence of any other argument or

---

[5] *See, e.g., Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014); *McClinton v. Alabama By-Prod. Corp.,* 743 F.2d 1483 (11th Cir. 1984); *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.,* 854 F.2d 762, 767 (5th Cir. 1988).

authority regarding same).  While equitable tolling merely requires that the Opt-in Plaintiffs would suffer prejudice based on circumstances beyond their control, equitable estoppel is based on the Defendant's affirmative acts which the Opt-in Plaintiffs relied on, in not seeking to pursue their claims sooner.[6] Here, the undisputed facts demonstrate that Defendant should be equitably estopped from asserting its new spin on the statute of limitations defense. Defendant failed to post the required DOL Poster to notify Plaintiff's of their rights under the FLSA. **Ex. 1**, p. 3-4. Thereafter, Defendant affirmatively represented that it agreed to equitably toll the statute of limitations. Plaintiff relied on Defendant's representation in this regard, and agreed to bifurcate discovery prior to issuance of notice. To allow Defendant to "pull the carpet out" from under the Opt-in Plaintiffs under these circumstances would be inequitable.

Even beyond its affirmative representations to both Plaintiff and the Court, Defendant never objected to an October 2017 deadline. To the contrary Defendant repeatedly referred to this period as "the relevant period", and only disputed a third

---

[6] To invoke equitable estoppel, a plaintiff must show that the defendant took affirmative steps to prevent the plaintiff from suing in time, "such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music Inc. v. Diamond Time, Ltd.,* 371 F.3d 883, 891 (6th Cir.2004). In addition to the requirement that the defendant's improper conduct concealed or otherwise hindered a plaintiff's ability to bring suit, equitable estoppel is premised on a plaintiff's demonstration her "ignorance is not attributable to a lack of diligence[.]" *Id.*

year willful violation from October 2017 to October 2018. Defendant never asserted its novel spin on the statute of limitations defense prior to its Second MSJ because it understood it had agreed to toll the statute of limitations. Under these circumstances, Defendant must be equitably estopped from asserting its new spin on its Statute of Limitations defense.

In the absence of equitable estoppel, Plaintiffs would be punished for relying on the Parties' agreement intended to facilitate the orderly adjudication of this matter by allowing for bifurcated discovery without prejudicing the putative class. Defendant should not be rewarded for this behavior, and the court should prevent such injustice by equitably estopping Defendant from engaging in such bad-faith "gotcha" tactics.

## CONCLUSION

The Court should enforce the Parties stipulation providing that the statute of limitations was equitably tolled. Alternatively, to the extent the Court is inclined to vacate the Parties' stipulation, despite the absence of a motion seeking vacatur, the Court should equitably toll the statute of limitations. As a further alternative, the Court should find that Defendant is equitably estopped from raising a statute of limitations defense because it affirmatively misled Plaintiffs from pursuing their claims sooner and Plaintiffs would be severely prejudiced if Defendant were permitted to spring a novel spin on its statute of limitations defense at this late stage.

Respectfully submitted,

Dated:  October 12, 2023

By: /s/ *Michael N. Hanna*

Michael N. Hanna
MORGAN & MORGAN, P.A.
Michigan Bar No.: P81462
Florida Bar No.: 85035
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 739-1953
mhanna@forthepeople.com

-and-

/s/  Andrew R. Frisch
Andrew R. Frisch
Florida Bar No. 27777
8151 Peters Road, Suite 4000
Plantation, FL 33324
(954) WORKERS
afrisch@forthepeople.com

*Attorney for Plaintiff*

## LOCAL RULE CERTIFICATION

I, Michael Hanna, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Michael N. Hanna*
Michael N. Hanna

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed using the CM/ECF system on April 12, 2023, which I understand will send a notice of same to all counsel of record.

*/s/ Michael N. Hanna*
Michael N. Hanna