UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on behalf
of those similarly situated,

      Plaintiff,                                        Case No. 20-12734

v.                                                              HON. MARK A. GOLDSMITH

ABSOPURE WATER COMPANY, LLC

      Defendant.

_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS (Dkt. 147)**

      This matter is before the Court on Defendant Absopure Water Company, LLC's motion

for summary judgment based on the statute of limitations (Dkt. 147).[1]  For the reasons that follow,

the Court grants the motion in part and denies it in part.

**I. BACKGROUND**

      Justin Guy is a former employee of Absopure, where he worked as a driver transporting

products within the state of Michigan.  Guy has brought this suit as a collective action on behalf

of himself and 25 opt-in plaintiffs who have joined this action and claim that Absopure violated

the Fair Labor Standards Act (FLSA) by not paying overtime for hours worked in excess of 40 per

week.  Compl. (Dkt. 1).  Plaintiffs seek to recover for workweeks from October 8, 2017 to the

present.  Pl. Counter-Statement Mat. Facts ¶ 10.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided
based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to
the motion, the briefing includes Plaintiffs' response (Dkt. 164) and Absopure's reply (Dkt. 176).

Guy filed his complaint in October 2020. Following an initial period of discovery, the Court ruled on the parties' summary judgment motions in February 2023. 2/8/23 Op. & Order (Dkt. 70). A couple of weeks later, the Court conditionally certified the case as a collective action. 2/21/23 Op. & Order (Dkt. 77). Opt-in Plaintiffs began joining this action on March 9, 2023, with the last joinder on April 20, 2023. See Notices of Filing Consent to Join (Dkts. 86, 90–101). A trial date is set for December 5, 2023. See 3/10/23 Order (Dkt. 89)

Absopure now moves for summary judgment on claims asserted by opt-in Plaintiffs that it says are barred by the statute of limitations. Br. Supp. Mot. Summ. J at 10.

## II. ANALYSIS[2]

"Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the action arose 'out of a willful violation,' in which case the lawsuit must be initiated within three years after accrual." Torres v. Vitale's Italian Rest., Inc, No. 1:18-cv-547, 2021 WL 5628781, at *3 (W.D. Mich. Apr. 9, 2021) (punctuation modified, quoting 29 U.S.C. § 255(a)). The FLSA further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "To opt in to an FLSA collective action, written consent must be filed within the statute of limitations set

---

[2] In assessing whether a party is entitled to summary judgment on a claim, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

forth in 29 U.S.C. § 255.  Thus, the filing of the complaint does not stop the statute of limitations

from running for individuals other than the complainant(s); instead, the statute of limitations will

continue to run as to other potential opt-in plaintiffs unless or until he or she files written consent

to opt into the collective action."  Kutzback v. LMS Intellibound, LLC, 233 F. Supp. 3d 623, 628

(W.D. Tenn. 2017).

Absopure argues that the opt-in Plaintiffs' claims are barred to the extent those claims arose

before March or April of 2021, the period before the opt-in plaintiffs filed their notices of consent

to join the action.  Br. Supp. Mot. Summ. J. at 10.  Plaintiffs raise three arguments in opposition:

(i) that the parties have stipulated to the tolling of the statute of limitations, or, if the Court should

find that no such stipulation exists, (ii) that Absopure is equitably estopped from arguing that the

statute of limitations has not been tolled, and (iii) that the statutory period should be equitably

tolled.  See Resp.  The Court addresses each argument in turn.

### A.  Whether the Parties Stipulated to Tolling the Statute of Limitations

Plaintiffs argue that the parties stipulated to the tolling of the statute of limitations in their

joint discovery plan (Dkt. 14).  Specifically, Plaintiffs point to section five of the discovery plan,

which states in part:

> The parties request the Court stay and equitably toll all other deadlines in this matter
> until the completion of the class-certification period. The parties believe that their
> resources and the Court's resources would be best served if all remaining deadlines
> and discovery commence after the Court issues its Order concerning Plaintiff's
> Motion for Conditional Certification.

Joint Discovery Plan at 4–5.  According to Plaintiffs, this language reflects an agreement by the

parties to toll the statute of limitations applicable to the opt-in Plaintiffs.  Resp. at 14.  Plaintiffs

point to the plan's use of the broadly-worded phrases "all other deadlines" and "all remaining

deadlines" as an indication that the parties "clearly intended to and did toll the statute of limitations

applicable to the claims of the opt-in Plaintiffs[.]"  Id.

3

Absopure disputes Plaintiffs' interpretation.  It argues that the plan's refence to "deadlines" is limited to "internal case deadlines, not any statute of limitations period."  Reply at 6.  Absopure further notes that the particular section of the plan relied upon by Plaintiffs is entitled "Discovery" and that the plan contains no reference to the statute of limitations.  Id.

