UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JUSTIN GUY**, individually on behalf
of himself and others similiarly situated,

    Plaintiff,

v.

**ABSOPURE WATER COMPANY, LLC**,
a domestic limited liability company,

    Defendant.

_____/

Case No.: 20-cv-12734

Hon. Mark A. Goldsmith

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING <u>ADMISSION OF ITS PROPOSED EXHIBITS</u>**

Plaintiff, Justin Guy, on behalf of himself and the finally certified class of Opt-in Plaintiffs, hereby submits his Response in Opposition to Defendant's Motion for Reconsideration of the Court's Order Denying Admission of its Proposed Exhibits 8, 125-127, 213-239, and 130-157 And Personnel File Exhibits [ECF No. 190], (hereinafter "Motion for Reconsideration") and states as follows:

**INTRODUCTION**

The issues raised by Defendant's Motion for Reconsideration are the identical issues the Court previously addressed in meticulous detail on multiple occasions. Indeed, when defense counsel made flagrant knowing misrepresentations of fact to the Court that they had produced underlying records, the Court allowed Defendant

the opportunity to prove this fact. As is now abundantly clear in the record, Defendant could not produce such proof, because the statements defense counsel made to the Court were knowing falsehoods. The Motion for Reconsideration is likewise "all bluff and bluster." It is "dead on arrival" because it fails to establish any mistake of fact that warrants correction. Thus, the Motion must be denied.

As has been par for the course for the entirety of this case, Defendant simply regurgitates the identical facts and arguments previously considered by the Court and rejected, and asks the Court to reverse the correct conclusion it previously reached. Notwithstanding Defendant's argument to the contrary, the Court has committed no mistake of fact or law. Rather, it is Defendant who continues to misconstrue the applicable law in apparent hopes that the Court will disregard its **repeated** failings to comply with the Federal Rules of Evidence, Federal Rules of Civil Procedure, and the Local Rules.

Like countless prior filings from Defendant, the Motion for Reconsideration is devoid of merit. Thus, the Court is due to deny the Motion for Reconsideration and leave its prior Order—which was founded on well-settled black-letter law—undisturbed.

## RELEVANT BACKGROUND

Justin Guy is a former employee of Absopure, where he worked as a truck driver delivering products within Michigan. Guy brought this suit as a collective

action on behalf of himself and other opt-in plaintiffs, alleging that Defendant violated the Fair Labor Standards Act ("FLSA"), because it failed to pay him and its other drivers overtime premiums when they worked in excess of 40 per week. ECF No. 1. Throughout the case, Defendant has asserted a lone affirmative defense, that Plaintiffs are allegedly exempt from the FLSA's overtime provisions pursuant to the so-called Motor Carrier Act ("MCA") exemption. *See* ECF No. 21, PageID.326. For his part, throughout this case, Plaintiff has asserted that the MCA exemption is inapplicable to his employment, and that he is also subject to the small vehicle exception to the MCA, either way. Thus, while not reflected by the hyperinflated docket resulting from Defendant's near-constant vexatious litigation tactics, the claims and defenses in this matter are relatively straight-forward.

Defendant, however, has litigated this matter by obstructing discovery, mischaracterizing facts, and by consistently introducing and arguing irrelevant matters.[1] *See* docket generally. Defendant's Trial Exhibit list, which Defendant exchanged two (2) days **after** the Court's deadline to exchange Exhibits, is emblematic of Defendant's bad faith litigation conduct throughout. *See* ECF 161-2. There, Defendant lazily listed every document it produced in discovery as a Trial

---

[1] For example, the Parties litigated Defendant's absurd discovery requests where Defendant, *inter alia,* initially propounded one thousand four hundred and sixty-eight (1,468) discovery requests, the vast majority of which were completely irrelevant to Plaintiffs' claims and Defendant's asserted defenses. *See* ECF No. 108

