## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**JUSTIN GUY**, individually on behalf
of himself and others similiarly situated,

      Plaintiff,

v.

**ABSOPURE WATER COMPANY, LLC**,
a domestic limited liability company,

      Defendant.

_____/

Case No.:  20-cv-12734

Hon. Mark A. Goldsmith

## <u>FINAL PRETRIAL ORDER</u>

Pursuant to the Court's Order Setting Schedule (Dkt. 89), the parties jointly submitted before trial a proposed joint final pretrial order. The instant order embodies, in substantial form, the proposed order submitted by the parties. Statements of parties regarding various issues have been retained to preserve a record of those statements.  To the extent anything in this order conflicts with the Court's pre-trial or trial rulings, those rulings will be deemed the controlling decision of the Court.

   **1.** **<u>Jurisdiction</u>**:  This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et. seq.* The Court has original jurisdiction over this federal claim, and jurisdiction is not contested by any party.

   **2.** **<u>Trial</u>**: This matter will be tried to a jury. The estimated length of trial (in terms

1

of full days of trial) is contingent on the number of witnesses the Court allows each Party to present.  To the extent the case is tried on representative proof similar to that which has been used in similar cases, Plaintiff anticipates the trial should be five (5) days or less.  Defendant estimates that it would take four full days of trial for Defendant to submit its proofs.

**3.** **Statement of Claims and Defenses**

    **i.** **Elements of the claim** & **the controlling or most appropriate legal authority in support of every element of the claim:**

        **a.** **Claim for Overtime Under FLSA**

In order to establish a claim under the FLSA for failure to pay overtime compensation and/or minimum wages to covered employees and/or for failure to keep payroll records in accordance with the FLSA, a plaintiff must demonstrate: 1) the existence of an employer-employee relationship; 2) the employee's acts which are protected by FLSA, or for work that involves some kind of interstate activity; 3) the employer's failure to pay the employee overtime; and 4) where claim is for and on behalf of others similarly situated, who those others are and facts that would entitle them to relief." *Kutzback v. LMS Intellibound, LLC.,* 2014 WL 12843044, at *4 (W.D. Tenn. Sept. 5, 2014) (further citation omitted).

        **b.** **Employer Has Obligation to Keep Accurate and Complete Records of Time Worked.**

**Plaintiff**: "[T]he employer is required to maintain timekeeping records under the FLSA, and that where the employer has failed to do so, the employee can put

2

forth a damage estimate that the employer has the burden to negate." ECF No. 70, PageID.4509 (citing *Herman v. Palo Grp. Foster Home, Inc.,* 183 F.3d 468, 472 (6th Cir. 1999) (explaining that where an employer has kept insufficient records, "an employee has [met] his burden if he proves that he has . . . performed work for which he was improperly compensated and . . . produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (punctuation modified)).

**Defendant:**  An employer may show hours worked using records other than a standard clock-in and clock-out system.  *Oliva v. Infinite Energy, Inc.*, 1:11-cv-00232-MP-GRJ, 2012 WL 11868265 at *10 (N.D. Fla. October 12, 2012) (employee activity logs can provide an accurate estimate of time worked.)

### c. <u>Liquidated Damages</u>

The Court held that Defendant's good faith defense fails as a matter of law such that Plaintiffs will be awarded with liquidated damages if they establish an FLSA violation. *See* Order, ECF No. 70, PageID.4510-12.

### d. <u>Willful Violation</u>

"Section 6(a) of the Portal–to–Portal Act, 29 U.S.C. § 255(a), provides that if an employer 'willfully' violates the FLSA, the statute of limitations is three years," but only two years if the violation is not willful. *Herman v. Palo Grp. Foster Home, Inc.,* 183 F.3d 468, 473–74 (6th Cir.1999).  A willful violation arises when the

"employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]...." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).

### e. **Attorneys' fees and costs**

Plaintiff: In addition to unpaid overtime damages and liquidated damages, the Court shall award reasonable attorneys' fees and costs to Plaintiff, to the extent Plaintiff prevails at trial. An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 501 (6th Cir.1984). The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Id.* at 502. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here "encourage[s] the vindication of congressionally identified policies and rights." Id. at 503. Indeed, the Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) (quoting *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985) (unpublished)).

**Defendant:** Any decision on attorneys' fees will not be part of the trial and are thus not properly part of the JFPO.

> **ii.**   **The principal facts in support of the claim, both as to liability and damages, including whether each fact is contested or uncontested:**

1.   Defendant, Absopure Water Company, LLC ("Absopure") is a Michigan-based bottled water company that draws its water from Clark Lake, Michigan, and employs Drivers who deliver water and other products to homes and offices. [Contested _____/Uncontested __**X**____].

2.   Defendant is an enterprise covered under the FLSA whose annual gross revenue exceeds $500,000. *See* Answer, ECF No. 12, ¶¶ 11-17. [Contested _____/Uncontested __ **X** ___].

3.   Plaintiffs are/were employees of Defendant. [Contested _____/Uncontested __ **X** ___].

4.   Plaintiffs worked for Defendant as Truck Drivers.[1] [Contested _**X**____/Uncontested _____].

5.   Plaintiffs were based out of Defendant's facilities located in Grand Rapids and Plymouth, Michigan. [Contested _____/Uncontested __ **X** ___].

---

[1] Defendants interchangeably referred to these Truck Drivers as "Route and Sales Delivery Drivers", "Sales and Service Drivers", "Sales and Service Specialists", "Sales and Service Specialist Trainees", and "Entry Level Route Delivery Drivers." Plaintiff contends that job titles are not relevant, citing *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009)

6.      Plaintiffs worked in excess of forty (40) hours in various workweeks for Defendant during the relevant time period. [Contested __ **X** ___/Uncontested _____].

7.      Defendant did not accurately track all of Plaintiff's clock-in or clock-out times. *See* 30(b)(6) 71:6-9. *See also* Order, ECF No. 145, PageID.6750 (Finding that Absopure "did not utilize a system to track the entirety of its employees' worktimes each day."). [Contested **X**____/Uncontested _____].

      a.   **Defendant states:** Defendant kept track of the majority of Plaintiffs' time via a time clock system near the entrances to its facilities and a handheld inventory system that recorded when Plaintiffs checked-out their vehicle before going on their routes and checked in their vehicles after returning from their routes.

8.      Defendant did not compensate Plaintiffs with "a time-and-a-half premium for their overtime hours worked." 30(b)(6) Dep. 218:11-14; 222:1-4. [Contested __**X**___/Uncontested _____].

9.      Defendant's good faith defense fails as a matter of law such that Plaintiffs will be awarded with liquidated damages if they establish an FLSA violation. *See* Order, ECF No. 70, PageID.4510-12. [Contested __**X**__/Uncontested ____].

10.     Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for hours

worked in excess of forty (40) hours per week when they had knowledge, or should have known, such was, and is due to Plaintiff. [Contested __ **X** ___/Uncontested _____].

11.   Plaintiffs are owed damages for their unpaid overtime hours worked. [Contested __ **X** ___/Uncontested _____].

12.   Named Plaintiff, Justin Guy, prevailed on Summary Judgment as to liability, and his trial is to proceed for damages only. *See* ECF No. 109.  [Contested _ **X** ___/Uncontested _____].

13.   Defendant has multiple vehicles that are referred to as "sprinter vans" that it utilizes to make deliveries, which many of the Plaintiffs drove on occasion. These vans each weigh less than 10,000 pounds. [Contested __ X ___/Uncontested _____].

14.   The Parties stipulated to equitably toll the statute of limitations for the Opt-in Plaintiffs. *See* ECF No. 14, PageID.260. [Contested _ **X** ___/Uncontested _____].

15.   The Court has finally certified this collective action, and ruled that Plaintiffs are similarly-situated. *See* ECF No. 145. [Contested _____/Uncontested __ **X** ___].

16.   With respect to the Small Vehicle Exception, the Parties stipulated that the Court's Order, [ECF No. 109], "applies to the Opt-in Plaintiffs who drove a

vehicle that weighs less than 10,001 pounds at least two times per month during their employment with Defendant and renders the Motor Carrier Act Exemption inapplicable to these Opt-in Plaintiffs." ECF No. 111, PageID.4745.   Based on Defendant's summary chart pertaining to the number of times Opt-in Plaintiffs drove vehicles that weigh less than 10,001 pounds, [ABS 3581-3738], the Court's Order Granting Summary Judgment based on the Small Vehicle Exception likewise undisputedly applies to the following Opt-in Plaintiffs:

    a.  Opt-in Plaintiff Aaron Armstead – According to Defendant's records, Aaron Armstead (Employee No. 37862) worked for Defendant for four months, from May 14, 2018 to September 21, 2018, and drove a vehicle that weighs less than 10,001 pounds on 24 routes/workdays, or for an average of 6 routes per months. [Contested __**X**__/Uncontested _____].

    b.  Opt-in Plaintiff Dwane Armstead - According to Defendant's records, Dwane Armstead (Employee No. 38033) worked for Defendant for four months, from June 11, 2018 to October 4, 2018, and drove a vehicle that weighs less than 10,001 pounds on 21 routes/workdays, or for an average of 3.5 routes per months. [Contested __**X**__/Uncontested _____].

    c.  Opt-in Plaintiff Matthew Jackson- According to Defendant's records, Jackson (Employee No. 38717) worked for Defendant for 2.5 months, from November 19, 2018 to February 8, 2019, and drove a vehicle that weighs less than 10,001 pounds on 12 routes/workdays, or for an average of 4.8 routes per months. [Contested __**X**__/Uncontested _____].

    d.  Opt-in Plaintiff Terry Pemberton - According to Defendant's records, Pemberton (Employee No. 43325) worked for Defendant for 4 months, from February 21, 2022 to June 24, 2022, and drove a vehicle that weighs less than 10,001 pounds on 45 routes/workdays, or for an average of 11.25 routes per months. [Contested __**X**__/Uncontested

_____].

e.  Opt-in Plaintiff Kevin Phipps - According to Defendant's records, Phipps (Employee No. 31614) worked for Defendant for 47 months, from September 11, 2017 to August 16, 2021, and drove a vehicle that weighs less than 10,001 pounds on 228 routes/workdays, or for an average of 4.85 routes per months. [Contested __**X**__/Uncontested _____].

f.  Opt-in Plaintiff Kyle Winconek - According to Defendant's records, Winconek (Employee No. 41647) worked for Defendant for 17 months, from January 24, 2021 to July 6, 2022, and drove a vehicle that weighs less than 10,001 pounds on 47 routes/workdays, or for an average of 2.7 routes per months. [Contested __**X**__/Uncontested _____].

17.  An issue of fact remains as it relates to the application of the small vehicle exception for the remaining Opt-in Plaintiffs. [Contested __**X**__/Uncontested _____].

### iii.  The elements of the MCA exemption defense to the claim and the controlling or most appropriate legal authority in support of every element of the MCA exemption defense.

Defendant asserts, as an affirmative defense, that Plaintiffs are subject to the MCA exemption. "The defendant-employer bears the burden of establishing the affirmative defense by a preponderance of the evidence, and the defendant employer satisfies this burden only by providing 'clear and affirmative evidence that the employee meets every requirement of [the] exemption.'" Order, ECF No. 11, PageID.225 (citing *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012) (internal quotation marks and citation omitted)).

The FLSA requires employers to pay their employees at least 1.5 times their

regular rate of pay for work in excess of 40 hours per week. 29 U.S.C. § 207(a). This requirement, however, does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49[.]" 29 U.S.C. § 213(b)(1). Title 49 U.S.C. § 31502 is the Motor Carrier Act.  (See ECF No. 70, PageID.4496)

"The MCA . . . gives the Secretary of Transportation the authority to regulate the hours of an employee (1) who works for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the safety of operation of that motor carrier." Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 904 (6th Cir. 2002) (punctuation modified).  The Secretary has the power to establish qualifications and maximum hours for truck drivers only if they are engaged in interstate commerce for purposes of the MCA.  *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970); see also 29 C.F.R. § 782.2(a).  (See ECF No. 70, PageID.4496-97).

FLSA exemptions—including the MCA exemption—are subject simply to "fair readings." *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018); *Sec. of Labor v. Timberline S., LLC*, 925 F.3d 838, 850 (6th Cir. 2019).

Additionally, the MCA exemption applies to drivers whose intrastate transportation is "part of a continuous movement in interstate commerce" are also

subject to the MCA exemption.  *Baird*, 425 F.2d at 410 (punctuation modified).

Whether there was a "practical continuity of movement in interstate commerce"

depends on the "essential character of the movement." Mazzarella v. Fast Rig

Support, LLC, 823 F.3d 786, 791 (3d Cir. 2016) (punctuation modified); Packard v.

Pittsburgh Transp. Co., 418 F.3d 246, 255 (3d Cir. 2005); see also Musarra v. Digital

Dish, Inc., 454 F. Supp. 2d 692, 705–706 (S.D. Ohio 2006).  (See ECF No. 70,

PageID.4497).

- MC-48 factors provide that there is no interstate intent where (i) "at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination" beyond the warehouse; (ii) the warehouse "is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated," and (iii) "transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage." See ECF No. 70, fn. 3 (citing Baird, 425 F.2d at 410–411).

- MC 207 factors provides that "the following factors can indicate interstate intent: (i) the shipper bases its determination of volume to be shipped on projections of customer demand that have some basis in fact; (ii) no processing or substantial modification takes places at the warehouse; (iii) while in the warehouse, the merchandise is subject to the shipper's control and direction; (iv) modern systems allow tracking and documentation of most or all shipments coming into and departing from the warehouse; (v) the shipper ultimately bears the costs of transportation; (vi) the warehouse is owned by the shipper; and (vii) shipments move through the warehouse pursuant to a storage-in-transit provision." ECF No. 70, PageID.4498-99 (citing MC-207, 57 Fed. Reg. at 19812).  "[N]o particular factor is, in and of itself, determinative." Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 705–706 (S.D. Ohio 2006).

- Factors in Mazzarella v. FastRig Support, LLC, 823 F.3d 786, 791 (3rd Cir. 2016) (considering (i) "whether and to what extent a

11

product pauses in a warehouse or other location during transport before reaching its final destination," (ii) "whether the product is altered in any way during its transport," (iii) "the employer's intent concerning the delivery of the product at the time the transportation commences," and (iv) "whether the employer's business involves an integrated system of interstate shipments" (punctuation modified); See ECF No. 70, PageID.4499.

