UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN GUY, individually and on
behalf of those similarly situated,

    Plaintiff,

v.                                       Case No. 20-cv-12734-MAG-EAS
                                        HON. MARK A. GOLDSMITH

ABSOPURE WATER COMPANY, LLC
a domestic limited liability company,

    Defendant.
_____

### DEFENDANT'S MEMORANDUM ON THE
### MOTOR CARRIER ACT EXEMPTION

Defendant Absopure, pursuant to the Court's Orders (Dkts. 236 and 242), hereby submits this memorandum regarding application of the Motor Carrier Act ("MCA") exemption applies to Plaintiffs. The sole issue to decide on the MCA exemption is whether Absopure has a "fixed and persisting intent" that Mountain Valley products move in a "practical continuity of movement" beyond its warehouse to its customers. The facts proven at trial clearly show that Absopure has this intent.

**I.    THE CONTROLLING LAW**

*Walling v. Jacksonville Paper Co.* is the foundational Supreme Court case addressing employees who make only *intra*state trips delivering goods from warehouses that had come from out-of-state. *See Walling v. Jacksonville Paper*

1

*Co.*, 317 U.S. 564, 567-68, 63 S.Ct. 332, 335, 87 L.Ed. 460 (1943). *Jacksonville Paper* confirmed that a temporary stay in a warehouse does not necessarily negate interstate commerce:

> The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. . . . "[I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is ***a practical continuity of movement of the goods until they reach the customers for whom they are intended***. That is sufficient.

*Id.*, at 568 (citation omitted) (emphasis added).

The *Jacksonville* case assessed continuity of movement with respect to two distinct scenarios. The first was where the products were subject to customer orders or "ordered pursuant to a pre-existing contract or understanding with the customer". *Id.*, at 566-68. The Court explicitly ruled that in this situation continued in interstate commers. *Id.,* at 569.

The second scenario involved products that were not already subject to orders but had been ordered to be kept in the warehouse as "stock items" based on anticipation of customer demand. *Id.*, at 566-68. The Court found that such products *could be* considered "in a practical continuity of movement" :

> We do not mean to imply that a wholesaler's course of business ***based on anticipation of needs of specific customers***, rather than on prior orders or contracts, might not at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods 'in commerce' within the meaning of the Act. . . .

2

*Id.*, at 570 (citation omitted) (emphasis added).

The question of whether there is a "a practical continuity of movement" to the "intended" customers later became articulated as whether there was a "fixed and persisting intent" for continuing beyond the storage point to end customers. *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970) ("if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. ")

In 1957, the ICC developed as set of criteria for assessing the "fixed and persisting intent" known as the "MC-48" factors, however, these only focused on the first situation in *Jacksonville Paper*, i.e., whether or not the goods were already purchased or ordered at the time of the out-of-state shipment. *See Baird*, 425 F.2d, at 410-11 (citing to Ex Parte No. MC-48, 71 MCC 17 (1957), which inquired, *inter alia*, whether there were "'specific orders' of a 'specific quantity'. . . to a specific customer" and "'distribution within a single state is specifically arranged only after sale or allocation from storage.'").

Starting in 1992, the ICC recognized that the MC-48 test was too narrow and did not properly account for situations where shipments were made based on anticipation of customer demand. *See Motor Carrier Interstate Transp. (*(1992) (the "MC-207" test); *Advantage Tank Lines, Inc.,* 10 I.C.C.2d 64, 67 (1994)

3

("[T]he Commission is not bound in this case to apply the [MC–48] test.... Instead it must analyze the circumstances of this case in light of all the facts and circumstances surrounding the transportation."). In 2005, the DOL also adopted the MC–207 test. U.S. Department of Labor, Opinion Letter No. FLSA 2005–10, Intra/interstate Transportation of Gasoline and Section 13(b)(1) (Jan. 11, 2005) (citing 57 Fed.Reg. 19,812, 19,813 (1992)).

Most federal circuits that have addressed the issue in recent years have likewise rejected the sole application of the MC-48 test. *Roberts v. Levine,* 921 F.2d 804, 812 (8th Cir.1990); *California Trucking Ass'n v. I.C.C.,* 900 F.2d 208, 213 (9th Cir.1990); *Central Freight v. I.C.C.,* 899 F.2d 413, 421 (5th Cir.1990); *Collins v. Heritage Wine Cellars, Ltd.,* 589 F.3d 895, 898-900 (7th Cir. 2009); *Ehrlich v. Rich Products Corporation*, 767 Fed.Appx. 845, 849 (11th Cir. 2019); *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1158 (10th Cir. 2016); *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 791-92 (3rd Cir. 2016).

## II. A SUBSTANTIAL PORTION OF MOUNTAIN VALLEY PRODUCTS ARE SUBJECT TO PRE-ORDERS

*Jacksonville Paper* further ruled that only a "substantial part" of the products delivered by the employee need be in interstate commerce for the MCA to apply:

> The fact that all of respondent's business is not shown to have an interstate character is not important. . . . . If a **substantial part** of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act.

