## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JUSTIN GUY**, individually on behalf
of himself and others similiarly situated,

      Plaintiff,

v.

**ABSOPURE WATER COMPANY, LLC**,
a domestic limited liability company,

      Defendant.

_____/

Case No.:  20-cv-12734

Hon. Mark A. Goldsmith

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS

Plaintiff hereby files his Reply brief in further support of Plaintiff's Motion for Attorney's fees and costs. *See* ECF No. 291.

## **Introduction**

Defendant has failed to compensate its Truck Drivers for their overtime wages owed for over two decades. This wage theft has resulted in Defendant swindling millions of dollars from the most marginalized employees in its workforce. When its current/former employee Truck Drivers sued Defendant to recover their unpaid overtime wages, Defendant deployed a scorched earth litigation strategy for the last four years while repeatedly threatening and filing frivolous motions for sanctions with this Court and the State of Michigan Attorney Grievance Commission, all of which were summarily dismissed.  Defendant's unscrupulous litigation tactics never ceased and continued through a collective action trial. After a three-week collective action trial, a jury found Defendant liable for every penny requested by the Plaintiffs for their unpaid overtime wages, and also found that Defendant either knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

Against this backdrop, Defendant now complains of the hours Plaintiff's counsel worked over the last four years on a contingency basis, even though this work was largely precipitated by Defendant's shenanigans. Plaintiff respectfully requests the Court Grant his Motion for Fees and Costs in its entirety, and also consider awarding Plaintiff's counsel an upward adjustment or fee multiplier.

## I. **Defendant has failed to demonstrate "rare" and "exceptional" circumstances warranting reduction of Plaintiff's lodestar.**

Notwithstanding the **100% recovery** Plaintiff's counsel obtained for their

clients in a collective action jury trial, Defendant "anchors high" and requests that the Court cut their lodestar by **at least 75%** to an amount roughly 25% less than what Defendant's attorney contend they have billed in the case. *See* ECF No. 293, pp. 18-19. In other words, even though Plaintiff's counsel prevailed on virtually every issue and motion in this matter on a contingency basis for four years, Defendant maintains that its counsel—who lost every issue at trial and virtually every motion in this lawsuit—deserves to be paid markedly more for their work on the case than Plaintiff's counsel. As a threshold matter, Defendant's trial team included two additional in-house counsel, and their hours worked—whether compensated on an hourly or salary basis—are not included in Defendant's figures. Moreover, Defendant's work-product in this matter does not remotely merit a similar hourly rate based on the skill and experience demonstrated litigating wage and hour collective actions here. With respect to the hours worked, Defendant's work-product reflects the fact that they likely worked one-third of the time that Plaintiff's counsel worked in this litigation, which was previously brought to the Court's attention. For example, in Plaintiff's Motion for Reconsideration of the Court's Order Concerning the Parties' Stipulation Regarding the Joint Final Pretrial Order, Plaintiff advised:

> Defendant's part-time schedule and failure to comply with the Court's Orders should not be visited on Plaintiff, or require Plaintiff to work around the clock fixing Defendant's deficiencies and reciting, to Defendant's counsel, portions of the Court's Orders to explain to Defendant's counsel its deficiencies.

ECF No. 155. Defendant did not—because it could not—refute this contention, instead electing to file a one-paragraph response indicating that it "supports Plaintiffs Motion[.]" ECF No. 156. The Court, in turn, Granted Plaintiff's motion "[i]n the interest of justice[.]". ECF No. 157. The record reflects numerous instances of the extraordinary efforts required of Plaintiff's counsel in this matter. To cut their fees after navigating this complicated and highly contentious litigation, and obtaining a collective action verdict that provided Plaintiffs all plausible damages, would be an injustice and would fly in the face of the FLSA's remedial purpose.

Defendant's contentions—like virtually all of their positions in this case—are patently frivolous, at odds with controlling law, and due to be rejected. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (*citing Blum*, 465 U.S. at 897). Accordingly, "modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley Citizens' Council*, 478 U.S. at 565 (*citing Blum*, 465 U.S. at 898–901). Here, Defendant's argument, unsupported by evidence or legal authority, does not constitute such 'rare'

and 'exceptional' circumstances. Rather, this is a case in which Plaintiff prevailed at every stage, and most importantly recovered 100% of all damages available to Plaintiffs. Thus, Plaintiff's Motion should be granted in its entirely.