The Court agrees with Absopure.  The joint discovery plan does not reflect an agreement between the parties on the tolling of the statute of limitations.  Tellingly, the phrase "statute of limitations" is entirely absent from the plan.  Although Plaintiffs point to the plan's use of broad phrases such as "all remaining" or "all other deadlines," such language is properly understood by recognizing the context in which it appears.  The purpose of a joint discovery plan under Rule 26(f) is to "assist the court" regarding the "timing and scope of discovery."  Fed. R. Civ. P. 23 Advisory Committee Note (1993).  While Rule 26(f) provides that the report should set forth the parties' "views" and "proposals" on a variety of topics, such topics all pertain to discovery or evidentiary matters—nothing substantively significant like tolling the statute of limitations.  Absent language clearly stating the parties' agreement to toll the limitations period, the Court will not read such an agreement into the plan.[3]

 Plaintiffs' reliance on Union Bank of Switz. v. HS Equities, Inc., 457 F. Supp. 515 (S.D.N.Y. 1978) is misplaced.  Resp. at 12.  There, the parties had entered into an agreement to extend the statute of limitations applicable to the plaintiff's claims.  Union Bank, 457 F. Supp. at

[3] Plaintiffs also argue that the joint discovery plan's inclusion of the phrase "equitably toll" shows that the parties "intended to toll the statute of limitations" because this "term of art only makes sense in reference" to the statute of limitations applicable to opt-in Plaintiffs.  Resp. at 13.  The Court disagrees. It is unclear to the Court what the parties attempted to accomplish by using this phrase.  As discussed below, the doctrine stems from the Court's equitable powers—not matters of contract.  Stephenson v. Fam. Sols. of Ohio, Inc., No. 1:18-cv-2017, 2020 WL 6685301, at *9 (N.D. Ohio Nov. 12, 2020).  Absent further indication from the text of the joint discovery plan that the parties intended to toll the statute of limitations, the Court concludes that the inclusion of this phrase in the plan fails to support Plaintiffs' argument.

520–521.  The agreement in that case was titled "AGREEMENT TO EXTEND STATUTE OF LIMITATIONS," and expressly stated that "[defendant] hereby agrees that the six-year statute of limitations with respect to any claims which the [plaintiff] may have against it . . . shall be extended."  Id.  Based on this "clear and unequivocal" agreement, the court concluded that the plaintiff's claims were timely and not barred by the statutory limitations period.  Id. at 521.

The joint discovery plan at issue here bears no resemblance to the agreement in Union Bank.  Unlike the Union Bank agreement, the discovery plan contains no language addressing the statute of limitations period, much less any language reflecting a "clear and unequivocal" agreement to toll that period.  Union Bank provides no support for finding that the parties agreed to toll the limitations period in this instance.

The Court concludes that joint discovery plan does not reflect an agreement by the parties to toll the limitations period.

### B. Whether Absopure is Equitably Estopped from Arguing that the Statute of Limitations Has Not Been Tolled

Plaintiffs also argue that Absopure is precluded from raising its statute of limitations argument because Absopure "affirmatively represented that it agreed to equitably toll the statute of limitations" and that Plaintiffs "relied on [Absopure's] representation in this regard."  Resp. at 26.

"Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations."  Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004).  "In addition to the requirement that the defendant's improper conduct concealed or otherwise hindered a plaintiff's ability to bring suit, equitable estoppel is premised on a plaintiff's demonstration that her ignorance is not attributable to a lack

of diligence on her part." <u>Cheatom v. Quicken Loans</u>, 587 F. App'x 276, 280 (6th Cir. 2014) (punctuation modified).

Plaintiffs fail to show that Absopure took any "active steps to prevent" Plaintiffs from timely joining this lawsuit. Although Plaintiffs assert that Absopure "failed to post the required [Department of Labor] Poster to notify Plaintiff's [sic] of their rights under the FLSA," Resp. at 26, such a failure does not amount to "active steps" preventing Plaintiffs from timely filing their notice of intent to join this suit. And while Plaintiffs maintain that they "relied" on Absopure's representations, they cite no evidence that Absopure made any representations to Plaintiffs regarding the tolling of the limitations period. <u>See</u> <u>Bridgeport</u>, 371 F.3d at 891 (finding that defendant was not equitably estopped from relying on the limitations period as a bar to the plaintiffs' claims despite plaintiffs' contention that they "were lulled into delaying suit by the assurances" from representatives of the defendant). To the extent Plaintiffs argue that any such representations are contained in the joint discovery plan, the Court rejects this argument for the reasons stated above.