3

Exhibit "just in case," without putting in any effort to consider what exhibits it actually intended to use at trial. On October 10, 2023, Plaintiff filed his objections to Defendant's proposed exhibits. ECF No. 161. In his objections, Plaintiff objected to Defendant's proposed Exhibits 2-7, 8, 126-127, 130-157, 158-184, 185, 213-239, 240-243. *See id*. Plaintiff, *inter alia*, substantively objected to Exhibits 8, 126-127, 130-157, 185, 213-239 as inadmissible and non-compliant with Rule 1006. *See Id.*, PageID.7393-97. Additionally, Plaintiff objected to Exhibits 158-184 ("Personnel Records"), for *inter alia*, relevancy and lack of individualization. *Id*. at PageID.7396-97. Thereafter, Defendant filed its Response where it could have—but again chose not to—articulate the specific portions of any personnel file it intended to use, in its **second bite at the apple**. *See* ECF No. 168

The Court set a hearing on the parties' respective objections for October 24, 2023, where counsel was ordered to be prepared to discuss the relevant issues (Defendant's **third bite at the apple**). ECF No. 177. At the hearing, Mr. Acho repeatedly and knowingly falsely represented to the Court that Defendant had produced all underlying records, in reference to all exhibits that Defendant contended were admissible as "summaries." Exhibit ("Ex.") 1 at 70:13-17; 70:23-71:2. (Mr. Acho: "I talked to my partner, Mr. Cummings, and he confirmed that everything I said to you that we gave to counsel, we gave. We gave him everything . . . Mr. Hanna: I mean, if you want, Judge, we can put something in the record and

4

have them point to where they produced it and if they didn't, if I'm wrong, then you can sanction us and if they're wrong, you can sanction them. They never produced it, period."). With regard to the personnel records, Plaintiff's counsel again repeated his objections: "A single exhibit should not contain multiple individual exhibits . . . we would certainly object to any mention of why these plaintiffs were terminated . . . this is not a wrong termination lawsuit, it's a collective action lawsuit based on the unpaid wages." *Id.* at 57:25-58:1; 58:11-14. The Court noted the validity of Plaintiff's arguments[2] and ordered Defendant to particularize its references to the personnel files, rather than listing the entirety of the voluminous files. *Id.* at 60:17-19. Defense counsel agreed that it would. *Id.* at 60:20-21.

Following the hearing, on October 26, 2023, the Court ordered Defendant to produce a transmittal letter or email to prove it had produced the underlying documents in reference to Exhibits 8, 126-127, 130-157, 185, 213-239. [ECF No.

---

[2] The Court: "while there might very well be relevant documents within a personnel file such as anything dealing with the terms of payment or service that they were required to perform, there probably are also many, many documents that have nothing to do with our case many of which might be very personal matters that would raise privacy concerns. So I understand the plaintiffs' position and I understand that you think there's something in personnel files that would be of use to you, but generally speaking just to say well because an employee has sued an employer, now everything that's in the employee's personnel file is something that I will want to use at trial, **that's overbroad so you do need to at this point slim this down to put plaintiff on notice of what you are really intending to use**." Ex. 1, 59:15-60:3 (emphasis added); see also *Id.* at 60:10-13 (The Court: "**but to say hundreds and hundreds of documents** are going to be potentially used, **that's not the way we generally conduct our business here**.") (emphasis added).

5

180, PageID.8236], as Mr. Acho repeatedly misrepresented Defendant had. With regard to the personnel files, the Court required Defendant to "**identify the specific information it intends to use and for what purpose**." *Id*. (emphasis added).