This Court ultimately found that it "most appropriate "to identify as the shipper the entity that functionally plays the most significant role in directing and controlling the transportation of goods." ECF No. 70, PageID.4503  (citing Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 896, 898 (7th Cir. 2009)).

The jury will be asked certain factual questions bearing on the application of the exemption, and the Court ultimately must decide whether the exemption applies, taking into account the jury's factual findings.

**Disputed issues of law: Plaintiff states that** Defendant refused to include the following principles of law. Accordingly, Plaintiff includes them here to supplement the aforementioned.

First, with respect to interstate driving, the MCA exemption only applies to drivers of a Private Motor Carrier for the specific workweeks that they drove in interstate commerce. *See* 29 CFR § 782.2(b)(4) ("[I]n the case of an employee of a private carrier whose job does not require him to engage regularly in exempt safety-affecting activities described in paragraph (b)(1) of this section and whose engagement in such activities occurs sporadically or occasionally as the result of his

work assignments at a particular time, the exemption will apply to him only in those workweeks when he engages in such activities.")

Second, with respect to the intrastate driving, *Baird* explains:

The Interstate Commerce Commission has held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement … from an origin in a different State is not in interstate or foreign commerce within the meaning of Part II of the Interstate Commerce Act if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment.

*Baird*, 425 F.2d at 410; *see also* 29 C.F.R. § 782.7(b)(2).

"[A] crucial factor in determining the character of a particular shipment is the 'original and persisting intention of the shippers.'" *Musarra v. Digital Dish, Inc.,* 454 F. Supp. 2d 692, 706 (S.D. Ohio 2006) (citing *Baltimore & O.S.W.R.R. v. Settle,* 260 U.S. 166, 174, (1922)). The first part in this analysis is to ascertain who the shipper is. With respect to the identity of "the shipper", the Court has found that it is "most appropriate to identify as the shipper the entity that functionally plays the most significant role in directing and controlling the transportation of goods." ECF No. 70, PageID.4503.[2]

---

[2] **Plaintiff states**: Plaintiff does not object to the reference to this element of the claim in recognition of the Court's prior Order.  Plaintiff, however, does not adopt this as the correct standard. Respectfully, Plaintiff believes this finding is contrary to binding Sixth Circuit authority, constitutes reversable error, and maintains that Mountain Valley is/was undisputedly the shipper based on the authority provided in Plaintiff's dispositive motion briefings.

Third, if the jury finds that Absopure is the shipper of the Mountain Valley products Absopure purchased from Mountain Valley, it must next establish that "Absopure intended at the time of the shipment that the goods would continue in interstate commerce after reaching its warehouse." ECF No. 70, PageID.4504; *See also id.,* PageID.4497-98 (citing *Baird*, 425 F.2d at 410) ("The jury is to determine "whether 'the shipper' of the goods has/had a "'fixed and persistent intent" that the out-of-state goods continue in interstate commerce after passing through a warehouse."). While multiple tests (e.g., MC-48 and MC-207) and cases provide their own factors for determining the shipper's intent, this Court found that "all factors articulated in the caselaw discussed (in its Order) potentially bear on the outcome of whether the MCA exemption applies." ECF No. 70, PageID.4500. These factors are set forth, *supra*.

Fourth, the first factor in the MC 207 analysis considers "whether Absopure placed orders with Mountain Valley based on projections of customer demand that had a basis in fact, rather than to replenish general inventory." ECF No. 11, PageId.4504 (citing *Watkins v. Ameripride Servs.*, 375 F.3d 821, 826-27 (9th Cir. 2004). "[T]he purchase of goods for general inventory, rather than for the specific or anticipated needs of a particular customer, breaks the flow of commerce." *Callahan v. A.E.V., Inc.*, 1994 WL 682756, at *7 (W.D. Pa. Sept. 26, 1994). "Although the shipper does not know in advance the ultimate destination of specific

Case 2:20-cv-12734-MAG-EAS    ECF No. 247, PageID.10484    Filed 01/29/24    Page 15 of 95

shipments, it bases its determination of the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. The factual basis for projecting customer demand may include, but is not limited to, historic sales in the State, actual present orders, [and] relevant market surveys of need." *Finn v. Dean Transp., Inc.*, 53 F.Supp.3d 1043, 1054 (M.D. Tenn. 2014).

### a. <u>Small Vehicle Exception</u>

The jury will be asked factual questions regarding an exception to the MCA exemption, often referred to as the "small vehicle exception," which provides that "covered employees" are entitled to the FLSA's overtime protections. *See* SAFETEA–LU TECHNICAL CORRECTIONS ACT OF 2008 ("TCA") § 306, PL 110–244, June 6, 2008, 122 Stat 1572. The TCA's definition of "covered employee" includes all drivers who operate vehicles that weigh 10,000 pounds or less for, at least, a *de minimis* number of routes. *See* Order, ECF No. 109. This Court joined other courts in the interpretation of the "*de minimis*" standard and indicated that the relevant consideration is "whether the employee's duties involving small vehicles 'are otherwise trivial, casual, or insignificant." *Id.*, PageID.4705. This Court also held that driving a small vehicle for a daily route two (2) days each month is sufficient to satisfy the *de minimis* standard and is "beyond trivial or insignificant level of his work duties." *Id.*, PageID.4706. The Parties, thereafter, stipulated that

the Court's Order, [ECF No. 109], "applies to the Opt-in Plaintiffs who drove a vehicle that weighs less than 10,001 pounds at least two times per month during their employment with Defendant and renders the Motor Carrier Act Exemption inapplicable to these Opt-in Plaintiffs." ECF No. 111, PageID.4745.

> **v.    The principal facts in support of the MCA exemption defense, both as to liability and damages, indicating whether each fact is contested or uncontested:**

1.     Plaintiff is making a claim under the FLSA. (Dkt #1: Complaint). [Contested _____/Uncontested _X_____].

2.     The FLSA does not apply to delivery drivers for whom the Secretary of the Department of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C. § 31502. 29 U.S.C. § 213(b)(1). [Contested _____/Uncontested __X____].

3.     Absopure is a Motor Private Carrier as defined in 49 U.S.C. § 13102(15). (Dkt. No. 55-6: Def's Response to Admission #3; Dkt. No. 55-5: Byrne dep., 114). [Contested _____/Uncontested __X____].

4.     Absopure is also registered as an Interstate Motor Carrier with the United States Department of Transportation. (Dkt. No. 55-7: Motor Carrier Identification Report). [Contested _____/Uncontested __X____].

5.     One or more of Absopure's motor vehicles that Absopure directed the Plaintiff to drive had a gross vehicle weight of 10,001 pounds or greater. (Dkt. No.

55-2: Plaintiff's Response to Def's Admission #29). [Contested _____/Uncontested __X___].

6.    Absopure's motor vehicles that Plaintiff regularly and routinely drove had a gross vehicle weight of more than 10,001 pounds. (Dkt. No. 55-22: Byrne 3/21/2022 Affidavit, ¶ 3). [Contested __X___/Uncontested _____].

7.    Plaintiff drove Absopure's motor vehicles on public roads, and his primary duty as a delivery driver affected the safety of the operations of the vehicle he was driving. (Dkt. No. 55-2: Plaintiff's Response to Admissions #26, 27). [Contested _____/Uncontested __X___].

8.    All of Absopure's drivers are required to comply with safety regulations. (Dkt. No. 55-5: Byrne dep, pp. 134-135; Dkt. No. 55-9: Driver Handbook, pp. 2-3). [Contested __X___/Uncontested _____].

9.    Absopure's drivers are required to maintain United States Department of Transportation ("DOT") driving logs when required by law. (Dkt. No. 55-5: Byrne, pp. 134-135; Dkt. No. 55-9: Driver Handbook pp. 3-5). [Contested __X___/Uncontested _____].

16.    Absopure has a DOT registration number (2988150) and is subject to DOT audits and oversight. (Dkt. No. 55-8: Byrne 12/13/21 Affidavit, ¶ 28; Dkt. No. 55-7: Motor Carrier Identification Report). [Contested _____/Uncontested ___X__].

17.    Absopure requires that its drivers comply with DOT safety regulations,

including drug testing and submission to DOT physical examinations for all of its drivers. (Dkt. No. 55-9: Driver Handbook p. 2, 13; Dkt. No. 55-8: Byrne 1/6/21 Affidavit, ¶ 27). [Contested __X___/Uncontested _____].

18.    In its Driver's Application for Employment, Absopure requests that applicants disclose past driving record information as part of the hiring process. (Dkt. No. 55-10: Plaintiff's employment application). [Contested _____/Uncontested _X____].

19.    Absopure also informs its driver applicants that it may obtain their driver and safety inspection reports and history from the DOT's Federal Motor Carrier Safety Administration ("FMCSA"), and may use the information obtained from the FMSCA in hiring decisions. (Dkt. No. 55-11: Pre-Employment Notice). [Contested _____/Uncontested ___X__].

20.    Plaintiff Guy filled out the Driver's Application for Employment on September 7, 2018 and authorized Absopure to obtain driver and safety inspection reports from the FMCSA. (Dkt. No. 55-10: application; Dkt. No. 55-11: Pre-Employment Notice). [Contested _____/Uncontested _X____].

21.    Plaintiff Guy also provided an employment history which did not disclose any past driving experience. (Dkt. No. 55-10: application; Dkt. No. 55-12: resume). [Contested __X___/Uncontested _____].

22.    The FMCSA's Pre-Employment Screening Program helps motor

carriers make more informed hiring decisions by providing access to a commercial driver's five year crash history and three year inspection history from the FMCSA. (https://www.psp.fmcsa.dot.gov/psp/Public).    [Contested _____/Uncontested ___X__].

23.    The DOT's FMCSA performed a safety audit on Absopure on June 2, 2017, which Absopure passed. (Dkt. No. 55-13: 6/9/2017 letter and FMSCA audit report). [Contested _____/Uncontested ___X___].

24.    The DOT's FMCSA monitors and evaluates Absopure's safety management practices and on-road performance to ensure ongoing compliance with Federal requirements, including FMCSA regulations. (Dkt. No. 55-14: 9/24/2018 FMSCA letter). [Contested _____/Uncontested __X___].

25.    Absopure provides its drivers with a Driver Handbook. (Dkt. No. 55-5: Byrne dep, pp. 222-223). [Contested _____/Uncontested __X___].

26.    Plaintiff admitted that he received the Absopure Driver Handbook, but he chose not to read it. (Dkt. No. 55-4: Plaintiff dep, pp. 134-135). [Contested _____/Uncontested __X___].

27.    Absopure drivers are required to be qualified in accordance with Company policies and with sections 391 and 383 of the Federal Motor Carrier Safety Regulations (49 C.F.R. § 391.1 *et seq*. and 49 C.F.R. § 383.1 *et seq*.). Dkt. No. 55-

9: Driver Handbook, p. 13; see also Dkt. No. 55-15: Driver's License Requirements form). [Contested ___X__/Uncontested _____].

28.     Absopure drivers are also required to follow the Department of Transportation rules prohibiting hand-held cell phone use while driving. (Dkt. No. 55-9: Driver Handbook, pp. 17-18; see also Dkt. No. 55-16: DOT Mobile Telephone Policy). [Contested _X___/Uncontested _____].

29.     Absopure also obtained required verification from Plaintiff pursuant to 49 C.F. R. § 40.25(j) that he had not tested positive on any pre-employment drug or alcohol test, or refused to take such a test, during the past two years. (Dkt. No. 55-17: DOT Alcohol/Drug Statement form). [Contested ___X__/Uncontested _____].

30.     Many of the products that Plaintiffs delivered for Absopure were part of interstate commerce, originating outside of the State of Michigan and travelling across states lines to Michigan for delivery to Absopure's customers. (Dkt. No. 55-8: Byrne 1/6/2021 Affidavit, ¶s 13, 16-18). [Contested _X____/Uncontested _____].

31.     44.     Absopure is the exclusive distributor in Michigan of Mountain Valley Spring Water ("Mountain Valley") five gallon and 2.5 gallon products. (Dkt. No. 55-5: Byrne dep, pp. 56). [Contested __X___/Uncontested _____].

32.     Absopure drivers, including Plaintiffs, deliver cases of Mountain Valley water in various sizes and packaging, including 12 oz. and 16.9 oz. bottles, 750 ml bottles and one-liter bottles, 1.5 liter bottles. (See Dkt. No. 55-17: Absopure

delivery invoices). [Contested _____/Uncontested ___X__].

33.    Mountain Valley is located in Hot Springs, Arkansas, and its products originate in Arkansas and flow through interstate commerce across state lines to arrive in Michigan. (Dkt. No. 55-5: Byrne dep, p. 174; Dkt. No. 55-19: Mountain Valley invoices to Absopure). [Contested _____/Uncontested ___X__].

34.    Absopure purchases products from Mountain Valley approximately every two weeks. (Dkt. No. 55-5: Byrne dep, pp. 175; Dkt. No. 55-19: Mountain Valley invoices). [Contested _____/Uncontested ___X__].

35.    Absopure purchases products from suppliers such as Mountain Valley Spring Water specifically for delivery to its customers. (Dkt. No. 55-22: Byrne 3/21/22 Affidavit, ¶ 24). [Contested ___X__/Uncontested _____].

36.    In this lawsuit, and pursuant to the Parties' stipulation, Defendant's receipt/delivery of Mountain Valley products serves as a representative sample of all the goods that the drivers delivered that originate from outside the state of Michigan. [Contested _____/Uncontested ___X___].

37.    Absopure's purchase of Mountain Valley products is illustrative of Absopure's fixed and persistent intent that the products it purchases for delivery to its customers continued in interstate commerce from their origin outside of the State of Michigan across state lines and to Absopure's warehouse, and from its warehouse to its customers. (See Dkt. No. 55-5; Byrne dep., pp. 174-175, 186-188). [Contested

21

__X___/Uncontested _____].

38.    Throughout their employment, Plaintiffs regularly and routinely delivered Mountain Valley products to Absopure's customers. (Dkt. No. 55-20: Plaintiff Invoices showing delivery of Mountain Valley products). [Contested __X___/Uncontested _____].

39.    Plaintiff Guy made 59 deliveries of Mountain Valley products to Absopure's customers throughout his employment with Absopure. (Dkt. No. 55-22: Byrne 3/21/22 Affidavit, ¶ 25). [Contested _____/Uncontested ___X__].

40.    Absopure drivers delivered Mountain Valley products to customers every business day (Monday-Friday) in October 2019, averaging over 18 deliveries of Mountain Valley products to Absopure customers each business day.  (Dkt. No. 55-22: Byrne 3/21/22 Affidavit, ¶ 26). [Contested _____/Uncontested __X___].