4

*Jacksonville Paper,* 317 U.S., at 571-72. (emphasis added).  The undisputed testimony at trial is that about 11% of Mountain Valley ("MV") products are subject to "firm orders", i.e., products pre-ordered by customers.  (Dkt. 244, PageID.10122-24, Tr. 13:25-15:25).  The exemption applies for this reason alone.

### III.   ALL OF THE FACTS SHOW THAT MOUNTAIN VALLEY PRODUCTS ARE IN INTERSTATE COMMERCE

In addition to the direct applicability of the *Jacksonville Paper* case, all of key facts, ICC factors and case law show that MV products continue in interstate commerce as they are delivered from Absopure's warehouse to its customers.

#### A.   Abospure Always Delivers All Mountain Valley Products to Customers Whether or Not Pre Ordered or Sold

In Absopure's business model, all of its products are delivered to its customers whether or not a customer has pre-ordered them and whether or not the customer decides to purchase them after the Specialist has arrived with them at the customer location.  (Dkt. 244 PageID.10122-29 (Tr. 13:25-17:4, 18:6-19:9, 20:4-9)).  This makes Absopure's situation much more like the delivery of the pre-ordered products in *Jacksonville Paper* because, in both cases, there is a specific, already-existing commitment to deliver products to the customer locations.  *See Jacksonville Paper,* 317 U.S., at 567-69.  In contrast, in cases applying the MCA exemption based on anticipated customer demand, the products stay in the warehouse until they are ordered, without an explicit delivery commitment.  *See*

5

*Fleming v. Jacksonville Paper Co.*, 128 F.2d 395, 397 (5th Cir. 1942) (*aff'd* by *Jacksonville Paper, supra*, 317 U.S., at 568) ("stocks of merchandise are regularly maintained in the warehouses . . . until resold or ordered out.); *Collins, supra,* 589 F.3d, at 898 ("three-fourths of the wine sits in the warehouse until Heritage has found a buyer"); *Smith v. Coastal Produce Distributors, Inc.*, No. 19-13095, 2021 WL 1026910 (E.D. Mich. Mar. 17, 2021) ("*Smith*", *infra*) ("product is then stored until Defendants re-package it for delivery"); *Roberts, supra,* 921 F.2d, at 806 ("CF does not know where the urea it sends to [the warehouse] will ultimately be shipped.").

Absopure's explicit commitment to always deliver all products all the way to the customers' locations – whether or not ordered or sold – demonstrates a "clear and persisting intent" that MV products will be "in a practical continuity of movement" in interstate commerce. *See Jacksonville Paper,* 317 U.S., at 568-69.

**B.    MV Products Stay in the Warehouse One to Two Weeks**

Having products stay in a warehouse only temporarily is a key factor in showing a practical continuity of movement. *Jacksonville Paper*, 317 U.S., at 568 ("A temporary pause in their transit . . ."). The uncontroverted evidence shows that most MV products stay in Absopure's warehouse one to two weeks and are rotated on a first-in, first-out basis. (Dkt. 244, PageID.10129-31, 43, 46, 48 (Tr. 20:25-21:5, 22:11-17; 34:2-11; 37:14-18, 39:6-40:9); Dkt. 245, PageID.10364-65,

10396 (Tr. 13:17-14:1, 45:6-21)). This compares favorably to the cases that have found continuity of movement. *See Collins* 589 F.3d, at 898 ("most of that wine turns over approximately every month") *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223 (2d Cir. 2002) (products stay in the warehouse from two weeks to one month); *Ehrlich, supra,* 767 Fed.Appx., 847-48 (product turnover more than once per month and rotated on first-in, first out basis in warehouse); *Roberts, supra,* 921 F.2d 804, 807 (8th Cir. 1990) (storage "for as long as six months" or "for as little as one or two months" did not defeat intent).

The jury's finding that Absopure had not established an "average" length of time for products in the warehouse has no weight. (*See* Dkt. 230, PageID.9930, Question No. 11). The average has been a moving target, getting shorter over time, so it is understandable that jury did not settle on a particular "average" number. (*See* Dkt. 244, PageID.10130-31 (Tr. 21:3-5, 22:11-17)). Further, there is no requirement in the case law to determine a specific average, only that the stay be "temporary." *Jacksonville Paper,* 317 U.S., at 569.

### C. Absopure Made its Orders of MV Products Based on Projected Customer Demand

The fact that an employer determines its orders of out-of-state products based on projected customer demand is another key factor to show the fixed intent of a practical continuity of movement. *See* e.g., *Collins*, 589 F.3d at 899.

7

The jury found that Absopure based its orders on customer demand. (Dkt. 230, PageID.9930, Question No. 7; *See also* Dkt. 244, PageID.10130 (Tr. 21:6-20, 23:21-24: 22-25:7, 32:22-33:13, 37:14-18). Absopure clearly meets this criterion.