**A. Defendant fails to rebut Plaintiff's substantial evidence with regard to Plaintiff's hourly rates.**

Defendant's argument that Plaintiff's hourly rates "are unsupported" can best be characterized as "believe what we tell you, not what you see." *See* ECF No. 293 at 3. While Defendant asserts that the Court should disregard the credentials of Plaintiffs' attorneys, the affidavit of Jon Marko and the Laffey Matrix, Defendant offers no basis to do so. Likewise, Defendant fails to offer any evidence in support of its preferred rates or any case law to support its conclusory assertions. Under similar circumstances, courts routinely disregard such conclusory legal argument and award the well-supported hourly rates requested by prevailing Plaintiffs. *See, e.g., Ousley v. Gen. Motors Ret. Program for Salaried Emps.,* 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) ("The Defendant has offered no affidavit, but an opinion that $150 is a reasonable hourly rate. The opinion of the Defendant is not enough to contradict the affidavit offered by the Plaintiff. Expert testimony or an affidavit is required to establish a reasonable hourly rate.").

**1. Defendant's suggestion for a "reasonable rate" based on a purported average lawyer practicing law in Michigan is <u>inconsistent with binding authority</u>.**

Defendant suggests that "a reasonable rate is not the rate charged or paid to

4

top lawyers", seemingly suggesting that Plaintiff's counsel Mr. Hanna and Mr. Frisch—who serve in managing partner roles of their respective divisions and offices in the largest Plaintiff's law firm in the country—are not "top lawyers." *See* ECF No. 293, PageID.19573. Of course, Defendant's argument in this regard is unsupported by any authority, because it is contrary to binding Sixth Circuit law. Rather, the Sixth Circuit has explained "[t]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004). Whereas Plaintiff has provided evidence of such reasonable hourly rates, Defendant has not.

## 2. Courts routinely rely on affidavit testimony and the Laffey Matrix in making fee awards.

Defendant urges the Court to summarily reject the affidavit of Mr. Jon Marko, an attorney of similar skill and experience handling and trying employment and wage and hour cases in Michigan and within this District. Defendant contends that the Marko Affidavit fails to contain "any factual support to explain the basis for the opinions expressed." ECF No. 293, p. 7. Contrary to Defendant's baseless arguments, such affidavit testimony is precisely the type of evidence courts routinely rely on to evaluate the reasonable hourly rates in fee-shifting cases like this one.  *See, e.g., Trustees of Sheet Metal Workers Loc. 7 Zone 3 Health Fund v. Traverse Bay Roofing Co.,* 2018 WL 4906613, at *2 (E.D. Mich. July 10, 2018) ("The prevailing market

5

rate can be demonstrated in a number of ways including affidavits from attorneys or experts... testimony from experts or other attorneys in the relevant community"); *Mikolajczyk v. Broadspire Servs., Inc.,* 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) ("This court is persuaded by the affidavits of other Attorneys in Toledo, OH").

Defendant also implies that the Court should disregard the Laffey Matrix.  The Sixth Circuit and courts within this District, however, have routinely acknowledged that the Laffey Matrix is a useful tool in assessing reasonable hourly rates. *See, e.g., Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 347, 351 (6th Cir. 2000) (reversing fee order which neglected to take Laffey Matrix into account in determining reasonable hourly rate); *see also* ECF No. 291, p. 26 (citing cases).

### 3.  <u>Defendant fails to offer evidence of their proffered rates</u>.

Defendant likewise fails to rebut Plaintiff's evidence with regard to his requested rates because it offers nothing more than its attorney's argument in support of its requested rates and references to the Michigan Bar survey.  *See* ECF No. 293 at 5-7; *compare Ousley, supra* (rejecting defendant's suggested rates based on nothing more than attorney argument); *see also Wells Fargo Bank, NA v. MPC Invs., LLC,* 2011 WL 1748429, at *5 (E.D. Mich. May 3, 2011) ("affidavits of counsel" are "not sufficient" to establish reasonable rates). Here, without any evidence or authority that same is appropriate (or explanation of how the number was arrived at) Defendant suggests that the Court should substitute what it contends are the "mean

values" of the Michigan State Bar Survey[1] and seemingly picks numbers out of thin air.[2]  Just as many courts have done previously, this Court should reject Defendant's unfounded argument in this regard.