Because Plaintiffs do not identify any "active steps" taken by Absopure to prevent opt-in Plaintiffs from joining this suit, Absopure is not equitably estopped from relying on the statutory period as a bar to Plaintiffs' claims.

### C. Whether the Court Should Equitably Toll the Statute of Limitations

Plaintiffs also argue that the Court should apply the doctrine of equitable tolling to the claims brought by opt-in Plaintiffs. Resp. at 20–25. Absopure opposes equitable tolling and argues that Plaintiffs cannot meet the criteria that courts use to determine whether equitable tolling is appropriate.

"The equitable tolling doctrine is read into every federal statute." <u>McElroy v. Fresh Mark, Inc.</u>, No. 5:22-cv-287, 2023 WL 4904065, at *10 (N.D. Ohio Aug. 1, 2023) (punctuation modified). "Even though the FLSA's opt-in mechanism necessarily involves some lapse of time between the date an action is commenced and the date that each opt-in plaintiff files his or her consent form, the Act did not limit a court's equitable power to toll the FLSA's statute of limitations." <u>Id.</u> (punctuation modified). "Equitable tolling is typically appropriate where necessary to 'prevent resulting injustice to plaintiffs from protection of defendants.'" <u>Cordell v. Sugar Creek Packing Co.</u>, No. 2:21-cv-00755, 2023 WL 5918753, at *7 (S.D. Ohio Sept. 11, 2023) (quoting <u>Clark v. A&L Homecare & Training Ctr., LLC</u>, 68 F.4th 1003, 1013 (Bush, J., concurring)). And in light of the heightened standard under which district courts are to determine whether plaintiffs are similarly situated announced by Sixth Circuit's recent decision in <u>Clark</u>, "district courts should freely grant equitable tolling to would-be opt-in plaintiffs." <u>Clark</u>, 68 F.4th at 1017 (White, J., concurring in part)).

Whether tolling is appropriate "must necessarily be determined [by the Court] on a case-by-case basis." <u>Doe v. Coliseum, Inc.</u>, No. 20-cv-10845, 2023 WL 6420792, at *5 (E.D. Mich. Sept. 30, 2023). Courts look to five factors: "(1) lack of actual notice of the filing requirement, (2) lack of constructive knowledge of filing requirement, (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." <u>Cordell</u>, 2023 WL 5918753, at *7.

The Court concludes that these factors weigh in favor of equitably tolling the limitations period. As to the first two factors, there is no reason to believe—and no evidence establishing—that opt-in Plaintiffs had actual or constructive notice of this case before the Court approved the class notice in March 2023. Indeed, a "potential opt-in plaintiff typically lacks actual notice of the

filing requirement (the first factor) until notice of the collective action is provided."  Cordell, 2023 WL 5918753, at *8.  Although Absopure asserts that the FLSA "statute itself" gives plaintiffs notice of their rights and filing deadlines, Br. Supp. Mot. Summ. J. at 15, courts applying this factor "give little weight to the fact that the mere existence of the FLSA placed Plaintiffs on constructive notice of the filing requirement."  Struck v. PNC Bank N.A., 931 F. Supp. 2d 842, 847 (S.D. Ohio 2013) (punctuation modified).[4]

As to the third factor—diligence—Plaintiffs were diligent in joining this action following the issuance of the Court-approved notice.  The Court approved the notice on March 3, 2023 and the last consent to join form was filed on April 20, 2023.  And given the nearly one-year period of time between the filing of Guy's motion to certify a class and the Court's opinion and order resolving that motion, the Court will not penalize the opt-in Plaintiffs for such delays outside of their control.  See, e.g., Thompson, 2014 WL 884494, at *9 ("The measure of diligence is whether a potential opt-in plaintiff joined a collective action when given the opportunity.").

---

[4] Absopure relies on an unpublished Sixth Circuit opinion, Archer v. Sullivan Cnty., Tenn., 129 F.3d 1263 (6th Cir. 1997) (table), for the proposition that the FLSA itself provides plaintiffs with "constructive notice of . . . their rights under the FLSA and of the deadline for filing suit."  Br. Supp. Mot. for Summ. J. at 16.  But the reasoning employed in Archer has since been rejected by a later decision of the Sixth Circuit.  See Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 188 (6th Cir. 2008) (finding that a plaintiff did not have constructive knowledge of her FLSA claims despite existence of FLSA at the time her claim accrued).  Following Hughes's lead, district courts within the Sixth Circuit have similarly rejected Archer's reasoning as flawed.  See, e.g., Baden-Winterwood v. Life Time Fitness, 484 F. Supp. 2d 822, 828 (rejecting Archer and explaining: "If the mere existence of a law suffices to impart constructive notice, an inquiry into the notice factors would be meaningless. A court would always find that every plaintiff had constructive notice of the filing requirement. Such a finding also questions why notice is required to be sent to all potential opt-in plaintiffs to inform them of their rights and statutory deadlines."); see also Thompson v. Direct Gen. Consumer Prod., Inc., No. 3:12-cv-1093, 2014 WL 884494, at *9 (M.D. Tenn. Mar. 5, 2014) (noting that Archer "suffers from several logical deficits").  At any rate, because Archer is an unpublished decision, it is not binding authority.  In re Blasingame, 986 F.3d 633, 637 n.2 (6th Cir. 2021).