On October 31, 2023, in response to the Court's Order, Defendant filed its supplemental memorandum (its **fourth bite at the apple**). *See* ECF No. 182. Defendant offered no "when and where" analysis for the Rule 1006 objections raised by Plaintiff regarding Exhibits 8, 126-127, 130-157, 185, 213-239. *See* ECF No. 182. Defendant admitted—as it must—that it had not produced the underlying records after all. Without acknowledging Mr. Acho's material misrepresentations, Defendant attempted a slight of hand. Defendant simply provided the dates for when it had initially produced the subject summary charts listed on its Exhibit List [ECF No. 182, PageID.8245-48], and attempted to justify its untimely production through a series of baseless arguments as if to insinuate that this production was for the underlying records.

The Court held another hearing related to these issues on November 9, 2023. At the hearing, **Defendant's fifth bite**, Plaintiff again objected to Exhibits 8, 126-127, 130-157, 185, 213-239 as inadmissible under Rule 1006 because Defendant never produced the underlying data as required by the Rule.[3] As relevant to this

---

[3] Mr. Hanna: Rule 1006 puts the burden on the party this's intending to utilize this discovery to meet its elements and part of that, well, part of those requirements is that they produce the underlying data. It's not the receiving party's obligation or duty

6

Response, Defendant again failed to specify the particular documents in the personnel files it intended to use at trial, but Defendant also failed to provide them to the Court. For his part, Plaintiff again repeated his objections to the personnel files. ECF No. 200, PageID.8934. When prodded for specificity, Defendant cited John Aniol, who was discussed extensively, and the only "understanding" reached was a stipulation that Defendant would not seek to introduce any portion of the personnel files, save for disciplinary records whose relevancy is parallel to Mr. Aniol's. *See Id.*, PageID.8935-37.

On November 15, 2023, the Court entered another Order addressing these issues and stated:

> Absopure's Exhibits 8, 126–127, 130–157, and 213–239: Because the Court concludes that Absopure failed to meet its burden to admit this evidence under Rule 1006, these exhibits are inadmissible.[4]
>
> Plaintiffs' Personnel Records and Disciplinary History: **Per the parties' stipulation at the November 9 hearing, these exhibits will not be admitted**. The Court may permit Absopure to introduce Exhibit 159, (otherwise identified as ABS 2120–2129), which Absopure indicates is relevant to opt-in plaintiff John Aniol's workplace disciplinary history. However, the Court will require the parties to first seek permission to present the issue of Aniol's disciplinary history out of the jury's presence before presenting any evidence or argument on this issue.

---

to advise the producing party that they're not going to meet their evidentiary burden. . . . It's not my job to [do] that [for] them." ECF No. 200, at 25:20-25; 26:11-12.
[4] The Court's only error in the Order is a scrivener's error inadvertently omitting Exhibit 185 from this list.

7

ECF No. 191, PageID.8718-19 (emphasis added).

**Not satisfied with five bites at the apple**, Defendant thereafter emailed another list of exhibits related to personnel files to Plaintiff's counsel, falsely contending that the parties had reached an "understanding" regarding their admissibility. Ex. 2 at 2. Defendant also stated its intent to file a Motion for Reconsideration regarding Exhibits 8, 126–127, 130–157, and 213–239. *Id.* at 3. Plaintiff opposed. *Id*. at 1-2. Unperturbed by the utter lack of merit of its arguments, Defendant vexatiously filed this Motion for Reconsideration. ECF No. 198.

## LEGAL AUTHORITY AND ARGUMENT

I. **Defendant's Motion For Reconsideration is Fatally Flawed Because Defendant Fails to Establish That the Court's Order Was Based on Any Mistake of Fact.**

Local Rule 7.1(h)(2)(A) states:

(2) Non-Final Orders. Motions for reconsideration of non-final orders are disfavored. They … may be brought upon the following grounds: . . . (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision[.]"