41.    Absopure purchases Mountain Valley products from Mountain Valley in Arkansas and then arranges for those products to be shipped from Arkansas across state lines to Michigan using common carriers. (Dkt. No. 55-19: Mountain Valley invoices;  Dkt.  No.  55-5;  Byrne  dep.,  pp.  174-175,  186-187).  [Contested __X___/Uncontested _____].

42.    Absopure employs a general product rotation practice to ensure that product does not sit in the warehouse for an extended time. (Dkt. No. 55-5: Byrne dep, p. 178). [Contested __X___/Uncontested _____].

43.     Absopure monitors how frequently inventoried items are depleted and can document the average number of days that it takes for items of a product to be brought into the warehouse to the time that they are sold. (Dkt. No. 55-5: Byrne, pp. 201-203; Dkt. No. 55-21: Inventory Turn Data Report). [Contested __X___/Uncontested _____].

44.     For instance, Absopure's inventory of Mountain Valley five-gallon glass bottles is depleted every 10.46 days. (Dkt. No. 55-5: Byrne dep, pp. 201-203; Dkt. No. 55-21: Inventory Turn Data Report). [Contested __X___/Uncontested _____].

45.     Absopure's inventory of Mountain Valley 2.5-gallon glass bottles is depleted every 30.26 days. (Dkt. No. 55-5: Byrne dep, pp. 201-203; Dkt. No. 55-21: Inventory Turn Data Report). [Contested __X___/Uncontested _____].

46.     In general, Absopure's customers are on a regularly scheduled visit plan, and sales representatives visit customers and process orders from the customer's location. (Dkt. No. 55-5: Byrne dep, p. 178). [Contested _____/Uncontested __X___].

47.     Delivery drivers can also determine what products a customer might want or need and process orders at the customer's location. (Dkt. No. 55-5: Byrne dep, p. 178-179). [Contested _____/Uncontested __X___].

48.     Customers can also contact Absopure and order product, which is

usually delivered in one or two business days. (Dkt. No. 55-5: Byrne dep, pp. 178-179). [Contested _____/Uncontested __X___].

49.     Absopure's delivery drivers, like Plaintiffs, use handheld computer devices to record all the transactions and sales made during the day. (Dkt. No. 55-5: Byrne dep, pp. 71, 164-165, 196). [Contested _____/Uncontested __X___].

50.     The information generated through the handheld devices is used, in turn, to document sales transactions and generate customer invoices. (Dkt. No. 55-5: Byrne dep, pp. 71, 164-165). [Contested _____/Uncontested __X___].

51.     The handheld device also identifies the stops on the route for each Absopure delivery driver. (Dkt. No. 55-5: Byrne dep, p. 167). [Contested __X___/Uncontested _____].

52.     As a result, at the end of the day, Absopure has a record of all of the stops that a driver makes and all of the items that have been delivered by its delivery drivers. (Dkt. No. 55-5: Byrne dep, p. 196). [Contested __X___/Uncontested _____].

53.     Absopure orders Mountain Valley products approximately every two weeks. (Dkt. No. 55-5: Byrne dep., pp. 175; Dkt. No. 55-19: shipping invoices). [Contested _____/Uncontested __X___].

54.     Absopure orders Mountain Valley based on anticipated customer needs. (Dkt. No. 55-5: Byrne dep, p. 182). [Contested __X___/Uncontested _____].

55.     An employee physically observes the stock levels of the products to see what needs to be replenished and then products are ordered to replenish stock. (Dkt. No. 55-5: Byrne dep, pp. 182). [Contested _____/Uncontested __X___].

56.     Absopure controls what happens with the products once they are delivered to the warehouse. (Dkt. No. 55-5: Byrne dep, pp. 199). [Contested _____/Uncontested __X___].

57.     Absopure employees unload the items off the delivery trucks, and then Absopure determines where the items are to be placed. (Dkt. No. 55-5: Byrne dep, pp. 198-199). [Contested _____/Uncontested __X___].

58.     Absopure has no storage in transit provisions for products. (Dkt. No. 55-5: Byrne dep, pp. 199). [Contested _____/Uncontested __X___].

59.     Absopure does not do any relabeling or rebottling or any other type of modification to products that are received in its warehouse. (Dkt. No. 55-5: Byrne dep, pp. 185-186). [Contested _____/Uncontested __X___].

60.     Absopure averages 1,300 deliveries each month (customer visits), with 500 routes a year, to Ohio and Indiana from Michigan. (Dkt. No. 55-5: Byrne dep, pp. 155-156). [Contested _____/Uncontested __X___].

61.     Absopure's South area group includes territory south or Eight Mile Road and west within Michigan to I-275, and south to northern Ohio, and west outside of Michigan to Ft. Wayne, Indiana. (Dkt. No. 55-5: Byrne dep, pp. 42-43).

25

[Contested _____/Uncontested __X___].

62.    Absopure has been making daily deliveries of product from its Plymouth warehouse to Ohio for the period from October 2, 2017 through January present. (Dkt. No. 55-22: Byrne 3/21/22 Affidavit, ¶s 28-31). [Contested _____/Uncontested __X___].

63.    During the same period, Absopure has been making deliveries of product from its Plymouth warehouse to Indiana two to three days every week. (Dkt. No. 55-22: 3/21/22 Affidavit, ¶s 27-30, 32). [Contested _____/Uncontested __X___].

65.    Absopure has been the distributor of products from Mountain Valley since Absopure purchased the assets of Arbor Springs Water Company ("Arbor Springs") in 2017, which included the distributorship rights of Mountain Valley products in Michigan.  (ECF No. 117-3, Declaration of Patrick Byrne in Support of Opposition to Motion for Sanctions ("Byrne Dec."), ¶ 4) [Contested ___X__/Uncontested _____].

    a. **Plaintiff:** Plaintiff does not contest that this is what Mr. Byrne's declaration states, but has otherwise not conducted discovery concerning this irrelevant inquiry to verify its accuracy.

66.    Shortly after purchasing the Mountain Valley distributorship rights from Arbor Springs, Absopure entered its own distributorship agreement with Mountain Valley on July 24, 2017.  (ECF No. 117-3, Byrne Dec. ¶ 5; Ex. 3,

Absopure-Mountain Valley Distributorship Agreement [redacted], bates numbers ABS 003739-50 ("MVS Agreement"), p. 1) [Contested _____/Uncontested __X___].

67.    The MVS Agreement provides that Absopure initiates orders for products from Mountain Valley. (ECF No. 117-3, Byrne Decl ¶ 7; MVS Agreement, p. 3). [Contested ___X__/Uncontested _____].

    a.    **Plaintiff**: it is not clear what Defendant means by "initiating" orders. If they are referring to the fact that Absopure places purchase orders with Mountain Valley, Plaintiff does not contest.

68.    Absopure decides when to initiate purchase orders. (*Id.*) [Contested __X___/Uncontested _____].

    a.    *See* Response to no. 67, *supra*.

69.    Further, when making purchase orders, Absopure specifies to Mountain Valley the number and types of products that will be purchased and to which of its facilities, Plymouth or Grand Rapids, those products will be delivered to. (*Id.*) [Contested ___X__/Uncontested _____].

70.    Although the MVS Agreement states that types, amounts, and location for product deliveries are "designated by" Mountain Valley in the final purchase order, these designations are dictated by the instructions given by Absopure to Mountain Valley when making each order. (*Id.*). [Contested __X___/Uncontested _____].

71.     Paragraph 4 of the MVS Agreement states:

**4.     ORDERS.** Distributor[3] may order Product from the Company at any time by submitting a purchase order in the manner and form reasonably designated by the Company ("Purchase Order"). Each Purchase Order shall be delivered in the manner and to the location designated by the Company in its standard ordering procedures, as provided to Distributor concurrently with this Agreement, and shall identify, for each Product, the quantity to be purchased, and may include additional information that does not vary the terms or conditions of this Agreement, including the location and date for delivery.
The Company agrees to use commercially reasonable efforts to fill each Purchase Order in a timely manner, subject to the Company's standard lead times for filling a Purchase Order. Company will promptly notify Distributor of any requested Products that it will not timely deliver, including the expected new delivery date.

(*Id.*; ECF No. 117-4, MVS Agreement, p. 3)93.     [Contested _____/Uncontested __X___].

72.     Absopure typically initiates purchase orders to Mountain Valley via telephone calls.  (Ex. 2, Byrne Dec. ¶ 8). [Contested _____/Uncontested __X___].

73.     Absopure becomes the owner of the shipped products at the moment they are loaded onto J.B. Hunt's trucks.  (*Id.* ¶ 9; Ex. 3, MVS Agreement, p. 9). [Contested ___X__/Uncontested _____].

74.     Paragraph 9 of the MVS Agreement states:

---

[3] "Distributor" refers to Defendant, Absopure Water Company in this Agreement. "Company" refers to Mountain Valley.

**9.**     **SHIPMENTS**. All shipments of Products to the Distributor shall be FOB the Company's location, and title and risk of loss shall transfer to the Distributor at that time.  Distributor shall be responsible for all shipping costs.

(*Id.*) [Contested _____/Uncontested __X___].

76.     The MVS Agreement does not specify the common carrier that will ship the products based on purchase orders.  (ECF No. 117-3, Byrne Dec. ¶ 10). [Contested _____/Uncontested __X___].

77.     Shortly before entering into the MVS Agreement, Absopure confirmed orally with Mountain Valley that Absopure could specify which common carrier to use for deliveries.  [Contested __X___/Uncontested _____].

78.     After confirming its ability to choose the common carrier Absopure then obtained quotes from a number of different carriers.   [Contested __X___/Uncontested _____].

79.     Absopure decided to use the same carrier that Arbor Springs had been using, J.B. Hunt, because the quotes from other carriers were not substantially less and J.B. Hunt was already familiar with Mountain Valley loading and shipment procedures, saving Absopure the time, expense, and potential uncertainty of bringing another carrier up to speed with those procedures.  [Contested __X___/Uncontested _____].

80.     Absopure continues to have the right to change the carrier used to ship Mountain Valley products at any time.    [Contested __X___/Uncontested _____].

**b)** **The elements of Statute of Limitations defense to the claim and the controlling or most appropriate legal authority in support of every element of the Statue of Limitations defense**

The Court has already ruled on the equitable tolling issue as it pertains to the statute of limitations defense.  See 11/21/2023 Op. & Order (Dkt. 195).  Nonetheless the Court retains in this Joint Final Pretrial Order the parties' statement of the issue simply to maintain a record of those statements.

**Defendant states:** The statute of limitations for FLSA cases is two years from commencement of the action or three years if an employer is found to be in willful violation.  29 U.S.C.A. § 255(a).  For plaintiffs who opt into a collective action, the action is considered to commence on the date the opt-in plaintiff files a consent to join the action.  29 U.S.C.A. § 256(b).  The 26 Opt-In Plaintiffs in this case filed notices of their consent in March and April of 2023.  They can thus only claim violations beginning in March/April of 2021 or, should they prevail in proving willfulness, March/April of 2020.  Since several of them were no longer working for Defendant by either time, they should be dismissed from this action altogether.  The other Opt-In Plaintiffs should have any claims limited to after those times.

"The doctrine [of equitable tolling] permits a plaintiff to avoid the bar of the statute of limitations if 'despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'  *Archer v. Sullivan Cty.*, *supra*, 1997 WL 720406, *3 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451

(7th Cir.1990), *cert. denied*, 501 U.S. 1261 (1991)). The party seeking equitable tolling bears the burden of proving he is entitled to it. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

"The factors to be considered in this connection include the following: (1) whether the plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs' remaining ignorant of their rights. *Archer, supra*, at *3 (citing *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir.), *cert. denied*, 117 S. Ct 385 (1996)). These factors are not comprehensive, nor must all factors be met in each case. *Allen, supra*, 366 F.3d at 401. Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561-62 (6th Cir.2000) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

When plaintiffs "have lacked actual notice of [a] violation of the Act and of the filing deadline, it is 'well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling.'" *Id.* at *4 (citing *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991)). "The statute itself gave the plaintiffs constructive notice of the fact

that the county was violating their rights under the FLSA and of the deadline for

filing suit." *Id.*

> "the entire purpose of statutes of limitations is to provide finitude to
> liability for wrongs." We are also mindful of Judge Posner's
> admonition in *Cada* that statutes of limitations "protect important social
> interests in certainty, accuracy, and repose" and should not be
> trivialized by "promiscuous application of tolling doctrines." 920 F.2d
> at 453.

*Id.* at *5 (citations omitted)

**Plaintiff states:** The Parties agreed to equitably toll the statute of limitations

for the Opt-in Plaintiffs. *See* ECF No. 14, PageID.260. The Court should ignore

Defendant's unprofessional tactics and efforts to renege on prior stipulations.

Notably, the Parties' Joint Discovery Plan was entered roughly two years before the

recent *Clark v. A&L Homecare & Training Ctr.,* LLC opinion and at a time when

motions to conditionally certify collective actions were historically filed at the onset

of litigation to avoid tolling for putative class members. 68 F.4th 1003, 1009 (6th

Cir. 2023). And the delay necessitated by the "strong likelihood" similarly situated

analysis announced in Clark discusses equitable tolling for this exact purpose. See

*Id*. at 1012 ("I fully join the majority opinion but write separately because equitable

tolling should be made available to plaintiffs in collective actions under the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq... The heightened standard we

announce, with its concomitant discovery and requirement to litigate defenses, may

significantly lengthen the period before potential plaintiffs are notified of a pending

FLSA lawsuit. As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run.") (emphasis added). Following the same logic, Plaintiff only agreed to incur these delays to establish a clearer picture before conditional certification even before the *Clark* opinion was entered because the Parties agreed to equitable tolling.  Plaintiff will fully address the law on equitable tolling in Plaintiff's forthcoming Response to Defendant's Motion for Summary Judgment, and Motion for Equitable Tolling, and incorporates same herein by reference.

     **v.**    **The principal facts in support of the SOL defense, both as to liability and damages, indicating whether each fact is contested or uncontested:**

1.    Plaintiff Justin Guy was an employee of Defendant Absopure Water Company, LLC ("Absopure") from September 24, 2018 to February 4, 2020. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

2.    Plaintiff Guy filed his Complaint on October 8, 2020 as an FLSA "collective action".   (Dkt. 1: Collective Action Complaint, PageID.1-20). [Contested _____/Uncontested __x___].

3.    Defendant filed its answer on March 11, 2021.  (Dkt.12: Answer to Complaint, PageID.229-254). [Contested _____/Uncontested __x___].