D. **Absopure Directs, Controls, and Arranges for Shipment of Mountain Valley Products from Arkansas**

In finding a continuity of movement, several cases have pointed to the fact that the employer "arranged" for shipment of the out-of-state products to its warehouses with third-party carriers, i.e., they do not do the shipping themselves but have some control over it. *See, e.g.,Smith, supra*, 2021 WL 1026910 at *5. Further, one of the MC-207 factors asks whether the "shipper" ultimately pays for the cost shipping. *Ex Parte No. MC-207*, 8 I.C.C. 470 (ECF No. 19-19, Page ID.295). Also, this Court has identified as a key issue "which entity had primary control and direction over the interstate transportation of Mountain Valley products". (Dkt. 70, PageID.4501). While no case has dealt with Absopure's specific situation, i.e., where multiple parties play some role in the arranging of shipping, the uncontroverted. evidence shows that Absopure plays the dominant role. *See Jacksonville Paper*, 317 U.S., at 568 ("Commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business.")'

All shipments of MV products were initiated by Absopure, who specified the type and amount of products to be shipped, the destination of shipment, the weight of the shipment, and the general time frame. (Dkt. 244, PageID.10249-51 (Tr.

8

140:23-142:11)). Absopure had final control of who the carrier would be to ship the products to them. (*Id.*, PageID.10256, 10301-03 (Tr. 147:13-21, 192:12-194:4); Dkt. 245, PageID.10370 (Tr. 19:1-11). Mountain Valley's communications with J.B. Hunt did no more than relay the shipment information it had received from Absopure, adding only the date Absopure's order would be ready. (Dkt. 244, PageID.10286 (Tr. 177:1-16); Dkt. 245, PageID.10370-71 (Tr. 19:12-20:1). Absopure paid for the shipping. (Dkt. 245, PageID.10372-74 (Tr. 21:20:22-17, 23:2-6); Def. Tr. Exh. 1).

Finally, Absopure owned all MVproducts from the time they were shipped from Arkansas to the time those products were delivered to customers' locations. (Dkt. 245, PageID.10371-72 (Tr. 20:2-21:19); Def. Tr. Exh. 1); *See Roberts, supra,* 921 F.2d (Defendant "has title to the urea before the urea is shipped to the warehouse and after it arrives there. This ties in to the more crucial distinguishing fact, namely, that [defendant] intends the urea to go beyond the . . . warehouse to its [customers]").

The jury question on who "ultimately" bore the cost of shipment (Dkt. 230, PageID.9930) is ambiguous and could mean a number of different questions such as who paid the carrier directly, who paid last in time, or who paid the full amount.

E.   **Absopure's Warehouse Operation Indicates a Practical Continuity of Movement**

It is undisputed in this case that Absopure owns its warehouse and has complete control over the MV products while there. *See See Collins, supra* 589 F.3d

9

at 899; *Ex–Parte No. MC–207,* 8 I.C.C.2d 470, 473–74. Further, Absopure does not alter the MV products in any way. (Dkt. 245, PageID.10379- (Tr. 28:17-33:3)); *See Collins,* 589 F.3d at 899. These facts likewise show Absopure's fixed and persistent intent in interstate commerce.

### F. The MC-48 Factors Are Not Controlling

As noted above, most courts have rejected sole reliance on the MC-48 factors. (*See* Section I, *supra*). Questions No. 4-6 and 10 on the Verdict Form, which reflect the MC-48 factors (*See* Dkt. 230, PageID.9929-30), should therefore be accorded little to no weight.

## CONCLUSION

For the reasons stated above and in light of the facts proven at trial, Defendant Absopure Water Company, LLC respectfully requests this Honorable Court to enter an Order ruling that the Motor Carrier Act exemption applies in this case.

Dated: January 31, 2024        Respectfully submitted

| | |
|---|---|
| s/ Ronald G. Acho | /s/ *Michael O. Cummings* |
| Ronald G. Acho | Michael O. Cummings |
| Cummings, McClorey, Davis & Acho, P.L.C. | Cummings, McClorey, Davis & Acho, P.C. |
| 17436 College Parkway | 1185 Avenue of the Americas, 3rd Fl. |
| Livonia, MI 48152 | New York, NY 10036 |
| (734) 261-2400 | (212) 547-8810 |
| racho@cmda-law.com | mcummings@cmda-law.com |
| P-23913 | N.Y. Bar No. 2701506 |

**ATTORNEYS FOR DEFENDANT ABSOPURE WATER COMPANY, LLC**

## **LOCAL RULE CERTIFICATION**

I, Michael O. Cummings, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one- inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length.

Dated: January 31, 2024

                                          /s/ *Michael O. Cummings*
                                          Michael O. Cummings
                                          Cummings, McClorey, Davis & Acho, P.C.
                                          Attorneys for Defendants
                                          1185 Avenue of The Americas, Third Floor
                                          (212) 547-8810
                                          mcummings@cmda-law.com
                                          N.Y. Bar No. 2701506

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

Dated: January 31, 2024

/s/ *Michael O. Cummings*
Michael O. Cummings
Cummings, McClorey, Davis & Acho, P.C.
Attorneys for Defendants
1185 Avenue of The Americas, Third Floor
(212) 547-8810
mcummings@cmda-law.com
N.Y. Bar No. 2701506