## II.    All of the hours expended are reasonable.

Defendant next contends that the hours expended are not reasonable. ECF No. 293, p. 7. Specifically, Defendant contends that the hours billed should be reduced because: (1) Plaintiff did not provide a separate chart segregating hours worked by biller; (2) the fee ledger contains what Defendant incorrectly categorizes as "block billing" entries; and (3) there are what Defendant labels excessive, redundant or unnecessary fees.  As addressed below, each of these arguments is baseless.

### 1.   Plaintiff's Fee Report show the "number of hours worked per biller."

Defendant seemingly contends that Plaintiff did not provide a "particularized billing record" because the billing records provided are organized and presented in a chronological manner, as opposed to being organized by the biller. ECF No. 293, PageID.16575. Plaintiff's billing records, however, are "particularized", separate each billing event by biller, identify the time spent on each event, and provide a

---

[1] The Michigan Bar Survey only includes 59 "Employment Law (plaintiff)" lawyers who responded to this survey. This is not a statistically significant sample.

[2] For example, inexplicably, whereas, the survey suggests that the reasonable hourly rate of a partner in the 95th percentile (like Hanna and Frisch) is $730 per hour, [ECF No. 293-1], Defendant contends their rate should be $378.00 per hour.  ECF No. 293 at 5; *compare Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc.,* 2022 WL 992979, at *2 (E.D. Mich. Mar. 31, 2022) ("Because counsel work at a top-rated law firm with an office in Detroit, the top billing rate is appropriate.").

descriptor of the work completed. *See* ECF No. 291-4, generally. Defendant's

general criticism concerning Plaintiff's billing records are meritless.[3]

It appears Defendant's objection is that Plaintiff did not separately provide it

with a summary chart of the hours worked by biller. While Plaintiff is unaware of

any authority requiring same, a chart is provided  herein for the Court's reference:[4]

| Biller | Rate | Total Hours | Amount |
|---|---|---|---|
| Michael Hanna | $950 | 1189.8 | $1,130,310 |
| Andrew Frisch | $950 | 410.4 | $389,880 |
| Eris Tereziu | $350 | 511.1 | $178,885 |
| Haba Yono | $615 | 12.1 | $7,441.50 |
| Mari Yokhana | $350 | 14.7 | $5,145 |
| Veronica Stewart | $175 | 76.91 | $13,459.25 |
| Noah Ooms | $150 | 67.5 | $10,125 |
|  |  |  |  |
| **Totals** |  | 2282.51 | $1,735,246 |

## 2. **Plaintiff's billing records are not "block billing."**

Defendant's Response next includes a section entitled "block billing", and

---

[3] Defendant's citations to legal authority do not support the arguments it is making. For example, Defendant cites to *Perotti v. Seiter*, 935 F.2d 761 (6th Cir. 1991) for the words "particularized billing records." *Perotti*, however, does not support or even address the argument pertaining to the organization of Defendant's billing records as made here. Moreover, the Sixth Circuit in *Perotti* ultimately rejected the *Perotti* defendant's arguments. *See id.* at 764 ("Defendant's arguments to this court are mere conclusory allegations that the award was excessive and that plaintiff's counsel employed poor billing judgment. These assertions do not suffice to establish that there was error here, particularly in light of the statements of the district court and our standard of review.")

[4] In preparing this summary chart, Plaintiff's counsel realized that the submitted fee report is $1,982.50 **less** than it should be because a few entries did not include the biller's rate. *See* ECF No. 291-4, PageID.16540 (No fees allocated for Mr. Tereziu's 5.2 hours worked on 4/18/24).

claims that Plaintiff's counsel "provides almost no detail about services being performed" in their records. ECF No. 293, PageID.16576. The Supreme Court requires counsel to "maintain billing time records in a manner that will enable a reviewing court to **identify distinct claims**." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (emphasis added). Here, Plaintiff pursued and prevailed on his singular FLSA claim for unpaid overtime wages. Thus, the premise of Defendant's objection—which is designed to permit a court to parse out hours expended on claims that Plaintiff did not prevail on—is inapplicable because Plaintiff prevailed on his sole unpaid overtime wage claim under the FLSA.