Finally, Absopure fails to identify any prejudice that it would suffer from tolling the limitations period.  Br. Supp. Mot. at 14–18.  As Plaintiffs point out, Absopure has been on notice from the outset of this litigation of Guy's intentions of maintaining a collective action and its corresponding scope of liability.  See Struck, 931 F. Supp. 2d at 848 (finding an absence of prejudice to defendant where it "had full knowledge that the named Plaintiff brought the suit as a collective action on the date of the filing and was fully aware of its scope of potential liability") (punctuation modified).

The Court finds that the relevant factors weigh in favor of tolling the FLSA's limitations period for opt-in plaintiffs.  In light of this finding, the Court must next determine the period during which equitable tolling is warranted.  Plaintiffs request that the Court toll the limitations period from October 8, 2020, the date the action was filed.  Resp. at 23.

To determine the appropriate period of time to toll the limitations period, it is important to consider the objectives that tolling the statute of limitations is intended to achieve.  As Judge Bush explained in his concurring opinion in Clark, "[t]olling in [the collective action] context should be recognized by analogy to class actions."  68 F.4th at 1013.  In the class action context, the United States Supreme Court has instructed that "[w]hen a class is certified, the class members' claims are deemed to relate back to the date of filing of the class action complaint."  Id. (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550 (1974)).  One reason for this rule is that a "key goal" of Federal Rule of Civil Procedure 23—a goal that the FLSA shares—is "channel[ing] litigation through one case, which avoids a 'multiplicity of activity.'"  Id. at 1013–1014 (quoting Am. Pipe, 414 U.S. at 550).  Given the FLSA's goal of allowing similarly situated plaintiffs to unite in pursuing their claims in a single, collective action, the Court adopts a rule similar to that set forth by the Supreme Court in the class action context: the statute of limitations should be tolled from

the filing of the initial collective action complaint until the last date available for an opt-in plaintiff to file his or her notice of consent to join the action.[5]

Applying that rule here, the statute of limitations is tolled for the period between October 8, 2020 and May 2, 2023.  The Court further orders the parties, within one week of the entry of this order, to file a joint statement, not to exceed five pages, explaining which opt-in Plaintiffs remain in the case and the periods for which they may seek recovery.  If they do not agree on the issue, each party must file a separate statement, with the same page limits and due date.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Absopure's motion for summary judgment based on the statute of limitations (Dkt. 147).


SO ORDERED.

Dated:  November 21, 2023                    s/Mark A. Goldsmith
            Detroit, Michigan                       MARK A. GOLDSMITH
                                                              United States District Judge

---

[5] The Court recognizes that some courts, post-<u>Clark</u>, have tolled limitations periods in the FLSA collective action context from the filing of the motion to certify a class.  <u>See, e.g.</u>, <u>Heeg v. United Elec. Contractors, Inc.</u>, No. 1:21-cv-796, 2023 WL 7295153, at *14 (W.D. Mich. Nov. 6, 2023); <u>Doe v. Coliseum, Inc.</u>, No. 22-cv-10845, 2023 WL 6420792, at *5 (E.D. Mich. Sept. 30, 2023). The Court does not find these cases persuasive.  In <u>Heeg</u>, the Court tolled the statute of limitations from the date of the filing of the motion to certify a class, reasoning that "FLSA clearly contemplates different start dates for the commencement of a claim in a collective action, one date for named plaintiffs . . . and a 'subsequent date' for opt-in plaintiffs."  2023 WL 7295153, at *14 (quoting 29 U.S.C. § 256(a)-(b)).  But for purposes of equitable tolling, the Court must look to equitable factors—not the date an action is commenced under the FLSA.  As for <u>Doe</u>, the court in that case provided little guidance as to why the filing date of the motion to certify serves as an appropriate date to begin tolling the statute of limitations.  2023 WL 6420792, at *5.  Absent persuasive authority to the contrary, the Court concludes it appropriate to follow the guidance set forth in Judge Bush's concurring opinion in <u>Clark</u>.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 21, 2023.

<u>s/Holly Ryan</u>
Case Manager, in the absence of
Karri Sandusky