*See also Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.*, 582 F. Supp. 3d 511 (E.D. Mich. 2022). Defendant's Motion for Reconsideration **wrongly accuses the Court of making two mistakes of fact** which it contends warrant reversal. ECF No. 198, PageID.8770 (emphasis added). Each of these arguments fails. The first, is its wrongful assertion that "the Court ignored the fact that the underlying data to

8

the Exhibits was part of an SAP Enterprise Resource Planning ("ERP") system." *Id.* As a result, Defendant asserts, it would have been impossible to produce the data in native format. *Id.*

Defendant's argument is fatally flawed because the premise of its argument is that Defendant disagrees with the Court's conclusion, not that the Court was mistaken as to any fact. Contrary to Defendant's argument, the Court did not ignore the fact that the underlying data was in an ERP. Rather, the Court was well aware of this fact, which was extensively discussed at the November 9, 2023 hearing.[5] In fact, Defendant acknowledged that it could have, but chose not to, exchange the underlying data, thus precluding Defendant's instant argument regarding supposed impossibility.[6] As evidenced by the transcript of hearing, Defendant's sole contention was that it was not required to produce the underlying data because Plaintiff never asked; **not** that it was impossible. *See* Fn. 6, *supra*. Given this undeniable truth, Defendant's shifting argument is not a "new fact," and thus not a viable basis for reconsideration. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (analyzing similar motions for

---

[5] Mr. Cummings: "First of all the data is in the midst of an enterprise software system from SAP, so the data, that's where it is." ECF No. 200, PageID.8920 at 33:24-25.
[6] Mr. Cummings: "We didn't hand them, right, **it's true, we never handed them a disk**, it would have been terabytes of data because it would have been useless 'cause they would have had to get their own enterprise, you know, SAP enterprise system to install it up and running, maybe find an expert who had such a system, **but they never asked for it . . .**") *Id.*, PageID.8923-24, at 36:22-37:37:2 (emphasis added).

9

reconsideration for final orders under Fed. R. Civ. P. 59(e) and finding that "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued."). Likewise, Defendant's related argument that Plaintiff had no means to access the ERP is both a red-herring and circular in its reasoning. Plaintiff was only denied such access due to Defendant's failure to comply with its obligations pursuant to Rule 1006 in the first instance.[7]

Defendant's second argument is that the parties' agreement regarding ESI did not provide for on-site review of data. ECF No. 198, PageID.8770. As a threshold matter, the Parties' ESI order has **nothing** to do with the discovery at issue.[8] Moreover, **Defendant** moved for ESI production in PDF format but only "**in**

---

[7] Defendant's argument appears predicated on the implicit argument that Plaintiff would have had to retain an expert to analyze the data, if it had been produced. As demonstrated by Plaintiff's retention of the sole expert in this case, Plaintiff would have hired any necessary expert(s) to properly prosecute the case.

[8] Plaintiff moved for an ESI Order concerning searches for **responsive emails** based on search word terms. *See, e.g,* ECF No. 33, PaeID.455 (Arguing that "production of ESI in PDF format violates Fed.R.Civ.P. 34(b)(2)(E)(i) because a PDF **is not how an e-mail is used or kept in the ordinary course** —but rather involves converting the e-mail into a non-ordinary course format.") This was in connection to Plaintiff's First Request for Production, Request No. 1 for "All electronic correspondence in Defendant's email server between Defendant's owner(s), executives, supervisors, and managers from 2016 to present that contain any of the following search terms: "Fair Labor Standards Act"; "FLSA"; "Motor Carrier Act"; "MCA". Thereafter, the Parties litigated the number of custodians Defendant is required to search on its email server. *See* ECF No. 33, PageID.449 (Defendant arguing that searches should be limited to ten custodians).

**addition to** native format or Single-Page Tagged Image File Format ("TIFF")" and **not** as a substitute for production in its native format. *See* ECF No. 33, PageID.451. The Court agreed with Defendant, and Ordered "**the parties to produce ESI in native format**" while indicating that "the Parties have the **option** of **additionally** producing the ESI in PDF format." Order, ECF No 34, PageID.459 (emphasis added). Thus, to the extent the ESI Order applied to the discovery at issue as Defendant now claims, **Defendant's production in PDF format is in direct violation of the Court's Order requiring production in native format regardless of whether production in PDF format is "additionally" made**.