4.     Plaintiff Guy moved to conditionally certify the case as an FLSA collective action on March 29, 2022. (Dkt. 58: Motion to Conditionally Certify, PageID.2246-2276). [Contested _____/Uncontested _x____].

5.     The Court granted conditional certification on February 21, 2023.  (Dkt. 77: Order & Opinion, PageID.4534-4543). [Contested _____/Uncontested __x___].

6.     Thereafter, Plaintiff sent out notices to potential collective employees pursuant to the Court's order.  (Dkt. 82: Order Approving Notice, PageID.4567). [Contested _____/Uncontested _x____].

7.     The 26 Opt-In Plaintiffs in this case filed notices of their consent in March and April of 2023. (*See* Dkts. 86-1, 90-1. 91-1, 92-1, 94-1, 95-1, 96-1, 97-1, 98-1, 99-1, 100-1 and 101-1 and Statement of Facts ("SOF") Nos. 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51, 54, *infra*). [Contested ___X__ /Uncontested _____].

8.     Opt-In Plaintiff Aaron Armstead was an employee of Absopure from May 14, 2018 to September 21, 2018. (Defendant's Statement of Relevant Facts, p. 3). [Contested _____/Uncontested _x____].

9.     Opt-In Plaintiff Aaron Armstead filed his Consent to Join the Action on March 29, 2023. (Dkt. 95-1, Consent to Join Action, PageID.4630). [Contested _____/Uncontested __x___].

10.    Over four and a half years (58.5 months) elapsed from the date Opt-In-Plaintiff Aaron Armstead began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 3; Dkt. 95-1, PageID.4630.) [Contested __x___/Uncontested _____].

11.    Opt-In Plaintiff Dwane Armstead was an employee of Absopure from June 11, 2018 to October 4, 2018. (Defendant's Statement of Relevant Facts, p. 3). [Contested _____/Uncontested ___x___].

12.    Opt-In Plaintiff Dwane Armstead filed his Consent to Join the Action on March 30, 2023. (Dkt. 96-1, Consent to Join Action, PageID.4635). [Contested _____/Uncontested ___x__].

13.    Over four and a half years (57 months) elapsed from the date Opt-In-Plaintiff Dwane Armstead began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 3; Dkt. 95-1, PageID.4635.) [Contested __x___/Uncontested _____].

14.    Opt-In Plaintiff Ryan Clendennin was an employee of Absopure from July 25, 2017 to July 6, 2018. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x___].

15.    Opt-In Plaintiff Ryan Clendennin filed his Consent to Join the Action on April 10, 2023. (Dkt. 99-1, Consent to Join Action, PageID.4645). [Contested _____/Uncontested ___x__].

16.     Over five and a half years (68 months) elapsed from the date Opt-In-Plaintiff Clendennin began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 86-1, PageID.4645.) [Contested __x___/Uncontested _____].

17.     Opt-In Plaintiff Shawn Jacek was an employee of Absopure from October 15, 2018 to November 27, 2018. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

18.     Opt-In Plaintiff Shawn Jacek filed his Consent to Join the Action on March 28, 2023. (Dkt. 94-1, Consent to Join Action, PageID.4625). [Contested _____/Uncontested __x___].

19.     Almost four and a half years (53 months) elapsed from the date Opt-In-Plaintiff Jacek began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 86-1, PageID.4625.) [Contested __x___/Uncontested _____].

20.     Opt-In Plaintiff Matthew Jackson was an employee of Absopure from November 19, 2018 to February 8, 2019. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

21.     Opt-In Plaintiff Matthew Jackson filed his Consent to Join the Action on March 28, 2023. (Dkt. 94-1, Consent to Join Action, PageID.4626). [Contested _____/Uncontested ___x__].

22.     Almost four and a half years (52 months) elapsed from the date Opt-In-Plaintiff Jackson began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 86-1, PageID.4626.) [Contested __x___/Uncontested _____].

23.     Opt-In Plaintiff Ricardo Lamar was an employee of Absopure from April 8, 2019 to October 2, 2019. (Defendant's Statement of Relevant Facts, p. 4). [Contested ___x__/Uncontested _____].

24.     Opt-In Plaintiff Ricardo Lammer filed his Consent to Join the Action on April 5, 2023. (Dkt. 95-1, Consent to Join Action, PageID.4642). [Contested __x___/Uncontested _____].

25.     Nearly four years (48 months) elapsed from the date Opt-In-Plaintiff Lammer began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 95-1, PageID.4642.) [Contested __x___/Uncontested _____].

26.     Opt-In Plaintiff Charles Perry was an employee of Absopure from July 11, 2016 to October 5, 2018. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

27.     Opt-In Plaintiff Charles Perry filed his Consent to Join the Action on April 10, 2023. (Dkt. 99-1, Consent to Join Action, PageID.4646). [Contested _____/Uncontested __x___].

28.     Over six and a half years (80 months) elapsed from the date Opt-In-Plaintiff Perry began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 99-1, PageID.4646.) [Contested __x___/Uncontested _____].

29.     Opt-In Plaintiff Keith Brown, Jr. was an employee of Absopure from December 4, 2006 to July 1, 2020. (Defendant's Statement of Relevant Facts, p. 3). [Contested _____/Uncontested ___x__].

30.     Opt-In Plaintiff Keith Brown, Jr. filed his Consent to Join the Action on April 3, 2023. (Dkt. 97-1, Consent to Join Action, PageID.4638). [Contested _____/Uncontested _x____].

31.     Over sixteen and one half years elapsed from the date Opt-In-Plaintiff Fish began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 3; Dkt. 97-1, PageID.4638.) [Contested _x____/Uncontested _____].

32.     Opt-In Plaintiff John Aniol was an employee of Absopure from January 10, 2000 to March 29, 2022. (Defendant's Statement of Relevant Facts, p. 3). [Contested _____/Uncontested ___x___].

33.     Opt-In Plaintiff John Aniol filed his Consent to Join the Action on March 22, 2023. (Dkt. 92-1, Consent to Join Action, PageID.4617). [Contested _____/Uncontested __x___].

34.     Over 23 years elapsed from the date Opt-In Plaintiff Aniol began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 3; Dkt. 92-1, PageID.4617.) [Contested __x___/Uncontested _____].

35.     Opt-In Plaintiff Danielle Childs is a current employee of Absopure, and he began his employment on December 5, 2019. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

36.     Opt-In Plaintiff Danielle Childs filed his Consent to Join the Action on April 5, 2023. (Dkt. 98-1, Consent to Join Action, PageID.4641). [Contested _____/Uncontested __x___].

37.     Over three years (40 months) elapsed from the date Opt-In-Plaintiff Childs began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 98-1, PageID.4641.) [Contested __x___/Uncontested _____].

38.     Opt-In Plaintiff Caleb Fish is a current employee of Absopure, and he began his employment on April 30, 2018. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x__].

39.     Opt-In Plaintiff Caleb Fish filed his Consent to Join the Action on March 9, 2023. (Dkt. 86-1, Consent to Join Action, PageID.4588). [Contested _____/Uncontested __x___].

40.     Over four and a half years (58 months) elapsed from the date Opt-In-Plaintiff Fish began working for Absopure until the time he filed his consent form.

(See Exhibit 1, p. 4; Dkt. 86-1, PageID.4588.) [Contested ___x___/Uncontested _____].

41.    Opt-In Plaintiff Kevin Phipps was an employee of Absopure from September 11, 2017 to August 16, 2021. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x___].

42.    Opt-In Plaintiff Kevin Phipps filed his Consent to Join the Action on April 20, 2023. (Dkt. 101-1, Consent to Join Action, PageID.4650). [Contested _____/Uncontested ___x___].

43.    Over six and a half years (67 months) elapsed from the date Opt-In-Plaintiff Phipps began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 86-1, PageID.4588.) [Contested ___x___/Uncontested _____].

44.    Opt-In Plaintiff Jordan Tampa was an employee of Absopure from August 26, 2019 to January 4. 2022. (Defendant's Statement of Relevant Facts, p. 5). [Contested _____/Uncontested ___x___].

45.    Opt-In Plaintiff Jordan Tampa filed his Consent to Join the Action on March 9, 2023. (Dkt. 86-1, Consent to Join Action, PageID.4591). [Contested _____/Uncontested ___x___].

46.    Over three and a half years (42 months) elapsed from the date Opt-In-Plaintiff Tampa began working for Absopure until the time he filed his consent form.

(See Exhibit 1, p. 5; Dkt. 86-1, PageID.4591.) [Contested _x____/Uncontested _____].

47.   Opt-In Plaintiff Kyle Winconek was an employee of Absopure from January 25, 2021 to March 27, 2022. (Defendant's Statement of Relevant Facts, p. 5). [Contested ___x__/Uncontested _____].

48.   Opt-In Plaintiff Kyle Winconek filed his Consent to Join the Action on March 9, 2023. (Dkt. 86-1, Consent to Join Action, PageID.4592). [Contested _____/Uncontested _x____].

49.   Over two years (26 months) elapsed from the date Opt-In-Plaintiff Winconek began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 5; Dkt. 86-1, PageID.4592.) [Contested __x___/Uncontested _____].

50.   Opt-In Plaintiff David Sujkowski was an employee of Absopure from February 1, 2021 to March 21, 2022. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x__].

51.   Opt-In Plaintiff David Sujkowski filed his Consent to Join the Action on March 20, 2023. (Dkt. 91-1, Consent to Join Action, PageID.4614). [Contested _____/Uncontested __x___].

52.   Over two years (25 months) elapsed from the date Opt-In Plaintiff Sujkowski began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 91-1, PageID.4614.) [Contested __x___/Uncontested _____].

53.     Each Opt-In Plaintiff was informed about the Defendant's methods of determining pay – commissions or commissions with guaranteed minimums – from the very beginning of employment and that this payment would not include "overtime" payments when they worked more than 40 hours in a week.  (Dkt. No. 119-3, PageID.4909-4911); Exh. 2 Deposition of Justin Guy Tr. pp. 30-31; Exh. 3, Deposition of Keith Brown Tr., pp. 29, 33; Exh. 4, Deposition of Terry Pemberton Tr., pp. 29, 33; Exh. 5, Deposition of David Sujkowski Tr., pp. 24-25).  [Contested __x___/Uncontested _____].

54.     Receiving "time and a half" for overtime is a common practice that is commonly known by 92-97% of all workers.   (Exh. 6, U.S. Dept. of Labor, DOLQ129633231, *Worker Classification Knowledge Survey Volume I—Technical Report*, 11/16/2016, pp. 25-27 (showing 92-97% of workers know whether or not they     are     entitled     to     overtime)     Found     at https://www.dol.gov/sites/dolgov/files/OASP/legacy/files/Worker_Classification_Knowledge_Survey_Vol_I_Technical_Report.pdf. (visited Sep. 14, 2023); *See also* https://www.dol.gov/sites/dolgov/files/OASP/legacy/files/Worker_Classification_Knowledge_Survey_Vol_2_Methods.pdf.  (visited  Sep.  14,  2023)).  [Contested _x____/Uncontested _____].

55.     The  vast  majority,  79%-87%,  of  workers  who  are  not  entitled  to overtime know the reason why.  (*Id.*) [Contested ___x__/Uncontested _____].

56.     Opt-In Plaintiff Lucas Belonga is a current employee of Absopure and began working on May 2, 2022.  (Defendant's Statement of Relevant Facts, p. 3). [Contested _____/Uncontested __x___].

57.     Opt-In Plaintiff Lucas Belonga filed his Consent to Join the Action on March 24, 2023. (Dkt. 93-1, Consent to Join Action, PageID.4622). [Contested _____/Uncontested __x___].

58.     Opt-In Plaintiff Boaz Householder was an employee of Absopure from March 7, 2022 to April 22, 2022. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x__].

59.     Opt-In Plaintiff Boaz Householder filed his Consent to Join the Action on March 9, 2023. (Dkt. 86-1, Consent to Join Action, PageID.4589). [Contested _____/Uncontested __x___].

60.     Opt-In Plaintiff Gary Johnson, Jr. is a current employee of Absopure, and he began his employment on January 31, 2022. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested __x___].

61.     Opt-In Plaintiff Gary Johnson, Jr. filed his Consent to Join the Action on March 14, 2023. (Dkt. 90-1, Consent to Join Action, PageID.4610). [Contested _____/Uncontested __x___].

62.    63.    Opt-In Plaintiff Antony Newkirk was an employee of Absopure from December 20, 2021 to June 22, 2022. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested _x_____].

63.    Opt-In Plaintiff Antony Newkirk filed his Consent to Join the Action on March 29, 2023. (Dkt. 95-1, Consent to Join Action, PageID.4631). [Contested _____/Uncontested ___x__].

64.    Opt-In Plaintiff Nathan Redmer was an employee of Absopure from May 23, 2022 to November 3, 2022. (Defendant's Statement of Relevant Facts, p. 4). [Contested _____/Uncontested ___x__].

65.    Opt-In Plaintiff Nathan Redmer filed his Consent to Join the Action on March 9, 2023. (Dkt. 86-1, Consent to Join Action, PageID.4590). [Contested _____/Uncontested __x___].

66.    Less than one year (10 months) has lapsed from the date Opt-In-Plaintiff Householder began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 86-1, PageID.4590.) [Contested __x___/Uncontested _____].

67.    Less than two years (13 months) has lapsed from the date Opt-In-Plaintiff Householder began working for Absopure until the time he filed his consent form. (See Exhibit 1, p. 4; Dkt. 90-1, PageID.4610.) [Contested __x___/Uncontested _____].

68.    Opt-In Plaintiff Ryan Rhodes filed his Consent to Join the Action on March 14, 2023. (Dkt. 90-1, Consent to Join Action, PageID.4611). [Contested _____/Uncontested __x___].

69.    Opt-In Plaintiff Jesse Skonieczny filed his Consent to Join the Action on March 22, 2023. (Dkt. 92-1, Consent to Join Action, PageID.4619). [Contested _____/Uncontested _x____].

70.    Opt-In Plaintiff Terry E. Pemberton, Jr. filed his Consent to Join the Action on March 28, 2023. (Dkt. 94-1, Consent to Join Action, PageID.4627). [Contested _____/Uncontested _x____].

71.    Opt-In Plaintiff George Woldt filed his Consent to Join the Action on March 29, 2023. (Dkt. 95-1, Consent to Join Action, PageID.4632). [Contested _____/Uncontested __x___].