The Supreme Court only requires a general subject matter explanation:

> Plaintiff's counsel, of course, is **not required to record in great detail how each minute of his time was expended**. But at least counsel should **identify the general subject matter of his time expenditures**.

*Id.* at 437 (emphasis added). Here, Plaintiff's counsel provided **fifty (50) pages of billing records** that specifically identify the work completed; the vast majority of which was on motion practice and hearings that the Court and Defendant's counsel are acutely familiar with.

In support of its "block billing" argument, Defendant references 10 billing events. The first three billing events provide an appropriate description:

| Date | Hours | Description | Biller |
|------|-------|-------------|--------|
| 9/28/20 | 8.5 | Additional research related to MCA exemption and finalizing complaint, multiple conferrals w/ Haba, | Michael Hanna |

| | | Andrew and Angeli re same | |
|---|---|---|---|
| 9/30/20 | 4.1 | Additional research of issues pertaining to MCA exemption, finalizing complaint, and discussion with Andrew Frisch re same | Michael Hanna |
| 12/29/20 | 4.5 | Legal research related to Defendant's Rule 11 letter, multiple calls w/ Andrew Frisch, and Justin Guy concerning same, and preparation of correspondence in response to Defendant's letter | Michael Hanna |

ECF NO. 293, PageID.16576. These descriptions clearly identify the "general subject matter of [Plaintiff's counsel's] time expenditure." *Hensley*, 461 U.S. at 437. Plaintiff's counsel spent significant time researching the MCA exemption in connection with finalizing the FLSA collective action complaint.[5] The time expanded was significantly exacerbated by Defendant's counsel, Mr. Ronald Acho, Esq.'s **repeated** threats of Rule 11 sanctions, which were previously referenced in Plaintiff's January 21, 2021 Response to Defendant's Motion to Dismiss, stating:

> Defendant's Counsel has unfortunately begun an acrimonious course of litigation, and sent undersigned counsel **no less than five correspondences threatening sanctions** based on the same frivolous arguments set forth in Defendant's Motion. … While Defendant's counsel's arguments are meritless, **a threat of sanctions must be taken seriously. Indeed, Plaintiff's counsel was required to and did expend significant time reviewing all of the arguments and the hodge-podge of inapplicable cases in the thirty-five (35) combined pages of briefings provided in connection in the sanctions threats.** Id. As outlined herein, Defendant's "counsel's (Rule 11) threats served only to needlessly **increase the cost of litigation, thus supporting an award of attorney's fees."** *Coles v. Deltaville Boatyard, LLC,* No. 3:10CV491-DWD, 2011 WL 6337619, at *8 (E.D.

---

[5] These billing entries provide another example of Plaintiffs counsel's exercise of billing discretion, where the vast majority of other attorneys referenced herein did not bill for their time spent here.

Va. Dec. 19, 2011); See also *id* ("Here, counsel for [defendant] threatened sanctions against [plaintiff] throughout the course of the proceedings before the Court, **forcing [plaintiff's] attorneys to repeatedly evaluate the factual and legal basis of their claims well beyond the 'reasonable' investigation mandated by Rule 11** . . . **Such accusations and sanction-based litigation strategy rightfully led [plaintiff's] counsel to expend additional time investigating and researching the case**.")

ECF No. 7, PageID.93 (emphasis added).

The fourth and fifth entry Defendant references state:

| Date | Hours | Description | Biller |
|------|-------|-------------|--------|
| 3/24/21 | 6.7 | Preparation of written discovery requests, research for summary judgment motion re MCA exemption in preparation of discovery requests, and deposition prep outline | Michael Hanna |
| 4/20/21 | 7.5 | Review of applicable case law and prep of Plaintiff's 86 RFP's, 70 ROA's, and 19 requests for answers to interrogatories | Michael Hanna |

Again, these descriptions clearly identify the "general subject matter of [Plaintiff's counsel's] time expenditure." *Hensley*, 461 U.S. at 437. Plaintiff spent this time drafting specific discovery requests for the extraordinarily complicated MCA exemption in a hotly contested and contentious FLSA collective action.[6] These discovery requests were extensively researched and prepared with an eye forward towards dispositive motion practice and trial, and were extensively relied upon in same. *See, e.g.*, ECF No. 56, 59, and 63.