 Either way, ESI stipulations are irrelevant to the plain language of Rule 1006, which states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. **The proponent must make the originals or duplicates available for examination** or copying, or both, **by other parties at a reasonable time and place.** And the court may order the proponent to produce them in court.

(emphasis added). The gist of Defendant's argument here is that through the adoption of the irrelevant ESI protocols, Plaintiff somehow waived his duty to inspection and/or relieved Defendant of its obligation to comply with Rule 1006. Defendant's argument in this regard seeks to impose a duty on Plaintiff that he does not have (a point already addressed by the Court). Rule 1006 places the burden of production on only one party, the proponent of the evidence. And that duty is one

11

of production, specifically, "when and where" Plaintiff may review the underlying data/documents. *See United States v. Modena,* 302 F.3d 626,633 (6th Cir. 2002) (The proponent "had a duty to 'state when and where' the documents underlying its summaries could be viewed, without regard to whether Modena made a request for these documents.") (citing *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996)). If the inclusion of data in the supposed "summary" documents were sufficient, the requirements of Rule 1006 would be superfluous, and there would never be a necessity to produce underling data that a party contends it "summarized." Such a conclusory statement falls woefully short of compliance Rule 1006's "when and where" requirement.

The First Circuit case, *Air Safety, Inc.*, cited as reasoning by the Sixth Circuit in *Modena* is also instructive. There, the other party objected to the instruction of the summary exhibits where the underlying documents were not produced. *Air Safety Inc.* 94 F.3d at 7. There, **the proponent provided the summary exhibits to the other party a year and a half earlier**, and in that time the other party never asked to see the underlying documents, going so far as to sign pretrial memoranda without noting any objections regarding same. *Id.* (emphasis added). For these reasons, the proponent in *Air Safety Inc.* believed that it "made available" the underlying documents but the other party wasn't interested. *Id.* And the trial court "did not dispute the proponent would have provided the underlying documents — if requested

12

— at any time during the lengthy pretrial period." *Id.* at 8. Nonetheless, the trial court correctly ruled, and the First Circuit affirmed, that under these facts, the proponent "fell short of meeting its responsibility under Rule 1006." *Id.* at 7. The trial judge reasoned:

> **I don't think that it is enough to say that the documents [1] have been available or [2] could have been available** or [3] were available when they were not identified as the source for these summaries. What is important in the discovery context is one thing, but once the discovery comes down to trial and somebody prepares a summary, **it seems to me that the person providing the summary must say** now these documents, **this summary is a summary of the following documents and here they are**.

*Id.* (emphasis added). Thus, to satisfy Rule 1006, the proponent must produce the underlying documents and specify "when and where" the other party can examine same. The fact that underlying data is purportedly included in the summary chart produced does not satisfy this rule, and is problematic for various other substantive reasons. For example, Plaintiff would not have an opportunity to verify its accuracy by analyzing the information in the underlying documents with the information in the summary exhibit, and Defendant's records have proven to be abysmal in this lawsuit. Thus, the Court did not misapply the law, and there is no "intervening binding authority", either way.

In this matter, it is undisputed that Defendant did not produce or provide Plaintiff with a "where and when" Plaintiff may examine the underlying data. To the contrary, it now claims that it would be impossible for it to produce the data, despite

13

defense counsel's prior acknowledgment that it could have but chose not to. Moreover, "just before trial" is not a reasonable time for examination under Rule 1006. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985); *see also Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 615 (2005) ("A little over a month before trial" for roughly 15,698 pages is not enough time because it would require the other party to check the veracity of the source documents, make calculations, and then analyze the information in detail to verify the conclusion.) (emphasis added). Here, trial is set to commence in less than 72 hours. Additionally, as Defendant stated at the hearing, the underlying data Defendant failed to produce is many terabytes of raw numbers. *See* Fn. 6, *supra*. One terabyte is 1000 gigabytes. Printing one (1) gigabyte of raw data would result in 65,000-678,000 worth of pages.[9] Thus, for just 1/1000 gigabytes with less than 72 hours is not enough time under *Jade*. Additionally, here, Plaintiff would first need to convert the data for human consumption. Only after conversion could Plaintiff then follow the other *Jade* steps (check the veracity of the source documents, make calculations, and then analyze the information in detail to verify the conclusion). *Jade Trading, LLC*, 67 Fed. Cl. at 615.