72.    Opt-In Plaintiff Paul Okimoto filed his Consent to Join the Action on April 14, 2023. (Dkt. 100-1, Consent to Join Action, PageID.4649). [Contested _____/Uncontested ___x__].

**c) Defense as to Willfulness**

**Defendant states:**

A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129, 108 S.Ct. 1677,

1679, 100 L.Ed.2d 115 (1988).  "The plaintiff bears the burden of proving willfulness." *Stultz v. J.B. Hunt Transport, Inc.*, 35 F.Supp.3d 866, 878 (E.D. Mich. 2014)

To qualify for the retail or services establishment exemption, Absopure must show that: 1) it is a "retail or service establishment", 2) it paid its employees a regular rate of more than 1 ½ times the federal minimum wage for each hour worked; and (3) employees received more than half of their compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services. See 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

Further, to qualify as a "retail or service establishment", Absopure must show a) it is open to the general public (29 C.F.R. § 779.319) and b) that at least 75 percent of its annual sales "are recognized as retail sales or services in the particular industry" and are not for resale.  29 C.F.R. §§ 779.322 and 329.

**Plaintiffs**: Plaintiff objects to the inclusion of any evidence or arguments pertaining to the retail or service establishment exemption. *See* Order Denying Defendant's Motion to Amend Affirmative Defenses. *See* ECF No. 140. Additionally, Defendant cannot backdoor this affirmative defense by claiming it is only relying on it for purposes of establishing that its FLSA violations were not willful because Defendant expressly indicated in discovery that Plaintiffs are not entitled to overtime compensation based on the MCA exemption only; not based on

the retail or service establishment exemption. *See* Defendant's Second Supplemental Answer to ECF No. 59-14 PageID.3724-27 (Relying on the MCA exemption to answer Interrogatory No. 13, which asks: "If Defendant claims that Plaintiff and Defendant's Truck Drivers in Michigan are not entitled to be paid at a time and one-half premium for every hour worked in excess of forty (40) hours per work week, please set forth the reason for your claim, the specific factual basis upon which you rely upon to make this claim, and describe the documents that you rely upon in supporting this claim and/or responding to this Interrogatory."); 30(b)(6) Dep. 113:6-10 (Q. "The exemption that you are relying on in this matter as the basis of not paying the drivers overtime compensation is the Motor Carrier Act exemption; correct? A. Yes.");113:23-114:1 (Q. "[T]he reason you haven't paid your drivers overtime is because you're taking the position that they're exempt under the Motor Carrier Act; correct? A. Yes.")

> **v.**   **The principal facts in support of defense to willfulness, both as to liability and damages, indicating whether each fact is contested or uncontested:**

1.    Absopure's Employees who are classified as Sales and Service Specialists are paid solely on a commission basis for working days and receive no minimum guarantee (except for non-working days, such as holidays or vacation). [Contested __X__/Uncontested _____].

47

2.     Absopure's Employees who are classified as Sales and Service Specialist Trainees are paid on a commission basis and also receive a minimum guaranteed amount on any day their commissions do not meet or exceed the minimum threshold.  [Contested __X___/Uncontested _____].

3.     At least since 2005, Absopure has classified its Sales and Service Specialists as "Commissioned Exempt" from the overtime requirements of the FLSA.  [Contested __X___/Uncontested _____].

4.     At least since 2005, Absopure has classified its Sales and Service Specialist Trainees as "Daily Wage Exempt" from the overtime requirements of the FLSA.  [Contested _____/Uncontested __X__].

5.     Absopure's payments methods for both Sales and Service Specialists and Sales and Service Specialist Trainees qualify as bona fide commissions. [Contested __X___/Uncontested _____].

6.     Over seventy-five percent of Absopure's sales are of consumer items to end customers and are not for resale, including bottled water, coffee and related items. [Contested __X___/Uncontested _____].

7.     Absopure's Plymouth and Grand Rapids locations are both open to the public, such that consumers can walk in or call in to make orders and have done so. [Contested _X_____/Uncontested _____].

48

8.     Absoupure   qualifies   as   a   retail   establishment.     [Contested __X__/Uncontested _____].

9.     Absoupure had a good faith belief that its Sales and Service Specialists and Sales and Service Specialist Trainees were exempt from the overtime provisions of the FLSA.  [Contested ___X__/Uncontested _____].

10.    No Plaintiff has been paid less than $120.00 for any workday during the period beginning October 2017.  (Dkt. No. 119, Exh. 2, Byrne Dec. ¶¶ 7-8). [Contested __X___/Uncontested _____].

11.    On November 8, 2021, Absoupure increased the daily minimum guarantee payment for Sales and Service Specialist Trainees without a Commercial Driver's License ("CDL") from $120 to $140 and for Sales and Service Specialist Trainees with a CDL from $140 to $170.   [Contested __X___/Uncontested _____].

12.    Plaintiffs have received equal or greater compensation than they would have if they had been hourly employees paid at an hourly rate based on the daily minimum guarantee.  [Contested __X___/Uncontested _____].

13.    Absoupure has followed the United States Department of Transportation Rules and Regulations and is under the policies of the Department of Transportation. Under those DOT Rules and Regulations, drivers, such as plaintiffs would not be under the FLSA. Plaintiffs made more money as commissioned employees than they would have made as an hourly employee. [Contested ___X_/Uncontested _____].

14.     There is no evidence in the record of Absopure having received any complaint or charge of violating the FLSA prior to the filing of this lawsuit. [Contested ___X_/Uncontested _____].

**b)     Defense as to Hours Worked**
  **iv.     The elements of Statute of Limitations defense to the claim**

  **vi.     The controlling or most appropriate legal authority in support of every element of the Statue of Limitations defense.**

**Defendant states**: An employer may show hours worked using records other than a standard clock-in and clock-out system. *Oliva v. Infinite Energy, Inc.*, 1:11-cv-00232-MP-GRJ, 2012 WL 11868265 at *10 (N.D. Fla. October 12, 2012) (employee activity logs can provide an accurate estimate of time worked.)

  **v.     The principal facts in support of the defense with respect to hours worked, both as to liability and damages, indicating whether each fact is contested or uncontested:**

1.     Absopure kept track of the vast majority of Plaintiffs' time via a time clock system near the entrances to its facilities and a handheld inventory system that recorded when Plaintiffs checked-out their vehicle before going on their routes and checked in their vehicles after returning from their routes. [Contested __X___/Uncontested _____].

2.     Absopure's records, including the clock-in times at the beginning of each workday and inventory check-out and check-in times for the trucks, are adequate for the purpose of recording keeping. [Contested __X___/Uncontested

_____].

3.    Absopure's Sales and Service Specialists and Sales and Service Specialist Trainees in Plymouth work for an average total time of one hour and 15 minutes before checking out their vehicles to go on their routes and after checking in their vehicles. [Contested __X___/Uncontested _____].

4.    Absopure's Sales and Service Specialists and Sales and Service Specialist Trainees in Grand Rapids work for an average total time of 45 minutes before checking out their vehicles to go on their routes and after checking in their vehicles. [Contested __X___/Uncontested _____].

5.    Adding one hour and 15 minutes to the total time between checking out and checking in their vehicles provides an accurate account of the total hours worked while subtracting 30 minutes for a meal break for each day for each Plaintiff working at Absopure's Plymouth facility. [Contested __X___/Uncontested _____].

6.    Adding 45 minutes to the total time between checking out and checking in their vehicles provides an accurate account of the total hours worked while subtracting 30 minutes for a meal break for each day for each Plaintiff working at Absopure's Grand Rapids facility. [Contested __X___/Uncontested _____].

**vi.   Each party's calculation of damages.**

**Plaintiff:** Plaintiff relies on the following damages calculation as provided by his Expert Witness, which is based on the Plaintiff's estimate of hours worked, as

set forth in Plaintiff's Third Supplemental Initial Disclosures and Plaintiff's declarations: $ 232,024.  See **Exhibit A**.  This amount does not include liquidated damages, for which Plaintiff has already prevailed on summary judgment. This amount also does not include attorneys' fees and costs, both of which shall be determined by the Court.

Plaintiff reserves the right to amend his calculation of damages because damages are ongoing.  The Court has Ordered that Plaintiff is entitled to liquidated damages. Additionally, Plaintiff is requesting his attorneys' fees and costs, which are ongoing.

**Defendant:** No damages are warranted.

g. **Lay Witnesses**:

The parties make several assertions regarding the use of representative testimony.  The Court has already ruled on the issue of representative testimony and has allowed all Plaintiffs to be called as witnesses.  See 11/15/23 Order (Dkt. 191); 12/4/2023 (Dkt. 216).  Nonetheless, the Court retains in this Joint Final Pretrial Order the parties' statement of the representative testimony issue simply to maintain a record of those statements.

i. **Plaintiff's Lay Witness List**

1.    Plaintiff Justin Guy - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records,

amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

2.    Plaintiff John Aniol - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

3.    Plaintiff Caleb Fish - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

4.    Plaintiff, Paul Okimoto - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

5.    Plaintiff Keith Brown - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping

records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

6. Plaintiffs Terry Pemberton - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

7. Plaintiff David Sujkowski - Will Call - Plaintiff will testify about his estimated hours worked, Defendant's failure to maintain accurate timekeeping records, amount/type of compensation received, brief background concerning his employment, duties performed, the mechanics of his deliveries, and amount of times he drove a vehicle that weighed less than 10,001 pounds.

8. Plaintiff Aaron Armstead – May Call - Plaintiff may call, to the extent necessary either in his case in chief or potentially as rebuttal witnesses, this Opt-in Plaintiff, who drove a vehicle that weighs less than 10,001 pounds on more than a *de minimis* number of routes, as discussed *supra*. Plaintiff agrees that it is not necessary to call all of the witnesses to testify, and that this issue should be adjudicated on a representative basis.

9. Plaintiff Dwane Armstead – May Call - Plaintiff may call, to the extent

necessary either in his case in chief or potentially as rebuttal witnesses, this Opt-in Plaintiff, who drove a vehicle that weighs less than 10,001 pounds on more than a *de minimis* number of routes, as discussed *supra*.  Plaintiff agrees that it is not necessary to call all of the witnesses to testify, and that this issue should be adjudicated on a representative basis.

**Defendant states:** Representative testimony is not proper in this case.

10.     Plaintiff Matthew Jackson– May Call - Plaintiff may call, to the extent necessary either in his case in chief or potentially as rebuttal witnesses, this Opt-in Plaintiff, who drove a vehicle that weighs less than 10,001 pounds on more than a *de minimis* number of routes, as discussed *supra*.  Plaintiff agrees that it is not necessary to call all of the witnesses to testify, and that this issue should be adjudicated on a representative basis.

**Defendant states:** Representative testimony is not proper in this case.

11.     Plaintiff Kevin Phipps – May Call - Plaintiff may call, to the extent necessary either in his case in chief or potentially as rebuttal witnesses, this Opt-in Plaintiff, who drove a vehicle that weighs less than 10,001 pounds on more than a *de minimis* number of routes, as discussed *supra*.  Plaintiff agrees that it is not necessary to call all of the witnesses to testify, and that this issue should be adjudicated on a representative basis.

**Defendant states:** Representative testimony is not proper in this case.

12.    Plaintiff Kyle Winconek – May Call - Plaintiff may call, to the extent necessary either in his case in chief or potentially as rebuttal witnesses, this Opt-in Plaintiff, who drove a vehicle that weighs less than 10,001 pounds on more than a *de minimis* number of routes, as discussed *supra*.   Plaintiff agrees that it is not necessary to call all of the witnesses to testify, and that this issue should be adjudicated on a representative basis.

**Defendant states:** Representative testimony is not proper in this case.

13.    Defendant's Corporate Representative– Plaintiff may call Defendant's corporate representative in his case in chief to testify concerning Plaintiff's claims, Defendant's defenses, Defendant's records, and damages.

14.    Corporate Representative for J.B. Hunt – Plaintiff may call J.B. Hunt's corporate representative at trial (either in person or via zoom) as a rebuttal witness to the extent Defendant maintains its fraudulent misrepresentation pertaining to Absopure directing and controlling J.B. Hunt's transportation of goods in an effort to evade liability.

### ii.  Defendant's Lay Witness List
### Defendant's Witnesses:

The Court has ruled on the parties' motions to object to proposed trial exhibits and expert report/testimony.  See 11/15/2023 Order; 12/4/2023 Order; 10/13/2023 Order. Nonetheless, the Court retains in this Joint Final Pretrial Order the parties'

statements regarding witnesses and exhibits simply to maintain a record of those statements.

(a) Patrick Byrne (estimated time – 4 hours). Mr. Byrne will testify about the background and history of Defendants, overview of Defendant's business and operations, overview of Plaintiffs'/employees' duties, operation of the Defendant's handheld inventory system, operation of Defendant's time clock system, Plaintiffs' hours worked, Defendant's operation as a retail establishment, and damages to the extent there are any.

(b) Kyle Glovak, HR Leader, Absopure Water Company, LLC (estimated time - 1 hour). Mr. Glovak will testify about Defendant's employee payment methods and human resource practices.

> **Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(c)     Art Amelotte. (estimated time – 2 ½ hours). Mr. Amelotte will testify about Absopure's general management practices, hours worked by Sales and Service Specialists and Sales and Specialist Trainees, and the job duties of Sales and Service Specialists and Specialist Trainees.

(c)     Jim Dragston (estimated time – 3 hours). Mr. Dragston will testify about Defendant's inventory management and product ordering systems.

> **Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

**Defendant's May Call Witnesses:**

(a)     Alex Mecks, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. Mecks will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

(b)     Mike McWhinnie, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. McWhinnie will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

> **Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(c)     John Kilmer, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. Kilmer will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

> **Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(d)     Brian Roon, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. Roon will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

**Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(e)     Joseph Heikkuri, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. Heikkuri will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

**Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(f)     Tony Freese, Manager for Absopure Water Company, LLC. (estimated time – 1 hour). Mr. Freese will testify about his individual practices and supervision as an Absopure manager over particular Plaintiffs, and on the hours worked and vehicles driven for particular Plaintiffs.

(g)     Ron Civone (estimated time – 1 hour). Current Sales and Service Specialist for Absopure. Mr. Civone will testify about the job duties and hours worked of Sales and Service Specialists.

**Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(h)     Andrew Mumford (estimated time – 1 hour). Current Sales and Service Specialist for Absopure. Mr. Mumford will testify about the job duties and hours worked of Sales and Service Specialists.

**Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(i)     Bob Sturdy (estimated time – 1 hour). Current Sales and Service Specialist for Absopure. Mr. Sturdy will testify about the job  duties  and  hours worked  of Sales and Service Specialists.