---

[6] Plaintiff's 86 Requests for Production, 70 Requests for Admission, and 19 interrogatories can be located at ECF Nos. 35-2, 35-3, and 35-4.

11

The sixth entry references time spent "[p]reparation for 30(b)(6) deposition, preparation of notice, and multiple emails with counsel for Defendant concerning the video deposition notice." ECF No. 293, PageID.16567. This entry is clear.

The seventh to nineth entry referenced by Defendant are from February 1st, 5th and 6th, 2022, and all state:

> Review of 30(b)(6) deposition transcript and preparation of Motions for Summary Judgment, Motion for Conditional Certification, and conferral re deficient discovery responses.

Here, after Plaintiff's counsel obtained the transcript for the January 17, 2022 corporate representative deposition, he reviewed this 233 page transcript and outlined the appropriate citations from this deposition for the upcoming motions for summary judgment ("MSJ") and conditional certification ("MCC"), respectively, and also outlined a detailed conferral regarding deficient discovery responses. Plaintiff's MSJ and MCC heavily rely on binding admissions from this corporate representative deposition, and the referenced deficiency conferral regarding Defendant's discovery responses was sent to Defendant's counsel on 2/7/22.

The final entry defendant references in its "block billing" section states:

> Thorough review and analysis of Defendant's Motion to Amend Affirmative Answers; thorough review of Fifth Circuit case primarily relied in support of Defendant's Motion; circuit survey related to same.

ECF No. 293, PageID.16577.[7] This description more than identifies the "general subject matter of [Plaintiff's counsel's] time expenditure." *Hensley*, 461 U.S. at 437. Plaintiff's counsel was clearly working on legal research in connection with Plaintiff's Response to Defendant's Motion to Amend. The next day, and on July 6, 2023, Plaintiff's Opposition to Defendant's Motion to Amend Affirmative Defenses was filed, and Defendant's Motion was ultimately Denied. *See* ECF Nos. 121, 140.

Plaintiff's fee ledger provides more than the required "general subject matter of" the time expenditure, Plaintiff prevailed on his sole FLSA unpaid wage overtime claim, and Defendant has failed to identify even a single instance of "block billing." *See, e.g., Mohn v. Geoffrey Goll, Esq.,* 2016 WL 1258578, at *4 (N.D. Ohio Mar. 31, 2016) (rejecting defendant's block billing argument under nearly identical circumstances); *Trentham v. Hidden Mountain Resorts, Inc.,* 2010 WL 11519873, at *6 (E.D. Tenn. Sept. 2, 2010) ("[T]hese entries generally contain small tasks relating to a larger issue and are logically grouped. The Court finds the grouping of these entries is not "block billing,"). Thus, while the Sixth Circuit has held that block billing can be sufficient,[8] Plaintiff's billing records do not constitute "block billing."

---

[7] Defendant's Response claims this entry was submitted by Mr. Hanna, but the billing records reflect it was submitted by Mr. Tereziu. ECF No. 291-4, PageID.16513.

[8] *See Smith v. Serv. Master Corp.,* 592 F. App'x 363, 371 (6th Cir. 2014) ("[T]his court has held that so long as the description of the work performed is adequate, block-billing can be sufficient."). *See also Oakley v. City of Memphis,* 2012 WL 2682755, at *3 (W.D. Tenn. June 14, 2012) *report and recommendation adopted,*

3.  **The hours expended are reasonable.**

In its Response, Defendant next argues that certain entries are "vague and inadequately and incompletely describe the work being performed" because they "do not identify discrete and specific tasks being performed day after day." ECF No. 293, PageID.16578.  Defendant, however, fails to identify any such entries. *See id.* Instead, Defendant points to a series of sequential entries all worked towards briefing Plaintiff's opposition to Defendant's motion to dismiss, MSJ and MCC. Obviously, the work necessary for Plaintiff to prevail on each of these motions was incurred over multiple days. Each entry clearly identifies the work performed, the amount of time expended, and the person who performed by the work. Respectfully, Defendant's lack of comprehension that an attorney could work on a single motion or response over multiple days—while possibly explaining the results at each stage of this case—is hardly a reason to deny Plaintiff fees for the work performed. Likewise, the fact that Plaintiff's attorneys worked as a team, each contributing to the motions and responses, is hardly a basis to hold that all the time expended was anything but reasonable.