## II. The Court Properly Excluded the Exhibits Related to Personnel Files.

---

[9] *See* Digital War Room, *How Many Pages in a Gigabyte? A Litigator's* Guide, digitalwarroom.com https://www.digitalwarroom.com/blog/how-many-pages-in-a-gigabyte (last visited November 12, 2023).

Despite multiple opportunities, Defendant never produced the Personnel Files exhibits as required. *See Supra*. At every opportunity, Plaintiff objected. *See supra.* And this Court properly recognized the irrelevant, prejudicial, and bundled nature of the personnel file exhibits.[10] *See supra*. There was no agreement to admit the proposed exhibits Defendant now seeks to admit through a **sixth bite at the apple**. To the contrary, the Court's Order properly excluded them. And Defendant's second nonsensical Motion to Dismiss, predicated on the notion that Plaintiffs "committed fraud" warranting dismissal because their declaration estimates of small vehicle usage that do not match Defendant's (inaccurate) records, provides no basis for reconsideration. *See* ECF No. 190. In essence, Defendant styles its Motion as one for Reconsideration due to the Court's alleged mistakes and unfair prejudice to Defendant, but in reality, it is a desperate attempt urging the Court to disregard all applicable law, put aside Defendant's prior arguments, assertions of fact, and concessions, and simply press "restart" like the Court had never previously addressed the identical issues ***ad nauseum***.

---

[10] Substantively, these records are largely irrelevant to the claims and defenses in this matter, and also contain multiple levels of hearsay. These records also include public documents that are neither authenticated nor certified (*see* Fed. R. Evid. 1005), and impermissibly include Plaintiff's confidential information. Plaintiff, however, could not lodge specific objections to these hundreds of pages of documents based on Defendant's composite listing of all personnel files for all Plaintiffs in a collective action.

Perhaps Defendant's Motion for Reconsideration is best characterized as a motion to split the baby, to disregard the rules so that Defendant can "win" something. But as Justice Brennan once noted, "King Solomon did not, in fact, split the baby in two, and had he done so, I suspect that he would be remembered less for his wisdom than for his hardheartedness. Justice is not served by compromising principles in this way." *Turner v. Murray*, 476 U.S. 28, 44 (1986).

## CONCLUSION

Defendant's Motion for Reconsideration is nothing more than a sixth bite at the apple, and in the alternative, an invitation for the Court to split the baby. It raises no mistakes of fact, no new intervening facts, and no misapplication of the law. All of the issues raised by the Motion have been litigated ad nauseum and previously resolved by the Court. There is no basis to disturb the Court's previous correct rulings.

For these reasons, Defendant's Motion is due to be denied.

Dated:  December 3, 2023

Respectfully submitted,

By: /s/ *Michael N. Hanna*
MORGAN & MORGAN, P.A.
Michael N. Hanna
Michigan Bar No.: P81462
Florida Bar No.: 85035
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 739-1953
mhanna@forthepeople.com

16

-and-

*/s/ Andrew R. Frisch*
MORGAN & MORGAN, P.A.
Andrew R. Frisch
8151 Peters Road, Suite 4000
Plantation, FL 33324
(954) WORKERS
afrisch@forthepeople.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed using the CM/ECF system on December 3, 2023, which I understand will send a notice of same to all counsel of record.

*/s/ Michael N. Hanna*
Michael N. Hanna