> **Plaintiff states**: Plaintiff objects to Defendant calling this witness because Defendant failed to timely disclose him as a witness.

(j)     Defendant reserves the right to call any Plaintiff not called by Plaintiffs during their case in chief.  Defendant expects them to testify about their hours worked and the small vehicle exception. (Estimated time – undetermined).

> **Plaintiff states**: Plaintiff objects to Defendant calling all Plaintiffs in this matter, which should be tried on a representative basis and would contravene the purposes of the FLSA>

(k)     Defendant reserves the right to call additional rebuttal witnesses to rebut any further or additional disclosures by Plaintiffs. (Estimated time – undetermined)

> **Plaintiff states**: Plaintiff objects to Defendant calling witnesses not disclosed on its witness list.

### h. <u>Expert Witnesses</u>:

**Plaintiff's Expert Witness**:

1.     Martin K. Williams, Forensic Accountant, will testify about his expert report concerning Plaintiff's damages calculations. Plaintiff's Expert Report  is attached as **Exhibit A.**  Plaintiff's Expert Witness is in the process of supplementing his expert report based on thousands of documents untimely produced by Defendant.

2.     Defendant will not call an expert witness.

### i. **De bene esse depositions:**

Plaintiff is contemplating presenting J.B. Hunt's corporate representative testimony as a *de bene esse* deposition as opposed to live testimony.

Defendant is not currently planning to present *de bene* deposition testimony. Defendant also notes that the deadlines for taking and providing transcripts of *de bene esse* deposition testimony have passed.

### j. **Pending Motions:**

As previously discussed in this Joint Final Pretrial Order, the Court has already ruled on the motions related to the statute of limitations, objections to proposed trial exhibits, and expert testimony. See 11/15/23 Order; 12/4/2023; 10/13/2023 Order; 11/21/2023 Order. Nonetheless the Court retains in this Joint Final Pretrial Order the parties' statement of the representative testimony issue simply to maintain a record of those statements.

Plaintiff is contemplating filing a Motion to Equitably Toll the Statute of Limitations in light of Defendant's recent efforts to renege on the Parties' prior stipulation regarding equitable tolling. Plaintiff may also file a Motion to Compel if Defendant does not supplement its discovery response and produce all outstanding pay and time records up to the date of trial. Plaintiff will file Objections to Defendant's Exhibit List. Plaintiff objects to various arguments that were previously adjugated by the Court, yet re-raised by Defendant in its portion of the Final Pretrial

Order. For example, Plaintiff objects to Defendant's argument that the Plaintiffs received more through its method of compensation as opposed to if they had received proper overtime compensation, because this argument is an illogical fallacy that has previously been rejected by the Court.

Defendant has motions pending 1) for summary judgment on the basis of the statute of limitations, and 2) motions in limine regarding Plaintiffs' "Exhibit A", small vehicle exception testimony, and expert testimony.

### k. **Exhibits**

### i. **Plaintiff's Exhibits:**

| Exhibit No. | Exhibit Description | Objections |
|---|---|---|
| 1 | Defendant's Answer to the Complaint | |
| 2 | Plaintiff's Third Supplemental Initial Disclosures | **X** |
| 3 | Plaintiff and Opt-In Plaintiffs' Pay Statements for the relevant time period(e.g., ABS 59-94; 2465-3524) | |
| 4 | Plaintiff and Opt-In Plaintiffs' Timesheets for the relevant time period (e.g., ABS 001284-002119) | |
| 5 | Plaintiff and Opt-in Plaintiffs' "Commission" sheets (e.g., ABS 437-447, 5531-5699, Guy 78-139) | |
| 6 | Deposition Transcripts of Defendant's Corporate Representative | |
| 7 | Absopure Water Co.'s Position Description (ABS 000095) | |

| | | |
|---|---|---|
| 8 | Defendant's Responses to Plaintiff's First Request for Admissions | |
| 9 | Defendant's Second Supplemental Answers to Plaintiff's First Set of Interrogatories | |
| 10 | Defendant's Second Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents | |
| 11 | Defendant's Second Supplemental Responses to Plaintiff's First Set of Requests for Admissions | |
| 12 | Defendant's Third Supplemental Responses to Plaintiff's Discovery Requests | |
| 13 | Defendant's Associate Handbook | |
| 14 | Defendant's Sales Service Specialist (Route Delivery) Indeed Job Posting (ABS 000340) | |
| 15 | Declaration of Kevin Phipps [ECF No. 126-8] | X |
| 16 | Declaration of Charles Perry [ECF No. 126-9] | X |
| 17 | Declaration of Keith Brown [ECF No. 126-10] | X |
| 18 | Declaration of Danielle Childs [ECF No. 126-11] | X |
| 19 | Declaration of Caleb Fish [ECF No. 126-12] | X |
| 20 | Declaration of Gary Johnson, Jr. [ECF No. 126-13] | X |
| 21 | J.B. Hunt Transport Services, Inc., 2014 Notice of Annual Meeting, Proxy Statement and Annual Report [ECF No. 59-15] | X |
| 22 | U.S. Department of Labor, Wage and Hour Division Field Operations Handbook – Chapter 24 [ECF No. 59-18] | |
| 23 | Declaration of Trevor Rogers (GUY 178) | X |

| | | |
|---|---|---|
| **24** | Certificate of No Records for Absopure (GUY 179) | **X** |
| **25** | Chart Pertaining to Vehicle Weight (*See, e.g.,* ECF No. 56, PageID.1263) | |
| **26** | Plaintiff's Expert Report and Corresponding Excel spreadsheet | **X** |
| **27** | Opt-in Plaintiffs' Declarations concerning their hours worked as reflected in Plaintiffs' Third Supplemental Initial Disclosures | **X** |
| **28** | Trevor Rodgers Declaration (ECF No. 115-2) | **X** |
| **29** | J.B. Hunt Certificate of Records (ECF No. 115-3) | **X** |
| **30** | Mountain Valley Distribution Agreement (ECF No. 118-1) | |

### ii.　Defendant's Exhibits

**No.**　　　　**Exhibit**

1.　Mountain Valley Distributor Agreement. (Bates ABS 003739 – 003750). [Objection _____/No Objection __X___].

2.　Mountain Valley Invoices showing purchases of Mountain Valley Water by Absopure. (Absopure 000789-000799). [Objection __X___/No Objection _____].

3.　Absopure Invoices with Mountain Valley Water Purchases – Guy Sales. (Absopure 000800 -000859). [Objection __X___/No Objection _____].

4.      Absopure invoices with Mountain Valley Water Purchases – October 2019 Sales. (Absopure 000860 -001283) Motor Carrier Identification Report. (Absopure 000448). [Objection __X___/No Objection _____].

5. Motor Carrier Identification Report (Absopure 000448). [Objection __X___/No Objection _____].

6. FMCSA Letter dated September 24, 2018. (Absopure 000728). [Objection __X___/No Objection _____].

7. FMCSA Safety Audit Pass Letter dated June 9, 2017 and report (Absopure 000729 – 000734). [Objection __X___/No Objection _____].

8. Inventory Turn Report (produced as Exhibit A to Defendant's Third Supplemental Discovery Responses). [Objection __X___/No Objection _____].

9. Defendant's May 26, 2023 Statements of Relevant Facts. [Objection __x___/No Objection _____].

10. Plaintiffs' June 9, 2023 Responses to Statements of Relevant Facts. [Objection __x___/No Objection _____].

11. Deposition Transcript of Justin Guy. [Objection _____/No Objection __X___].

12. Deposition Transcript of Keith Brown [Objection _____/No Objection __X___].

13. Deposition Transcript of Terry Pemberton [Objection _____/No Objection __X___].

14. Deposition Transcript of David Sujkowski [Objection _____/No Objection __X___].

15. Terry Pemberton Load Sheets (Bates 5489-5530) [Objection _____/No Objection __X___].

16. Pay statements of Plaintiff Justin Guy (Absopure 000059 – 000094). [Objection _____/No Objection __X___].

17. Pay statements of Opt-In Plaintiff John Aniol, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

18. Pay statements of Opt-In Plaintiff Aaron Armstead, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

19. Pay statements of Opt-In Plaintiff Dwane Armstead, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

20. Pay statements of Opt-In Plaintiff Erick Banks, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

21. Pay statements of Opt-In Plaintiff Lucas Belonga (Bates ABS 005714 – 005727). [Objection _____/No Objection __X___].

22. Pay statements of Opt-In Plaintiff Keith Brown, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

23. Pay statements of Opt-In Plaintiff Dannielle Childs (Bates ABS 005700 - 005713). [Objection _____/No Objection __X___].

24. Pay statements of Pay statements of Opt-In Plaintiff Ryan Clendennin, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

25. Pay statements of Opt-In Plaintiff Caleb Fish, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

26. Pay statements of Opt-In Plaintiff Boaz Householder, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

27. Pay statements of Opt-In Plaintiff Shawn Jacek, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

28. Pay statements of Opt-In Plaintiff Matthew Jackson, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

29. Pay statements of Opt-In Plaintiff Gary Johnson, Jr. (Bates ABS 005728 – ABS5760). [Objection _____/No Objection __X___].

30. Pay statements of Opt-In Plaintiff Ricardo Lammer, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

31. Pay statements of Opt-In Plaintiff Antony Newkirk, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

32. Pay statements of Opt-In Plaintiff Paul Okimoto, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

33. Pay statements of Opt-In Plaintiff Terry Pemberton, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

34. Pay statements of Opt-In Plaintiff Charles Perry, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

35. Pay statements of Opt-In Plaintiff Kevin Phipps, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

36. Pay statements of Opt-In Plaintiff Nathan Redmer, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

37. Pay statements of Opt-In Plaintiff Ryan Rhodes, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

38. Pay statements of Opt-In Plaintiff Jesse Skonieczny, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

39. Pay statements of Opt-In Plaintiff David Sujkowski, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

40. Pay statements of Opt-In Plaintiff Jordan Tampa, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

41. Pay statements of Opt-In Plaintiff Kyle Winconek, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

42. Pay statements of Opt-In Plaintiff George Woldt, extracted from ABS 002465 – 003524. [Objection _____/No Objection __X___].

43. W-2s for Plaintiff Justin Guy (Absopure 000209 – 000211). [Objection __X___/No Objection _____].

44. W-2s for Opt-In Plaintiff John Aniol, extracted from ABS 003525, 003530, 003542, 003550, 003556, 003565. [Objection __X___/No Objection _____].

45. W-2s for Opt-In Plaintiff Aaron Armstead, Bates ABS 003538, [Objection __X___/No Objection _____].

46. W-2s for Opt-In Plaintiff Dwane Armstead, Bates ABS 003539, [Objection __X___/No Objection _____].

47. W-2s for Opt-In Plaintiff Erick Banks, Bates ABS 003535, [Objection __X___/No Objection _____].

48. W-2s for Opt-In Plaintiff Lucas Belonga, Bates ABS 003575. [Objection __X___/No Objection _____].

49. W-2s for Opt-In Plaintiff Keith Brown, Bates ABS 003526, 003531, 003543, 003551. [Objection __X___/No Objection _____].

50. W-2s for Opt-In Plaintiff Dannielle Childs, Bates ABS 003536, 003545, 003553, 003558, 003567. [Objection __X___/No Objection _____].

51. W-2s for Opt-In Plaintiff Ryan Clendennin, Bates ABS 003528, 003533. [Objection __X___/No Objection _____].

52. W-2s for Opt-In Plaintiff Caleb Fish, Bates ABS 003537, 003546, 003554, 003559, 003568. [Objection __X___/No Objection _____].

53. W-2s for Opt-In Plaintiff Boaz Householder, Bates ABS 003566. [Objection __X___/No Objection _____].

54. W-2s for Opt-In Plaintiff Shawn Jacek, Bates ABS 003540. [Objection __X___/No Objection _____].

55. W-2s for Opt-In Plaintiff Matthew Jackson, Bates ABS 003541, 003547. [Objection __X___/No Objection _____].

56. W-2s for Opt-In Plaintiff Gary Johnson, Bates ABS 003578. [Objection __X___/No Objection _____].

57. W-2s for Opt-In Plaintiff Ricardo Lammer, Bates ABS 003548. [Objection __X___/No Objection _____].

58. W-2s for Opt-In Plaintiff Antony Newkirk, Bates ABS 003546, 003573. [Objection __X___/No Objection _____].

59. W-2s for Opt-In Plaintiff Paul Okimoto, Bates ABS 003563, 003572. [Objection __X___/No Objection _____].

60. W-2s for Opt-In Plaintiff Terry Pemberton, Bates ABS 003574. [Objection __X___/No Objection _____].

61. W-2s for Opt-In Plaintiff Charles Perry, Bates ABS 003527, 003532. [Objection __X___/No Objection _____].

62. W-2s for Opt-In Plaintiff Kevin Phipps. Bates ABS 0003529, 0003534, 003544, 003552, 003557. [Objection __X___/No Objection _____].

63. W-2s for Opt-In Plaintiff Nathan Redmer, Bates ABS 003576. [Objection __X___/No Objection _____].

64. W-2s for Opt-In Plaintiff Ryan Rhodes, Bates ABS 003577. [Objection __X___/No Objection _____].

65. W-2s for Opt-In Plaintiff Jesse Skonieczny, Bates ABS 003579. [Objection __X___/No Objection _____].

66. W-2s for Opt-In Plaintiff David Sujkowski, Bates ABS 003562, 003571. [Objection __X___/No Objection _____].

67. W-2s for Opt-In Plaintiff Jordan Tampa, Bates ABS 003549, 003555, 03560, 003569. [Objection __X___/No Objection _____].

68. W-2s for Opt-In Plaintiff Kyle Winconek, Bates ABS 003561, 003570. [Objection __X___/No Objection _____].

69. W-2s for Opt-In Plaintiff George Woldt, Bates ABS 003580. [Objection __X___/No Objection _____].

70. Commission sheets for Plaintiff Justin Guy (Bates Absopure 000441 – 000447). [Objection __X___/No Objection _____].

71. Commission sheets for Opt-In Plaintiff John Aniol (Bates ABS 001342 – 001471; ABS 4234 – 4363; 5235, 5240, 5245, 5250, 5255, 5260, 5265, 5271, 5276, 5281, 5286, 5291, 5296, 5301, 5305, 5311, 5316, 5322, 5328, 5334, 5341, 5348, 5355, 5364, 5372, 5380, 5388, 5394, 5406, 5413, 5422, 5428, 5434, 5439, 5444, 5448, 5453, 5458, 5461, 5466, 5469, 5471, 5474, 5477, 5481, 5485, 5533, 5537, 5541, 5545, 5549, 5553, 5556, 5559, 5562, 5565, 5568, 5570, 5572, 5575, 5578,

5581, 5584, 5587, 5592, 5595, 5598, 5599, 5600-5607, 5610, 5613, 5617, 5621, 5625, 4528, 5631, 5634, 5637, 5640, 5643, 9046, 9050, 9054, 9058, 9067, 9075, 9080, 9085, 9090). [Objection __X___/No Objection _____].