The first 11 entries provided are from January 2021 and clearly reflect work completed in connection with Plaintiff's twenty-five (25) Response to Defendant's

---

2012 WL 2681822 (W.D. Tenn. July 6, 2012) *aff'd*, 566 Fed.Appx. 425 (6th Cir.2014) ("As far as this court is aware, the Sixth Circuit has never explicitly rejected the practice of block billing.").

Motion to Dismiss and threat of sanctions, as outlined *supra*. The remaining 17 entries are from March 2022, each of which includes a specific description indicating that the work completed was either related to preparation of MSJ or MCC.[9] The time spent preparing Plaintiff's 25-page MSJ on the MCA exemption and small vehicle exception is reasonable, and reflected in the work-product. *See* ECF No. 56. As the Court is aware, the legal analysis pertaining to the FLSA, MCA exemption and small vehicle exception require a complicated legal analysis that demands extensive research. Factually, "the determination (as to) whether the MCA exemption applies to route drivers who operate wholly within one state is a case-specific and highly fact-intensive inquiry." *Thompson v. Eldorado Coffee Roasters Ltd.*, 246 F. Supp. 3d 697, 702 (E.D.N.Y. 2017).[10] Ultimately, Plaintiff obtained a rare victory on a **Plaintiff's** MSJ as it relates to liquidated damages, which resulted in double damages for the Plaintiffs, and for the small vehicle exception.[11]

Similarly, Mr. Hanna's 25.3 hours, Mr. Frisch's 2.2, and Ms. Yokhana's 3.5 hours billed on Plaintiff's 25-page MCC is appropriate and reasonable, and

---

[9] Defendant complains that Mr. Hanna spent "56.3 hours" preparing the MSJ, but the entries provided equate to 51.8 hours.

[10] Respectfully, Plaintiff's MSJ reflects a work-product that is far superior to Defendant's MSJ, though Defendant did not provide its billing record related to its MSJ as a comparator, either way.

[11] *See* Order Denying Defendant's MSJ and Granting Plaintiff's MSJ as it relates to liquidated Damages, ECF No. 70; *see also* Order Granting Plaintiff's Motion for Reconsideration related to Small Vehicle Exception, ECF No. 109.

ultimately resulted in the Court Granting Plaintiff's Motion and conditionally (and later finally) certifying the collective action. *See* ECF No. 58.

Next Defendant claims that Plaintiff's counsel's fee ledger contains duplicate entries in reference to the fact that three attorneys were present in trial, reference Mr. Tereziu's 53 hours billed for trial attendance and preparation, and object to all of his 53 billable hours. ECF No. 293. But this was a **collective action** trial, and **Defendant** vehemently objected to **representative testimony**. As a result, Plaintiff's counsel were required to juggle over 20 clients while simultaneously preparing for an onslaught of motions during the 3-week trial period and months preceding trial. While Defendant was not required to balance this number of clients, Defendant nonetheless had **four** attorneys attend trial in their losing effort, which includes Messrs. Acho and Cummings, two in house counsel employed by Defendant, and an experienced paralegal. Mr. Tereziu worked very hard during this trial, his efforts were not excessive or redundant, and his hours worked should not be summarily rejected. Mr. Tereziu did not passively attend trial; he actively participated throughout trial assisting with various tasks and examined one Plaintiff in trial.

Finally, Defendant listed several items that they claim are "duplicate entries." But these entries are **__not__** duplicate entries. First, the work entries referenced on 3/19/21 reflect multiple attorneys working together to complete the same projects. Some of these entries, such as the entry from 3/19/21, include conference calls

between Plaintiff's counsel. These hours worked are appropriately billed and necessary. Second, the entries on 2/21/23, 5/10/23, 3/29/24 reflect time spent by Plaintiff's counsel reviewing various Court Orders. While at times it appeared Defendant's counsel did not actually review the Court's Orders, Plaintiff's counsel maintains that it was necessary for Mr. Frisch and Mr. Hanna to actually review the Court's Orders in this matter, and critical to their success in this litigation. Third, as the Court and Defendant's counsel are aware, Mr. Hanna and Mr. Frisch both prepared for and attended several hearings in this matter, which is reflected on the entries from 5/18/23, 10/23/23 and 11/13/23. Fourth, Mr. Frisch and Mr. Hanna both attended the 10/23/23 mediation, which was appropriate given their involvement in this litigation. Upon information and belief, Defendant likewise had multiple attorneys attend the 10/23/23 mediation.