72. Commission sheets for Opt-In Plaintiff Aaron Armstead (Bates ABS 5337, 5338, 5345, 5352, 5360, 5368, 5376, 5384, 5391, 5397, 5402, 5409, 5418, 6425, 5431). [Objection __X___/No Objection _____].

73. Commission sheets for Commission sheets for Opt-In Plaintiff Dwane Armstead (Bates ABS 5359, 5362, 5370, 5378, 5386, 5392, 5398, 5404, 5411, 5420, 5427, 5433, 5438, 5443). [Objection __X___/No Objection _____].

74. Commission sheets for Opt-In Plaintiff Erick Banks (Bates ABS 5315, 5321, 5327, 5335, 5340, 5347, 5354, 5363, 5371, 5379, 5387, 5393, 5399, 5405, 5412, 5421). [Objection __X___/No Objection _____].

75. Commission sheets for Opt-In Plaintiff Lucas Belonga (Bates ABS 004364 – 004400). [Objection __X___/No Objection _____].

76. Commission sheets for Opt-In Plaintiff Keith Brown (Bates ABS 004401 – 004429; 5236, 5241, 5246, 5251, 5256, 5261, 5266, 5272, 5277, 5282, 5287, 5292, 5297, 5302, 5306, 5317, 5323, 5329, 5333, 5342, 5349, 5356, 5365, 5373, 5381, 5389, 5395, 5400, 5407, 5414, 5423, 5429, 5435, 5440, 5445, 5449, 5454. 5459, 5462, 5464, 5467, 5472, 5475, 5478, 5482, 5486, 5534, 5538, 5542, 5546, 5550, 5554, 5557, 5560, 5563, 5566, 5569, 5573, 5576, 5579, 5582, 5585, 5588, 5590,

5593, 5596, 5608, 5612, 5615, 5619, 5623, 5627, 5630, 5633, 5636, 5639, 5642, 5645, 5647, 9047, 9051, 9055, 9059, 9063, 9068, 9076, 9081, 9086, 9091). [Objection __X___/No Objection _____].

77. Commission sheets for Opt-In Plaintiff Dannielle Childs (Bates ABS 004430 – 004596; 5417, 5451, 5457, 5532; 5699). [Objection __X___/No Objection _____].

78. Commission sheets for Opt-In Plaintiff Ryan Clendennin (Bates ABS 5238, 5243, 5248, 5253, 5258, 5263, 5269, 5274, 5279, 5284, 5289, 5294, 5299, 5308, 5313, 5319, 5325, 5331, 5344, 5351, 5358, 5367, 5375, 5383, 9048, 9052, 9056, 9061, 9065, 9070, 9073, 9078, 9083, 9088, 9093) [Objection __X___/No Objection _____].

79. Commission sheets for Opt-In Plaintiff Caleb Fish (Bates ABS 004597 – 004783; 5416, 5450, 5456, 5531, 5648, 5649-5658, 5660, 5662, 5664, 5666, 5668, 5670, 5672, 5674, 5676, 5678, 5680, 5682, 5684, 5686, 5688-5698 ). [Objection __X___/No Objection _____].

80. Commission sheets for Opt-In Plaintiff Boaz Householder (Bates ABS 004784 – 004788). [Objection __X___/No Objection _____].

81. Commission sheets for Opt-In Plaintiff Matthew Jackson (Bates ABS 5480, 5484, 5488, 5536, 5540, 5544, 5548, 5552; 5536, 5540, 5544, 5548, 5552). [Objection __X___/No Objection _____].

82. Commission sheets for Opt-In Plaintiff Gary Johnson, Jr. (Bates ABS 004789 - 004818). [Objection __X___/No Objection _____].

83. Commission sheets for Opt-In Plaintiff Ricardo Lammer (Bates ABS 004819 – 004827; 5659, 5661, 5663, 5665, 5667, 5669, 5671, 5673, 5675, 5677, 5679, 5681, 5683, 5685, 5687). [Objection __X___/No Objection _____].

84. Commission sheets for Opt-In Plaintiff Antony Newkirk (Bates ABS 004828 – 004852). [Objection __X___/No Objection _____].

85. Commission sheets for Opt-In Plaintiff Paul Okimoto (Bates ABS 004853 – 004935). [Objection __X___/No Objection _____].

86. Commission sheets for Opt-In Plaintiff Terry Pemberton (Bates ABS 004936 – 004945). [Objection __X___/No Objection _____].

87. Commission sheets for Opt-In Plaintiff Charles Perry (Bates ABS 5234, 5239, 5244, 5249, 5254, 5259, 5264, 5270, 5275, 5280, 5285, 5290, 5295, 5300, 5304, 5310, 5314, 5320, 5326, 5336, 5339, 5346, 5353, 5361, 5369, 5377, 5385, 5403, 5410, 5419, 5426, 5432, 5437, 5442, 5447, 9045, 9049, 9053, 9057, 9062, 9066, 9071, 9074, 9079, 9084, 9089). [Objection __X___/No Objection _____].

88. Commission sheets for Opt-In Plaintiff Kevin Phipps (Bates ABS 004946 – 004961; 5237, 5242, 5247, 5252, 5257, 5262, 5267, 5273, 5278, 5283, 5288, 5293, 5298, 5303, 5307, 5312, 5318, 5324, 5330, 5332, 5343, 5350, 5357, 5366, 5374, 5382, 5390, 5396, 5401, 5408, 5415, 5424, 5430, 5436, 5441, 5446, 5452, 5455,

5460, 5463, 5465, 5468, 5470, 5473, 5476, 5479, 5483, 5487, 5535, 5539, 5543, 5547, 5551, 5555, 5558, 5561, 5564, 5567, 5574, 5580, 5583, 5586, 5589, 5591, 5594, 5597, 5616, 5620, 5624, 9060, 9064, 9069, 9072, 9077, 9082, 9087, 9092). [Objection __X___/No Objection _____].

89. Commission sheets for Opt-In Plaintiff Nathan Redmer (Bates ABS 004962 – 004983). [Objection __X___/No Objection _____].

90. Commission sheets for Opt-In Plaintiff Ryan Rhodes (Bates ABS 004984 – 005027). [Objection __X___/No Objection _____].

91. Commission sheets for Opt-In Plaintiff Jesse Skonieczny (Bates ABS 005028 – 005043). [Objection __X___/No Objection _____].

92. Commission sheets for Opt-In Plaintiff David Sujkowski (Bates ABS 5044 – 005095). [Objection __X___/No Objection _____].

93. Commission sheets for Opt-In Plaintiff Jordan Tampa (Bates ABS 005096 – 005156; 5609, 5611, 5614, 5618, 5622, 5626, 5629, 5632, 5635, 5638, 5641, 5644, 5646). [Objection __X___/No Objection _____].

94. Commission sheets for Opt-In Plaintiff Kyle Winconek (Bates ABS 005157 - 005228). [Objection __X___/No Objection _____].

95. Commission sheets for Opt-In Plaintiff George Woldt (Bates ABS 005229). [Objection __X___/No Objection _____].

96. List of Vehicle Weights by Date and Employee Number (Bates ABS 003581 – 003738). [Objection _____/No Objection __X___].

97. List of Vehicle Weights by Date for Plaintiff Justin Guy, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

98. List of Vehicle Weights by Date for Opt-In Plaintiff John Aniol, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

99. List of Vehicle Weights by Date for Opt-In Plaintiff Aaron Armstead, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

100. List of Vehicle Weights by Date for Opt-In Plaintiff Dwane Armstead, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

101. List of Vehicle Weights by Date for Opt-In Plaintiff Erick Banks, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

102. List of Vehicle Weights by Date for Opt-In Plaintiff Lucas Belonga, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

103. List of Vehicle Weights by Date for Opt-In Plaintiff Keith Brown, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

104. List of Vehicle Weights by Date for Opt-In Plaintiff Dannielle Childs,

extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

105. List of Vehicle Weights by Date for Opt-In Plaintiff Ryan Clendennin, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

106. List of Vehicle Weights by Date for Opt-In Plaintiff Caleb Fish, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

107. List of Vehicle Weights by Date for Opt-In Plaintiff Boaz Householder, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

108. List of Vehicle Weights by Date for Opt-In Plaintiff Shawn Jacek, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

109. List of Vehicle Weights by Date for Opt-In Plaintiff Matthew Jackson, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

110. List of Vehicle Weights by Date for Opt-In Plaintiff Gary Johnson, Jr., extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

111. List of Vehicle Weights by Date for Opt-In Plaintiff Ricardo Lammer,

extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

112. List of Vehicle Weights by Date for Opt-In Plaintiff Antony Newkirk, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

113. List of Vehicle Weights by Date for Opt-In Plaintiff Paul Okimoto, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

114. List of Vehicle Weights by Date for Opt-In Plaintiff Terry Pemberton, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

115. List of Vehicle Weights by Date for Opt-In Plaintiff Charles Perry, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

116. List of Vehicle Weights by Date for Opt-In Plaintiff Kevin Phipps, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

117. List of Vehicle Weights by Date for Opt-In Plaintiff Nathan Redmer, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

118. List of Vehicle Weights by Date for Opt-In Plaintiff Ryan Rhodes, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

119. List of Vehicle Weights by Date for Opt-In Plaintiff Jordan Tampa, extracted

from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

120. List of Vehicle Weights by Date for Opt-In Plaintiff Jesse Skonieczny, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

121. List of Vehicle Weights by Date for Opt-In Plaintiff David Sujkowski, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

122. List of Vehicle Weights by Date for Opt-In Plaintiff Kyle Winconek, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

123. List of Vehicle Weights by Date for Opt-In Plaintiff George Woldt, extracted from Bates ABS 003581 – 003738. [Objection _____/No Objection __X___].

124. List of Employee Numbers for Opt-In Plaintiffs (Bates ABS 005230). [Objection _____/No Objection __X___].

125. Vehicle Identification Number List (Bates ABS 005232). [Objection _____/No Objection __X___].

126. List of Out of State Deliveries (Bates Absopure 000474 – 000717). [Objection __X___/No Objection _____].

127. List of Plaintiff's Justin Guy's Route Assignments. (Absopure 000719 – 000727). [Objection __X___/No Objection _____].

128. Driver Handbook (Bates Absopure 000098 – 000116). [Objection _____/No Objection __X___].

129. Associate Handbook (Bates Absopure 000177 – 000208). [Objection _____/No Objection __X___].

130. Hand Held Check In /Check Out Times For All Plaintiffs (Bates ABS 003751 – 004195). [Objection __X___/No Objection _____].

131. Hand Held Check In /Check Out Times For Plaintiff Justin Guy, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

132. Hand Held Check In /Check Out Times For Opt-In Plaintiff John Aniol, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

133. Hand Held Check In /Check Out Times For Opt-In Plaintiff Aaron Armstead, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

134. Hand Held Check In /Check Out Times For Opt-In Plaintiff Dwane Armstead, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

135. Hand Held Check In /Check Out Times For Opt-In Plaintiff Erick Banks, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

136. Hand Held Check In /Check Out Times For Opt-In Plaintiff Lucas Belonga,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

137. Hand Held Check In /Check Out Times For Opt-In Plaintiff Keith Brown,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

138. Hand Held Check In /Check Out Times For Opt-In Plaintiff Dannielle Childs,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

139. Hand Held Check In /Check Out Times For Opt-In Plaintiff Ryan Clendennin,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

140. Hand Held Check In /Check Out Times For Opt-In Plaintiff Caleb Fish,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

141. Hand Held Check In /Check Out Times For Opt-In Plaintiff Boaz Householder,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

142. Hand Held Check In /Check Out Times For Opt-In Plaintiff Shawn Jacek,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection

_____].

143. Hand Held Check In /Check Out Times For Opt-In Plaintiff Matthew Jackson, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

144. Hand Held Check In /Check Out Times For Opt-In Plaintiff Gary Johnson, Jr., extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

145. Hand Held Check In /Check Out Times For Opt-In Plaintiff Ricardo Lammer, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

146. Hand Held Check In /Check Out Times For Opt-In Plaintiff Antony Newkirk, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

147. Hand Held Check In /Check Out Times For Opt-In Plaintiff Paul Okimoto, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

148. Hand Held Check In /Check Out Times For Opt-In Plaintiff Terry Pemberton, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

149. Hand Held Check In /Check Out Times For Opt-In Plaintiff Charles Perry,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

150. Hand Held Check In /Check Out Times For Opt-In Plaintiff Kevin Phipps,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

151. Hand Held Check In /Check Out Times For Opt-In Plaintiff Nathan Redmer,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

152. Hand Held Check In /Check Out Times For Opt-In Plaintiff Ryan Rhodes,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

153. Hand Held Check In /Check Out Times For Opt-In Plaintiff Jordan Tampa,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

154. Hand Held Check In /Check Out Times For Opt-In Plaintiff Jesse Skonieczny,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

155. Hand Held Check In /Check Out Times For Opt-In Plaintiff David Sujkowski,

extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection
_____].

156. Hand Held Check In /Check Out Times For Opt-In Plaintiff Kyle Winconek, extracted from Bates ABS 003751 – 004195. [Objection __X___/No Objection _____].

157. Hand Held Check In /Check Out Times For Opt-In Plaintiff George Woldt, extracted from Bates ABS 003751 – 004195 [Objection __X___/No Objection _____].

158. Personnel Records for Plaintiff Justin Guy (Bates Absopure 000001 – 000058). [Objection __X___/No Objection _____].

159. Personnel Records for Opt-In Plaintiff John Aniol (Bates ABS 001284 – 001286; ABS 002120 – 002157). [Objection __X___/No Objection _____].

160. Personnel Records for Opt-In Plaintiff Aaron Armstead (Bates ABS 002158 – 002163; ABS 001476 – 001489). [Objection __X___/No Objection _____].

161. Personnel Records for Opt-In Plaintiff Dwane Armstead (Bates ABS 002164 – 002166; ABS 001494 – 001509). [Objection __X___/No Objection _____].