"Even brief descriptions of the tasks completed may be sufficient since counsel's billing entries should be 'read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation['], with the ultimate question being whether the records submitted in support of a fee request sufficiently allow the court to determine the time allotted by Plaintiff's attorney to specific tasks and the reasonableness of that time." *Greene v. Westwood Prop. Mgmt., LLC*, 2009 WL 2850866, at *5 (M.D. Tenn. Aug. 29, 2009) (citing *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 554 (6th Cir. 2008).

Here, Plaintiff's counsel's billing records are sufficiently detailed to allow the court to determine the time allotted to specific tasks and the reasonableness of that time given the required heightened level of scrutiny, omnipresent threat of sanctions, the novelty and difficulty of the legal issues involved in this FLSA collective action involving the interplay between the FLSA, MCA exemption and small vehicle exception for intrastate Truck Drivers, the legal skill required to undertake this litigation over the past 4 years, and the fact that Plaintiffs' counsel has already exercised billing discretion in removing over 50 hours of compensable time.

### III.  **The Johnson factors strongly support Plaintiff's fee request.**

Defendant also asserts that the *Johnson* [*Ramey*] factors do not support Plaintiff's fee request. Defendant, however, failed to meaningfully engage Plaintiff's discussion of same in its Motion. *Compare* ECF Nos 291, pp. 29-39 with 293, pp. 16-18. For example, Defendant ignores the case law cited by Plaintiff that FLSA collective actions are complex and novel by their nature. Similarly, Defendant refuses to acknowledge that by handling a collective action for four years on a full contingency basis, Plaintiff's counsel expended a tremendous amount of money and time successfully fighting for their clients, all without any guarantee that they would ever be paid for their work in this case. Perhaps most absurdly, Defendant argues that Plaintiff has not shown that their thousands of hours of work on this case diverted their resources from other cases.  Each of these arguments belies common

sense. Perhaps most importantly, Defendant cannot and, thus, does not argue that the results achieved—the most important *Johnson/Ramey* factor—strongly favor an award of Plaintiff's full lodestar, if not an upward enhancement. For each of these reasons, and for the reasons demonstrated in Plaintiff's Motion, each of which are unrebutted by Defendant, Plaintiff is entitled to recover his full lodestar.

## IV. Plaintiff's costs are reasonable and were all necessarily incurred in the successful prosecution of the case.

Although Defendant acknowledges that an award of costs is mandatory to a prevailing Plaintiff under the FLSA, Defendant objects to Plaintiff's request for reimbursement of costs, arguing that same are "excessive, inappropriate and not documented." ECF No. 293, pp. 19-20. As discussed below, each of Defendant's objections in this regard is misplaced and due to be rejected. Specifically, Defendant objects to Plaintiff's request to be reimbursed for: (1) investigative services; (2) a filing fee of $27.90; and (3) copying, long distance phone charges, meals, travel, Uber, flight and hotel, urging that same should be denied due to lack of documentation (invoices) submitted in support. Plaintiff, however, did document these costs/expenses in Mr. Frisch's declaration and submitted expense report. *See* ECF 291-1, ¶ 33.

In cases like this, involving fee/cost-shifting statutes, the Sixth Circuit has held that the recovery of costs/expenses is not limited to those enumerated in Section 1920 and is far more expansive. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802,

827 (6th Cir. 2013) ("Recoverable out-of-pocket expenses are those 'incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as '[r]easonable photocopying, paralegal expenses, and travel and telephone costs.'"). Courts have consistently applied this Sixth Circuit authority in the context of FLSA cases, as here.[12]

In making its arguments, Defendant appears to conflate cases which discuss solely taxable costs reimbursable under Section 1920, with cases like this one, where Plaintiff is entitled to recover costs under both 29 U.S.C. § 216(b) and Section 1920. This distinction is critical because only certain copy/phone charges are reimbursable under Section 1920, whereas the FLSA permits full recovery of such charges as long as related to the case. As such, there is no need to parse through the specific purpose of each copy or phone call here to determine that the cost of same is reimbursable.