162. Personnel Records for Opt-In Plaintiff Erick Banks (Bates ABS 1614 – 001626; ABS 002167 – 002168). [Objection __X___/No Objection _____].

163. Personnel Records for Opt-In Plaintiff Lucas Belonga (Bates ABS 1538 – 001551; ABS 2169 - 002179). [Objection __X___/No Objection _____].

164. Personnel Records for Opt-In Plaintiff Keith Brown (Bates ABS 001580 – 001586; ABS 002180 – 002196). [Objection __X___/No Objection _____].

165. Personnel Records for Opt-In Plaintiff Dannielle Childs (Bates 001625 – 001647; ABS 002197 – 002210). [Objection __X___/No Objection _____].

166. Personnel Records for Opt-In Plaintiff Ryan Clendennin (Bates ABS 002211 – 002217; ABS 001654 – 001666). [Objection __X___/No Objection _____].

167. Personnel Records for Opt-In Plaintiff Caleb Fish (Bates ABS 00002218 – 002257; ABS 001667 – 001679). [Objection __X___/No Objection _____].

168. Personnel Records for Opt-In Plaintiff Boaz Householder (Bates ABS 002258 – 002261; ABS 001738 – 001747). [Objection __X___/No Objection _____].

169. Personnel Records for Opt-In Plaintiff Shawn Jacek (Bates ABS 002262 – 002263; ABS 001759). [Objection __X___/No Objection _____].

170. Personnel Records for Opt-In Plaintiff Matthew Jackson (Bates ABS 002264 – 002268; ABS 001763 – 001774). [Objection __X___/No Objection _____].

171. Personnel Records for Opt-In Plaintiff Gary Johnson. Jr. (Bates ABS 002269 – 002290; ABS 001775 – 001784). [Objection __X___/No Objection _____].

172. Personnel Records for Opt-In Plaintiff Ricardo Lammer (Bates ABS 002291- 002301; ABS 001805 – 001815). [Objection __X___/No Objection _____].

173. Personnel Records for Opt-In Plaintiff Antony Newkirk (Bates ABS 002302 - 002307; ABS 001816 – 001825). [Objection __X___/No Objection _____].

174. Personnel Records for Opt-In Plaintiff Paul Okimoto (Bates ABS 2308 – 002319; ABS 001832 – 001843). [Objection __X___/No Objection _____].

175. Personnel Records for Opt-In Plaintiff Terry Pemberton (Bates ABS 002320 – 002331; ABS 001866 – 001877). [Objection __X___/No Objection _____].

176. Personnel Records for Opt-In Plaintiff Charles Perry (Bates ABS 002332 – 002343; ABS 001886 – 001897). [Objection __X___/No Objection _____].

177. Personnel Records for Opt-In Plaintiff Kevin Phipps (Bates ABS 002344 – 002352, 002400 – 002414; ABS 001938 – 001947, 001950 – 001953). [Objection __X___/No Objection _____].

178. Personnel Records for Opt-In Plaintiff Nathan Redmer (Bates ABS 002415 – 002421; 001959 – 001970). [Objection __X___/No Objection _____].

179. Personnel Records for Opt-In Plaintiff Ryan Rhodes (Bates ABS 002422 – 002427; ABS 001971 – 002004).001982). [Objection __X___/No Objection _____].

180. Personnel Records for Opt-In Plaintiff Jesse Skonieczny (Bates ABS 002428 – 002437; ABS 001992 -[Objection __X___/No Objection _____].

181. Personnel Records for Opt-In Plaintiff David Sujkowski (Bates ABS 002438 – 002441; ABS 002025 – 002034). [Objection __X___/No Objection _____].

182. Personnel Records for Opt-In Plaintiff Jordan Tampa (Bates 002442 – 002246; ABS 002964 – 002078). [Objection __X___/No Objection _____].

183. Personnel Records for Opt-In Plaintiff Kyle Winconek (Bates ABS 002247 – 002451; ABS 002095 – 002106). [Objection __X___/No Objection _____].

184. Personnel Records for Opt-In Plaintiff George Woldt (Bates ABS 002452 – 002464; ABS 002109 – 002119). [Objection __X___/No Objection _____].

185. Check Out/Check In Times – All Specialists. (Bates ABS 005789-009044). [Objection __X___/No Objection _____].

186. Clock-In Times For Plaintiff Justin Guy (Bates ABS 005761 – 005776). [Objection _____/No Objection __X___].

187. Clock-In Times For Opt-In Plaintiff John Aniol (Bates ABS 001287 – 001341). [Objection _____/No Objection __X___].

188. Clock-In Times For Opt-In Plaintiff Aaron Armstead (Bates ABS 01472 – 01474). [Objection _____/No Objection __X___].

189. Clock-In Times For Opt-In Plaintiff Dwane Armstead (Bates ABS 001490 – 001483). [Objection _____/No Objection __X___].

190. Clock-In Times For Opt-In Plaintiff Erick Banks (Bates ABS 001510 – 001513). [Objection _____/No Objection __X___].

191. Clock-In Times For Opt-In Plaintiff Lucas Belonga (Bates 001527 – 001537; ABS 005770 – 005780). [Objection _____/No Objection __X___].

192. Clock-In Times For Opt-In Plaintiff Keith Brown (Bates ABS 001552 – 001579). [Objection _____/No Objection __X___].

193. Clock-In Times For Opt-In Plaintiff Dannielle Childs (Bates ABS 001587 – 001624; ABS 005781 – 005784) [Objection _____/No Objection __X___].

194. Clock-In Times For Opt-In Plaintiff Ryan Clendennin (Bates ABS 001648 – 001653). [Objection _____/No Objection __X___].

195. Clock-In Times For Opt-In Plaintiff Caleb Fish (Bates ABS 001680 – 001735; ABS 005785 – 005788). [Objection _____/No Objection __X___].

196. Clock-In Times For Opt-In Plaintiff Boaz Householder (ABS 001736 – 001737). [Objection _____/No Objection __X___].

197. Clock-In Times For Opt-In Plaintiff Shawn Jacek (Bates ABS 1748 – 1749). [Objection _____/No Objection __X___].

198. Clock-In Times For Opt-In Plaintiff Matthew Jackson (Bates ABS 001760 – 001762). [Objection _____/No Objection __X___].

199. Clock-In Times For Opt-In Plaintiff Gary Johnson, Jr. (Bates ABS 001785 – 001798). [Objection _____/No Objection __X___].

200. Clock-In Times For Opt-In Plaintiff Ricardo Lammer (Bates ABS 001799 – 001804). [Objection _____/No Objection __X___].

201. Clock-In Times For Opt-In Plaintiff Antony Newkirk (Bates ABS 001826 – 001831). [Objection _____/No Objection __X___].

202. Clock-In Times For Opt-In Plaintiff Paul Okimoto (Bates ABS 001844 – 001861). [Objection _____/No Objection __X___].

203. Clock-In Times For Opt-In Plaintiff Terry Pemberton (Bates ABS 001862 – 001865). [Objection _____/No Objection __X___].

204. Clock-In Times For Opt-In Plaintiff Charles Perry (Bates ABS 001878 – 001885). [Objection _____/No Objection __X___].

205. Clock-In Times For Opt-In Plaintiff Kevin Phipps (Bates ABS 001898 – 001937). [Objection _____/No Objection __X___].

206. Clock-In Times For Opt-In Plaintiff Nathan Redmer (Bates ABS 001954 – 001958). [Objection _____/No Objection __X___].

207. Clock-In Times For Opt-In Plaintiff Ryan Rhodes (Bates ABS 001983 – 001991). [Objection _____/No Objection __X___].

208. Clock-In Times For Opt-In Plaintiff Jesse Skonieczny (Bates ABS 002005 – 002011). [Objection _____/No Objection __X___].

209. Clock-In Times For Opt-In Plaintiff David Sujkowski (Bates 002012 – 002024). [Objection _____/No Objection __X___].

210. Clock-In Times For Opt-In Plaintiff Jordan Tampa (Bates ABS 2037 – 002063). [Objection _____/No Objection __X___].

211. Clock-In Times For Opt-In Plaintiff Kyle Winconek (Bates ABS 002079 – 002094). [Objection _____/No Objection __X___].

212. Clock-In Times For Opt-In Plaintiff George Woldt (Bates ABS 002107 – 002108). [Objection _____/No Objection __X___].

213. Hours-worked tables for Plaintiff Justin Guy. [Objection __X___/No Objection _____].

214. Hours-worked tables for Opt-In Plaintiff John Aniol[Objection __X___/No Objection _____].

215. Hours-worked tables for Opt-In Plaintiff Aaron Armstead. [Objection __X___/No Objection _____].

216. Hours-worked tables for Opt-In Plaintiff Dwane Armstead. [Objection __X___/No Objection _____].

217. Hours-worked tables for Opt-In Plaintiff Erick Banks. [Objection __X___/No Objection _____].

218. Hours-worked tables for Opt-In Plaintiff Lucas Belonga. [Objection __X___/No Objection _____].

219. Hours-worked tables for Opt-In Plaintiff Keith Brown. [Objection __X___/No Objection _____].

220. Hours-worked tables for Opt-In Plaintiff Dannielle Childs. [Objection __X___/No Objection _____].

221. Hours-worked tables for Opt-In Plaintiff Ryan Clendennin. [Objection __X___/No Objection _____].

222. Hours-worked tables for Opt-In Plaintiff Caleb Fish. [Objection __X___/No Objection _____].

223. Hours-worked tables for Opt-In Plaintiff Boaz Householder. [Objection __X___/No Objection _____].

224. Hours-worked tables for Opt-In Plaintiff Shawn Jacek. [Objection __X___/No Objection _____].

225. Hours-worked tables for Opt-In Plaintiff Matthew Jackson. [Objection __X___/No Objection _____].

226. Hours-worked tables for Opt-In Plaintiff Gary Johnson, Jr. [Objection __X___/No Objection _____].

227. Hours-worked tables for Opt-In Plaintiff Ricardo Lammer. [Objection __X___/No Objection _____].

228. Hours-worked tables for Opt-In Plaintiff Antony Newkirk. [Objection __X___/No Objection _____].

229. Hours-worked tables for Opt-In Plaintiff Paul Okimoto. [Objection __X___/No Objection _____].

230. Hours-worked tables for Opt-In Plaintiff Terry Pemberton. [Objection __X___/No Objection _____].

231. Hours-worked tables for Opt-In Plaintiff Charles Perry. [Objection __X___/No Objection _____].

232. Hours-worked tables for Opt-In Plaintiff Kevin Phipps. [Objection __X___/No Objection _____].

233. Hours-worked tables for Opt-In Plaintiff Nathan Redmer. [Objection __X___/No Objection _____].

234. Hours-worked tables for Opt-In Plaintiff Ryan Rhodes. [Objection __X___/No Objection _____].

235. Hours-worked tables for Opt-In Plaintiff Jesse Skonieczny. [Objection __X___/No Objection _____].

236. Hours-worked tables for Opt-In Plaintiff David Sujkowski. [Objection __X___/No Objection _____].

237. Hours-worked tables for Opt-In Plaintiff Jordan Tampa. [Objection __X___/No Objection _____].

238. Hours-worked tables for Opt-In Plaintiff Kyle Winconek. [Objection __X___/No Objection _____].

239. Hours-worked tables for Opt-In Plaintiff George Woldt. [Objection __X___/No Objection _____].

240. Demonstrative [Objection __X___/No Objection _____]. Showing Delivery of Mountain Valley Spring Products to Absopure

241. Demonstrative Showing Delivery of Mountain Valley Spring Products Within Michigan[Objection __X___/No Objection _____].

242. Demonstrative Showing Absopure Product Shipment Procedure for Mountain Valley Spring Products[Objection __X___/No Objection _____].

243. Demonstrative Showing Absopure Time Records[Objection __X___/No Objection _____].

**Additional Potential Exhibits**

Defendant reserves the right to submit the following additional exhibits:

    a)     Exhibits consisting of smaller portions of the above-listed exhibits, such as exhibits pertaining only to one Plaintiff out of several referenced in the listed exhibit or pertaining to one year out of several, or smaller subsets.

    b)     Demonstrative exhibits that consist of blowups of portions of the above-listed exhibits.

    c)     Demonstrative exhibits that consist of portions of two or more of the above-listed exhibits shown together.

    d)     Exhibits that are responsive to exhibits, information, or testimony proffered by Plaintiffs that would have been responsive to discovery requests served on Plaintiffs but had not been previously provided.

    e)     Other rebuttal exhibits for issues raised by Plaintiffs that were not reasonably anticipated.

Plaintiff objects to Defendant's reservation of rights to include additional exhibits not timely disclosed.

2.    **l.**    **Evidentiary Issues**

**Plaintiff states**: Plaintiff objects to Defendant providing testimony concerning any of the products that Plaintiffs delivered that originate from outside the state of Michigan because the Parties stipulated to Mountain Valley as being representative of all the items and goods that the drivers delivered that originate from outside the state of Michigan.  Plaintiff objects

to Defendant attempt to argue that it is not exempt based on the Retail exemption or any FLSA exemption other than the MCA exemption, as it attempted to do in prior drafts of this Joint Final Pretrial Order.

**Defendant states:** Plaintiffs have listed a number of declarations in their exhibit list but have not yet indicated whether or not those declarants will be present at trial.  In any instance in which Plaintiff attempts to put any such declaration into evidence without calling that declarant as a witness, Defendant will object on the basis that such declarations are inadmissible hearsay pursuant to Fed. R. Evid. § 801, et seq and will file a motion to that effect.  Defendant will further object to any testimony or other evidence that is characterized as "representative."

IT IS SO ORDERED.

Dated:  January 29, 2024                    s/Mark A. Goldsmith
     Detroit, Michigan                      MARK A. GOLDSMITH
                                           United States District Judge

Dated: October 10, 2023


/s/ *Michael N. Hanna*　　　　　　　　　　　/s/*Michael O. Cummings*　　　　　　　

MICHAEL N. HANNA (P81462)　　　　Michael O. Cummings

MORGAN & MORGAN, P.A.　　　　　Cummings, McClorey, Davis, & Acho, P.C.

2000 Town Center, Suite 1900　　　　1185 Avenue of The Americas, Third Floor

Southfield, MI 48075　　　　　　　　New York, NY 10036

(313) 739-1950　　　　　　　　　　(212) 547-8810

mhanna@forthepeople.com　　　　　mcummings@cmda-law.com

*Attorneys for Plaintiff*　　　　　　　*Attorneys for Defendant*