---

[12] *See, e.g., Monroe v. FTS USA, LLC,* 2014 WL 4472706, at *4 (W.D. Tenn. Sept. 10, 2014) ("[T]he law allows a more expansive recovery for a prevailing party for all reasonable costs of litigation in an FLSA case.") (permitting recovery of *all* photocopies, attorney travel, and trial consultant charges under the FLSA, as those a normal fee-paying client would pay) (further citation); *Lankford v. Reladyne, LLC,* 2016 WL 3640691, at *5 (S.D. Ohio June 29, 2016) ("Likewise, hotel costs for trial, meal costs for trial and depositions, and postage costs for service and subpoenas were reasonable and appropriately taxed as costs."); *Walters v. Mayo Clinic Health Sys.—Eau Claire Hosp., Inc.*, 91 F. Supp.3d 1071, 1085-86 (W.D. Wis. 2015) (finding that costs for travel, including hotels and meals, were properly awarded under § 2617(a)(3)); *Bryant v. Dollar Gen. Corp.*, No. 3:05-cv-840, 2007 WL 1875825, at *6 (M.D. Tenn. Jun. 26, 2007) ("While amounts paid for meals, parking and mileage are not costs within the meaning of Section 1920, they may be awarded as reasonable out-of-pocket litigation expenses which would be charged to a fee-paying client.").

Simply put, the level of detail demanded by Defendant is at odds with applicable law.[13]  For this reason, Defendant's objections regarding the costs related to copying, long distance phone charges, meals, travel, Uber, and flights/hotels are off-base.

Nonetheless, out of an abundance of caution, Plaintiff's counsel re-reviewed the expense report submitted and noticed a duplicate expense not previously realized since it was submitted under two vendor names. In short, two different paralegals in Plaintiff's litigation team contemporaneously and inadvertently issued two separate checks for the same invoice to the same investigative service, but did so under two different vendor names, which is why these checks were reflected in Plaintiff's expense report, even though and one check currently remains outstanding. As such, Plaintiff request for reimbursement of his expenses should actually be $101,156.35, though this difference does not offset the amount Plaintiffs' counsel are shorted in the requested fees based on the aforementioned typographical error.[14]

---

[13] *See Lankford*, 2016 WL 3640691, at *6 ("Defendant also argues that although copying and printing costs are compensable under § 1920, plaintiff cannot recover the costs for copying and printing in this case because plaintiff has not documented "what was copied, and how those copies were 'necessarily obtained for use in the case.'" (Doc. 94 at 3). However, the Sixth Circuit does not require the stringent level of documentation that defendant appears to propose."), citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997 (2012).
[14] $102,749.85 (total in ECF No. 291-5, PageID.16550) - $1593.50 (outstanding duplicate check) = $101,156.35. This amount is less than the amount Plaintiff's counsel are shorted in the fee report based on the $1,982.50 typographical error referenced in footnote 4, *supra*.

While the case law makes it clear that Plaintiff need not itemize the type of costs objected to by Defendant, as long as the costs were incurred in the prosecution of this case, Plaintiff provides the Supplemental Declaration of Andrew R. Frisch in an excess of caution to clarify the nature of the costs and that all of the costs were reasonably and necessarily incurred in the successful prosecution of Plaintiff's FLSA claims. *See* Supplemental Declaration of Andrew R. Frisch ("Supp. Dec."), attached as **Ex. 1**.

WHEREFORE, Plaintiff respectfully requests the Court Grant Plaintiff's Motion.

Respectfully submitted,

Dated:  June 21, 2024

/s/ *Michael N. Hanna*
Michael N. Hanna (P81462)
Ertis Tereziu (P84911)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 739-1950
mhanna@forthepeople.com
etereziu@forthepeople.com

/s/ *Andrew R. Frisch*
MORGAN & MORGAN, P.A
Andrew R. Frisch
Florida Bar No.: 27777
8151 Peters Road, Suite 4000
Plantation, FL 33324

(954) WORKERS
afrisch@forthepeople.com

*Attorneys for Plaintiff and the Collective*

## CERTIFICATE OF CONCURRENCE

In accordance with L.R. 7.1, the undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; concurrence was granted.

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 21, 2024, the foregoing document was filed using the CM/ECF system, which will send notice of same to all counsel of record.

/s/ *Michael N. Hanna*
Michael N. Hanna (P81462)
Attorney for Plaintiff